1   Robert T. Mills (Arizona Bar #018853)
    Sean A. Woods (Arizona Bar #028930)
2   MILLS + WOODS LAW PLLC
3   5055 North 12th Street
    Suite 101
4   Phoenix, Arizona  85014
    Telephone (480) 999-4556
5   docket@millsandwoods.com
    *Attorneys for Plaintiff*
6

7                    **UNITED STATES DISTRICT COURT**

8                    **FOR THE DISTRICT OF ARIZONA**

9
    Paula C. Lorona,                        | Case No.: 2:15-cv-00972-NVW
10
                      Plaintiff,            | **AMENDED MOTION FOR LEAVE TO**
11                                          | **FILE SECOND AMENDED**
              vs.                           | **COMPLAINT**
12
    Arizona Summit Law School LLC, a        | (Assigned to the Honorable Neil V. Wake)
13  Delaware limited liability company; Infilaw
    Corporation, a Delaware corporation; Jane
14  and Johns Doe 1-100; Black Corporation 1-
    100; White Partnership 1-100,
15
                      Defendant(s),
16

17          Plaintiff Paula Lorona respectfully moves the Court for leave to file a Second

18  Amended Complaint in this matter, pursuant to Fed. R. Civ. P. 15.  The proposed Second

19
    Amended Complaint is submitted herewith.
20

21  **I.      FACTUAL BACKGROUND**

22          Plaintiff Lorona filed her original and First Amendment Complaint in Maricopa

23  County on March 2, 2015 and April 22, 2015, respectively, and the Defendants subsequently

24  removed this case to Federal Court on May 27, 2015.

25

1    Pursuant to the Court's Order (Docket #5) filed May 29, 2015 and to the parties'

2    subsequent stipulation filed on June 15, 2015 the parties conferred regarding Defendants'

3    alleged deficiencies in the allegations/causes of action asserted in Plaintiff's Amended

4    Complaint and discussed whether any amendments may be made to avoid dismissal under

5    Rule 12(b)(c). Additionally, Plaintiff requested undersigned counsel review the case file to

6    determine whether or not they will represent her. As a result, the parties stipulated that

7    Plaintiff should have until Thursday, June 25, 2015 to file a Motion for Leave to Amend

8    Complaint. Plaintiff filed her Motion for Leave to Amend Complaint on June 25, 2015.

9    However, after discussions with Defendants' Counsel, Plaintiff determined that additional

10   edits should be made to the Amended Complaint. Accordingly, Plaintiff is filing this

11   Amended Motion for Leave to Amend Complaint. Additionally, the parties have stipulated

12   that upon the filing of a new amended complaint, Defendants shall have ten days to file a

13   responsive pleading.

## II.   LEGAL STANDARD FOR AMENDMENT OF PLEADINGS

16   Federal Rule of Civil Procedure 15(a)(2) provides that, "[t]he court should freely give

17   leave [to amend] when justice so requires." The 9th Circuit recognizes that the mandate

18   behind Fed. R. Civ. P. 15 favors amendments to pleadings and "should be applied with

19   extreme liberality." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). The

20   underlying purpose of Rule 15 is to facilitate decisions based on merits rather than pleadings

21   or technicalities. *Id.* Specifically, Fed. R. Civ. P. 15(c) has long been recognized as favoring

22   the liberal allowance of requests to amend in instances where the plaintiff seeks leave to

24   amend to plead new claims that arose out of the conduct, transaction or occurrence set out—

2

1    attempted to be set out—in the original pleading. *See id*. at 186 (stating that "liberality in

2    granting leave to amend is not dependent on whether the amendment will add causes of

3    action or parties. It is, however, subject to the qualification that amendment of the complaint

4    does not cause the opposing party undue prejudice."). Thus, amendments to pleadings shall

5    be and will be liberally granted unless an adverse party will be prejudiced thereby. *See Green*

6    *Reservoir Flood Control Dist. v. Willmoth,* 15 Ariz. App. 406, 489 P.2d 69 (1971).

7         Accordingly, the Supreme Court held "this mandate is to be heeded."   *Foman v.*

8    *Davis*, 371 U.S. 178, 182 (1962). Additionally, "if the underlying facts or circumstances

9    relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an

10   opportunity to test his claim on the merits." *Id.* The Ninth Circuit follows a "strong policy

11   permitting amendment,"[1] and cautions that leave to amend should only be denied in extreme

12   cases such as undue delay, bad faith, or dilatory motive on the part of the movant. *Johnson*

13   *v. Buckley*, 356 F.3d 1067 (9th Cir. 2004).

14   **III.   DISCUSSION**

15        In the present case, following discussion with counsel for the Defendants, Plaintiff

16   agreed to voluntarily dismiss the individual defendants (Stephanie and Jason Lee, and Scott

17   and Jane Doe Thompson) named in her Amended Complaint and to dismiss Count 2 of the

18   Amended Complaint (Violation of 34 CFR Parts 600 et seq.).  Plaintiff also has decided to

19   dismiss Count VI of the Amended Complaint (Gender Discrimination - Disparate Treatment

20   Arizona Civil Rights Act of 1974, A.R.S §§ 41-1463, 1464.)

---

[1] *Fuller v. Vines*, 36 F.3d 65, 67 (9th Cir. 1994)

Upon Plaintiff retaining counsel, and through counsel's evaluation of the facts, it became apparent that there are certain additional claims available to Plaintiff supported by the facts. The claims are support by Arizona and Federal law and arise out of the same transactions and occurrences alleged in Plaintiff's Complaint and First Amended Complaint. See Fed. R. Civ. P. 15(c)(B) (relation back of amended pleading related when the amended pleading asserts a claim or defense that arose out of the same conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading. )

These additional counts include common law fraud and negligent misrepresentation based largely on the same allegations supporting Plaintiff's Arizona Consumer Fraud Act claims pled in her Complaint and First Amended Complaint. Plaintiff's proposed Second Amended Complaint also includes claims for declaratory and injunctive relief authorized under the federal civil rights statutes. *See, e,g,,* 42 U.S.C. § 2000e-5; 29 U.S.C. § 2617 (a) (1) (B). Furthermore, consistent with Plaintiff's discussions with counsel for the Defendants regarding amendments to avoid a 12(b)(6) motion with defense counsel, Plaintiff in her proposed Second Amended Complaint has alleged substantial additional factual detail supporting her claims.

This Motion is not brought for the purpose of delay, harassment or any other improper purpose. Rather Plaintiff brings this Motion in good faith, and in order to ensure that she receives full and just redress of her claims. The remaining Defendants will not be subjected to undue prejudice if this Motion is granted. Those Defendants have not yet even filed a responsive pleading or motion.

1

**IV.    CONCLUSION**

2

For the foregoing reasons Plaintiff respectfully requests that her Motion for Leave to

3

File her proposed Second Amended Complaint be granted in its entirety.

4

5

DATED this 21st day of July, 2015

6

**MILLS + WOODS LAW PLLC**

7

8

9

By     /s/ Sean A. Woods

Robert T. Mills
Sean A. Woods
5055 N 12th Street
Suite 101
Phoenix, AZ  85014
Attorneys for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2015, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Nicole France Stanton (#020452)
nicole.stanton@quarles.com
Eric B. Johnson (#020512)
eric.johnson@quarles.com
Michael S. Catlett (#025238)
Michael.catlett@quarles.com
Quarles & Brady LLP
Firm State Bar No. 00443100
Renaissance One
Two North Central Avenue
Phoenix, AZ  85004-2391

Attorneys for Defendants

**EXHIBIT A**

**MILLS + WOODS LAW PLLC**
5055 North 12th Street
SUITE 101
PHOENIX, ARIZONA  85014
TELEPHONE (480) 999-4556
docket@millsandwoods.com
Robert T Mills (Arizona Bar #018853)
Sean A Woods (Arizona Bar #028930)
Attorneys for
Paula Mrs. Lorona
12705 W. Sierra Cir.
El Mirage, AZ 85335
(623) 875-9543
plorona@cox.net
Plaintiff *Pro Se*

**UNITED STATES DISTRICT** IN THE SUPERIOR **COURT** OF THE STATE OF ARIZONA

**IN AND** FOR THE **DISTRICT** COUNTY OF **M** ARI **Z** CON **P** A

| | |
|---|---|
| Paula PAULA C. Lorona, LORONA, pro se | Case No.:  2:15-cv-00972-NVW |
| _____ Plaintiff, | CV2015-000681 |
| _____    vs. | |
| Arizona Summit Law School ARIZONA SUMMIT LAW SCHOOL LLC, a Delaware limited liability company; Infilaw Corporation INFILAW CORPORATION, a Delaware corporation; Jane STEPHANIE and Johns Doe JASON LEE, husband and wife, SCOTT and JANE DOE THOMPSON, husband and wife; JOHN AND JANE DOES 1-100; Black Corporation BLACK CORPORATIONS 1-100; White Partnership WHITE PARTNERSHIPS 1-100., | **SECOND** FIRST    **AMENDED COMPLAINT**<br><br>(**DEMAND FOR JURY TRIAL**)<br><br>(Assigned to the Honorable Neil V. Wake) |
| _____ Defendant(s), Defendants. | |

- 1 -

Plaintiff Paula C. Lorona, for her Complaint against the above-named Defendants, alleges as follows:

1.      This is an action for relief from Defendants' violations of Plaintiff's civil rights. These violations include: wrongful and willful discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq*.; wrongful and willful gender discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.; and wrongful and willful interference with Plaintiff's right to take family/medical leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.,* unlawful termination, discrimination and retaliation in violation of the FMLA. Plaintiff also brings claims for fraud and negligent misrepresentation under Arizona state law.

2.      Plaintiff seeks damages, including lost wages and benefits, compensatory, general punitive and liquidated damages, plus interest and reasonable attorneys' fees and costs.

## PARTIES, VENUE, AND JURISDICTION

1. 3.    Plaintiff Paula ~~Mrs.~~ Lorona ("Lorona" or "Plaintiff")~~"~~) is a resident of Maricopa County, Arizona, and all times pertinent to this Complaint, Lorona was employed by Arizona Summit Law School, formerly known as Phoenix School of Law, in Phoenix, Arizona.

2. 4.    Defendant Arizona Summit Law School ("ASLS" or "the School") is a for-profit Arizona limited liability company ~~and was Lorona's employer~~.

3. 5.    ~~Defendant~~ Scott Thompson ("Thompson") is the President of ASLS and a resident of Maricopa County, Arizona.

4. 6.     ~~Defendant~~ Stephanie Lee ("Lee") was the Director of Human Resources for ASLS and a resident of Maricopa County, Arizona.

5. 7.     Defendant Infilaw Corporation ("Infilaw") is a Delaware corporation with a primary place of business in Naples, Florida, and is the parent company of ASLS.

6. 8.     At all times pertinent to this Complaint, Thompson and Lee were officials representing ASLS and Infilaw, ~~Corp.,~~ and in doing the acts complained of herein, were acting under the color and pretense of statutes, ordinances, regulations, customs of the State of Arizona, and Department of Education, ABA and any other pertinent accrediting agencies.

7. 9.     At all times pertinent to this Complaint, Thompson and Lee were acting within the course and scope of employment with ASLS and under the direction of ASLS and Infilaw, and as a result thereof, ASLS and Infilaw are liable for the acts of Thompson and Lee under the principle of *respondeat superior*.

~~8.     Defendants Jason Lee and Jane Doe Thompson are named as defendants because at all times, Defendants Stephanie Lee and Scott Thompson were acting on behalf of their marital community and the marital community is liable for the actions of Stephanie Lee and Scott Thompson.~~

9. 10.     Defendants Jane Does and 1-100, Black Corporations 1-100, and White Partnerships 1-100 are certain unknown individuals or entities who through their own actions or inactions have caused or assisted others in causing the incidents and resulting harms set forth below.  Despite diligent efforts by Lorona~~Plaintiff~~, the identity of these individuals has not yet been ascertained but they are well known by the Defendants. Lorona~~Plaintiffs~~ will

amend their complaint to allege the true names and capacities of the various Doe Defendants when they are learned.

11.    This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C.§1331 because this is an action under the FMLA, 29 U.S.C.§ 2601 et seq., Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e et seq. (Title VII) and § 102 of the Civil Rights Act of 1991, 42 U.S.C.§ 1981A and pursuant to the ADA, 42 U.S.C. § 12111, *et seq.*.

10.    Venue is proper in the District of Arizona pursuant to 28 U.S.C § 1391 (b),This court has jurisdiction because the amount in question exceeds the jurisdictional limits of all inferior courts.

12.    This Court is the appropriate venue because the eventsactions giving rise to Lorona's claims occurred in this District.

11.13. Lorona timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and this Complaint is timely filedoccurred in Maricopa County, Arizona.

14.    All administrative prerequisites have been met.


**GENERAL ALLEGATIONS**

**A. Liability of Infilaw**

15.    At all relevant times Infilaw dominated the business operations of ASLS. Infilaw controlled all the finances of ASLS and ASLS's two sister law schools.

16.    Infilaw controlled and managed the budget and budgeting process of ASLS. All promotions, raises for performance reviews and any other incentives had to be approved by Infilaw. Infilaw also had to approve ASLS's annual budget.

17.    Infilaw processed and maintained control of ASLS's payroll.

18.    401k and all other benefits of ASLS employees, including tuition waivers for ASLS students who were also employees, were controlled and managed by Infilaw.

19.    Reimbursement for corporate credit cards and expenses paid by individual employees while traveling for ASLS were made by Infilaw, which also had to review and approve such reimbursements.

20.    Infilaw is accordingly liable not only for its own misconduct, but is liable for the misconduct of ASLS as alleged herein.

21.    On information and belief, Defendant Infilaw had was given actual notice of the EEOC proceedings alleged above during the time that the EEOC's investigation of Lorona's Charge of Discrimination was still pending.

22.    As alleged herein, at all relevant times Defendant Infilaw had an identity of interest with Defendant ASLS with respect to the matters alleged in Lorona's Charge of Discrimination filed with the EEOC.

**B. Defendants Initiate a Pattern of Harassment and Discrimination Against Plaintiff.**
~~DEFENDANTS DISCHARGE PLAINTIFF OUT OF RETALIATION FOR REFUSING TO FILE FRAUDULENT TAX FORMS~~

12.23. Lorona was hired in November 2009 as an administrative assistant and received promotions to financial aid representative in 2010, assistant director of financial aid in 2011, and student accounts/accounting manager in 2011.

13.24.  One benefit given to employees of ASLS is a full tuition waiver to attend law school, beginning 12 months after full-time employment and continuing throughout employment.

14.25.  One of the factors Lorona considered when accepting employment with ASLS was the full tuition waiver described above, and if fact based on her job performance was permitted a pro rata early tuition waiver starting at 9 months.

15.26.  Before her employment, Lorona reviewed the evening school plan, statistics of school completion, the academic caliber of students being admitted to ASLS, and bar passage rates (over 80%), among other factors, and decided that ASLS would be a good place for her to work and attend school.

16.27.  In August 2009, Lorona applied for traditional enrollment at ASLS and was accepted as a traditional evening student.

17.28.  Throughout her employment, Lorona has received excellent employee reviews and as alleged above, has been offered the opportunity for advancement commensurate with her skills and experience.

18.29.  In 2012 Judy Smith ("Smith") Director of Finance, presented Mrs. Lorona with Arizona Department of Revenue ("ADOR") documents, including ADOR 10194 (7/11) (the "Tax Form"). *See Tax Form* as Exhibit 1 9.

19.30.  Smith ordered that Lorona review and upload the Tax Form to the ADOR's website.

20.31.  The reason that Lorona was ordered to review and upload the Tax Form was because ASLS had failed to register with ADOR or pay state sales tax since beginning operations in 2005.

21.32. Before presenting the Tax Form to Lorona, Smith had knowingly filled in the Tax Form with false and incorrect information by listing in Section B 1 that the date business started in Arizona as 7/1/2008 and B 2, Date Sales began as 8/1/2010. *See Tax Form* Exhibit 1.

22.33. After seeing the Tax Form that Smith had provided to her, Lorona advised Smith that the information was grossly inaccurate.

23.34. Further, Lorona stated that she would not file false documents with the ADOR.

24.35. Lorona then advised Smith that the school began doing business for purposes of the Tax Form in 2005.

25.36. After learning this, Smith crossed out the date 7/1/2008 and wrote to the right of the incorrect date, in her own handwriting, 7/1/2011. *See Tax Form* Exhibit 1.

26.37. Further, Smith crossed out "2011" changed box B 2 to read "8/1/2012." *See Tax Form* Exhibit 1.

27.38. Smith then asked Lorona if she felt better about those dates.

28.39. Lorona responded that she did not feel better about those dates because the altered dates were still false and inaccurate and reasonably believed that doing so would be considered a fraudulent filing with ADOR and would violate the law, including but not limited to A.R.S. § 42-1109.

29.40. Accordingly, Lorona told Smith that she would not file the Tax Form documents with incorrect dates.

30.41. Thereafter, Lorona was pressured and harassed daily by Smith to complete and file the Tax Form.

31.42. For example, Smith visited Lorona's office multiple times daily for updates on the status of the tax documents.  Smith also stated that Lorona's previous supervisor was fired for failure to terminate Lorona's employment and she would not be terminated for that reason.

32.43. These pressures led Lorona to fear that she would lose her job.

33.44. In response, Lorona sought advice from ASLS General Counsel, Alicia Togno.

34.45. Ms. Togno advised Lorona that under no circumstances should she file the fraudulent Tax Form, even if the failure to do so resulted in the termination of her employment.

35.46. Lorona then met with Defendant Lee, the Human Resources Manager, to discuss the Tax Form and the pressures that Smith was putting on her.

36.47. Incredibly, Lee advised Lorona that she would not do anything to resolve the harassment to complete the Tax Form using false and inaccurate information, and perhaps she could try the whistleblower hotline.

37.48. Lee advised Lorona that she was not in a position to offer assistance.  Lorona was told to speak with Thompson for relief of harassment.

38.49. Lee further stated if Thompson would not stop the harassment to contact the whistleblower hotline, and under no circumstances should Lorona mention Lee's name in the complaint.

39.50. Thompson refused to become involved by speaking with Smith about the Tax Form.

40.51. Via email, LoronaPlaintiff sent requests for meetings with Thompson and Lee to discuss Smith and her demand for Lorona to complete the Tax Form using false and incorrect data.

41.52. However, Thompson and Lee failed to respond to Lorona's requests.

42.53. After several weeks without response, and feeling daily pressure to complete the Tax Form using false and incomplete data, Lorona faxed a complaint to Infilaw's corporate whistle-blower hotline explaining the harassment occurring in at ASLS.

43.54. In the fax, Lorona also complained about the failure of management, including Thompson's and Lee's, to address the harassment.

44.55. The fax also notified Infilaw of management's failure to address demands that employee's work on Sunday is violating their religious beliefs, and daily threats of termination.

45.56. Tellingly, Smith was terminated within days of Lorona's complaint to Infilaw's whistle-blower hotline.

46.57. However, Defendants Thompson and Lee continued harassing Lorona.

47.58. For example, when Lorona inquired about promotion for Director of Finance or Assistant Controller, she was denied the opportunity to interview for the position without consideration.

48.59. Without reviewing Lorona's qualifications for Director of Finance or Controller, Lee told Lorona that she was not qualified to interview for the position.

49.60. However, had Lee actually looked, she would have found that Lorona met or exceeded the minimum qualifications for the position.  See Controller Posting, attached hereto as Exhibit  3.

50.61.  When Lorona met with Lee in person in Lee's office, Lorona informed Lee that she was indeed qualified, Lee curtly told Lorona that would not be getting an interview either way in the presence of Angelique Artigua, Lee's Administrative Assistant.

51.62.  Ultimately, ASLS filled the position with a candidate that did not meet the minimum qualifications for the position.

52.63.  Lee and Thompson continued to harass Lorona in all facets of her employment, including excluding her completely from departmental meetings, excluding her while in meetings, taking Mrs. Lorona's corporate credit card while other employees in similar positions retained theirs, gossiping about Lorona, and ignoring her throughout the workday.

53.64.  ASLS has a written telecommuting policy that allows employees to occasionally work remotely while caring for sick or disabled family members.

54.65.  After Lorona refused to complete the Tax Forms with false and inaccurate information, Defendants inexplicably treated Lorona differently than every other employee at ASLS.

55.66.  During the course of Lorona's employment, she was forced to work away from the office, due to lack of cross training of employees.[1]

56.67.  After refusing to complete the Tax Forms, Lee knew that Lorona was caring for her disabled daughter and son, yet Lee unilaterally charged Lorona Paid time off ("PTO") hours without discussing the PTO deductionssuch with Lorona.

57.68.  ASLS employee, Viki Coen, spoke with Thompson notifying him that Lorona was working and corresponding with her while Lorona was working away from the office. However, Lee did not change the record and still charged Lorona PTO.

58. 69. Lee was aware that Lorona had disabled children because she had many discussions regarding her children's health.

59. 70. In fact, on at least one occasion, Lee delivered Lorona's work laptop to Lorona at the Thunderbird Banner Hospital so she could work remotely while caring for her child and not being forced to use PTO because Lorona was actually working.

60. 71. Other similarly situated employees were, and still to this day are, permitted to work remotely for myriad reasons, including reasons less meritorious than caring for a disabled child.

61. 72. In early 2011, Lorona also had expressed concerns in meetings with Dean Shirley Mays, Thompson, the admissions staff, and financial aid staff that the school was being deceptive in marketing to incoming students, in violation of 34 C.F.R. § 668.6. 34 C.F.R. § 668.6. Lorona also expressed concern that the School was also providing misleading data to investors and incoming students regarding how successful those students were likely to be, as well as which students were actually paying students as opposed to "trying law school" or being funded by ASLS.

73. Dean Mays immediately assured Lorona that Lorona's expressed concerns were unfounded.

62. 74. For example, Dean Mays stated during a meeting including Admissions, Finance, Financial Aid staff, Dean Mays, and Scott Thompson that students coming in through the Alternative Admissions Model for Legal Education ("AAMPLE") program, rather than traditional means of admission were just as successful in the classroom.

63.75. Lorona told Dean Mays and others in the meeting that her statements were not true and that the AAMPLE students are not as likely to pass classes, graduate, pass the bar exam, and obtain gainful employment.

64.76. Students entering law school through AAMPLE may appear to be successful when the class is largely made up of AAMPLE students because law school grades are curved, resulting in some students being successful despite lack of ability.

65.77. Lorona's concerns were based on the School's cumulative data as well as her own personal observations from the classroom, meeting with AAMPLE students, meeting with traditionally admitted students, downward trending bar passage rates, and discussions with the career placement department regarding placement of AAMPLE students in internship/externship programs as well as final placements.

78. However, the actual impact of the admission of ever-increasing numbers of AAMPLE students was not known to Lorona until ASLS's recent disclosure of abysmal bar exam passage rates.

79. In an email dated October 16, 2014 Dean Mays reported that the bar passage rate of ASLS graduates for the July 2014 bar examination was 54.4% for "1st time sitters" and 49.5% for "Total: First time and repeaters."

80. Moreover, an email dated December 23, 2014 from Ann Woodley, ASLS's Associate Dean for Bar Pass and Student Success to certain ASLS students and graduates stated that "The ASLS grads planning to take the bar exam in February have a predicted pass rate of 47%, compared to an expected state average of greater than 70%. This is based on our

statistical analysis of how our students have performed on the last few bar exams (and is primarily focused on law school grade point averages and LSAT scores)."

81.    These bar passage rates and predicted bar passage rates were substantially and materially lower than those ASLS touted in its previous advertising and marketing materials, including bar pass rates well in excess of 80%.

82.    In an email dated May 15, 2012, regarding the February 2012 Arizona bar examination, Dean Mays reported a bar passage rate of 71.7% for ASLS graduates taking the bar examination for the first time and an "overall" pass rate of 63.8%, which purportedly compared favorably with the average of all individuals taking the Arizona Bar.

83.    By email dated October 15, 2012, regarding the July, 2012 Arizona bar examination, Dean Mays reported a bar passage rate of 76.6% for ASLS graduates taking the bar examination for the first time and a total passage rate of 73.1% for all ASLS graduates.

84.    By email dated May 13, 2013, regarding the February 2013 Arizona bar examination, Dean Mays reported a passage rate of 73.5 % for ASLS graduates taking the bar examination for the first time and 72.9% for all ASLS graduates.

85.    In addition, ASLS's "Viewbook" marketing brochure which was used to market to and attract student to ASLS in at least the years 2013 and 2014 prominently touts an "Ultimate Bar Pass Rate" of 86% for ASLS graduates, purportedly based on all "[g]raduates who passed the Arizona Bar Exam on the first or subsequent attempts."

86.    Indeed, even in her October 16, 2014 email quoted above, Dean Mays reported an "Ultimate pass rate" of 80.8%.

87.    The Bar Examination statistics and pass rates maintained by the Arizona Supreme Court indicate that the passage rate for individuals taking the Arizona Bar Examination for a second time or subsequent times is substantially lower than the passage rate for individuals taking the Arizona Bar Examination for the first time.

66.88.  In response to Lorona's observations regarding AAMPLE studentsstatements, Dean Mays became upset, and had the Registrar's Office create reports comparingshowing the grade point average of students admitted through alternative admissions programs versus traditional admissions.

67.89.  Such reports were intended to mislead prospective students in violation of A.R.S. § 44-1521 *et seq.*

68.90.  On April 13, 2013, Lorona was called to a conference room under the pretense that Gail Sauers and Vanessa Etheir needed assistance with a report.

69.91.  Upon arrival in the conference room Mrs. Lorona was met by Sauers, and Ethier, and Defendant Lee.

70.92.  Lorona was advised by Lee that Lorona and the School were going to be "mutually separating" and that if she signed a waiver of rights and confidentiality agreement she would receive three weeks of pay.

71.93.  Lorona did not agree to "mutually separate" her employment.

72.94.  Mrs. Lorona asked Lee why she was being terminated because in multiple meetings just weeks prior Lee had assured Lorona that her job was not in jeopardy and she had no performance concerns.

73.95. Lee replied that Lorona was not being fired for cause, that Lorona had not done anything wrong, and that the company just felt she would be happier somewhere else.

74.96. Lorona refused to sign the waiver of rights and/or confidentiality agreement.

75.97. In response, Lorona filed appropriate complaints with the Arizona Attorney General's Office for whistleblower protection and the EEOC for discrimination.

76.98. Unsurprisingly, ASLS responded to the EEOC with a number of made up and unsupported reasons for Lorona's termination.

77.99. For example, ASLS replied to the EEOC that the reasons for Lorona's termination were recognized and documented in disciplinary forms. *See ASLS's Response to EEOC* Exhibit 2.

78.100.     However, this is patently false because Lorona had never had a disciplinary report at ASLS.

79.101.     Further, as Lee acknowledged at the time when Lorona was fired, Lorona was told she was not being fired for cause and had done nothing wrong to warrant termination.

**C. Defendants Mislead and Fraudulently Induce Students to Enroll in ASLS.**
**DEFENDANTS MISLEAD AND FRAUDULENTLY INDUCE STUDENTS TO ENROLL IN ASLS**

80.102.     Infilaw has studied bar passage rates for its students and based on its findings, Infilaw and ASLS have developed a bar exam failure predictor formula.

81.103.     The failure predictor formula includes LSAT scores, undergraduate gpa, and law school gpa, among the factors.

82.104.    Beginning in May 2014, ASLS along with its Infilaw sister schools, Florida Coastal School of Law, and Charlotte School of Law, began paying students not to take the bar exam upon graduation based on these calculated failure predictors.

83.105.    This is an attempt to deceive the ABA accrediting board, and Department of Education, incoming students, existing students, and graduating students by attempting to increase bar passage percentages.

84.106.    ASLS students who were predicted to fail the February 2015 bar exam according to Infilaw's failure predictor formula were offered $5,000 and other benefits such as bi-weekly payments, to defer taking the bar exam.

85.107.    In addition, ASLS students who were unable to afford bar prep courses that requested financial assistance, but did not fall within Infilaw's Failure Predictor Formula criteria, were denied financial assistance to prepare for the February 2015 bar exam.

86.108.    The effect of Infilaw's and ASLS's actions was to prevent students who ASLS predicted would fail the bar exam from taking the bar exam and thereby manipulating, misrepresenting, and gaming the bar test passage rates in order to retain accreditation and receive other benefits, such as retain Title IV eligibility from the Department of Education.

87.109.    This position is a direct contradiction to the public marketing intended to induce students, including those who enroll via non-traditional methods, to enroll at ASLS and take institutional and federally-backed student loans in order to pay tuition.

88.110.    Further, this is evidence of Defendants' attempts to deceive and misrepresent actual data concerning bar passage rates, a vital measurement of success of law schools, in violation of A.R.S. § 44-1421 *et seq*.

89.111.    As alleged above, Lorona~~Plaintiff~~ informed ASLS through its Dean, Shirley Mays, President, Scott Thompson, and Assistant Dean of Admissions, Glen Fogerty that students who were admitted through non-traditional means, such as AAMPLE, had lower success rates on the bar exam.

90.112.    However, ASLS continued its marketing by creating deceptive documents and statistics designed to increase non-traditional enrollment and publicly stating the same, thereby violating A.R.S. § 44-1521.

91.113.    ASLS overall bar passage rate in July 2014 was approximately 48%.  This number represents a significant decline in passage rate, due in part to students enrolling at ASLS via nontraditional methods, including AAMPLE, were graduating from ASLS and began taking the bar exam.

92.114.    Dean Mays attempted to mislead current students, faculty, staff, and alumni by sending out an email documenting the bar passage percentage in a combined calculation representing a bar passage rate of over 80%.

93.115.    As a recent graduate of ASLS by traditional application, Lorona received an email from ASLS on 12/23/2014 indicating the anticipated bar passage rate for ASLS students on the February 2015 bar exam was 47% compared with a state average of 70%.

94.116.    This number includes predicted bar passage rates for all students graduating in August 2014 and January 2015, including those who participated in AAMPLE.

95.117.    On February 11, 2015, Mrs. Lorona received a phone call stating she was on a list of students not likely to pass the February bar exam based on lack of participation in on-campus optional simulated bar exams other predictors.

96.118.    Lorona's school assigned bar coach told Lorona that the School is concerned that it may lose accreditation and access to Title IV Federal Funding due to drastically low performance numbers.

97.119.    The School then offered to pay Lorona monthly to defer the bar exam until July 2015, as explained above, in an attempt to inflate the passage numbers.

98.120.    Lorona was informed that many students have already taken advantage of the "incentives" meant to deceive regulatory agencies, previous, current, and potential new students.

99.121.    Lorona declined to participate in program and did not take the $5,000 to defer taking the bar exam.

100.122.    ASLS possesses cumulative data demonstrating that its students do not pass the bar exam at the rate that it publicly states on its websites, in brochures, enrollment counseling, and in its face-to-face marketing and enrollment counseling.

101.123.    The omission of data is a material misrepresentation designed to mislead prospective students, including Lorona, to enroll and pay tuition and other expenses to the School.

102.124.    After her termination, Lorona was expected to pay lump sum taxes on previous tuition waiver benefits that she received when she was a full-time employee as well as finance the final trimesters of school.

103.    Lorona has obtained a Right to Sue Letter from the Arizona Attorney General's Office.

104.    Likewise, Lorona has also requested, and is awaiting the Right to Sue from the EEOC.

105.   Lorona will amend her initial pleading upon receipt of the Right to Sue Letter from the

EEOC to encompass violations of federal employment law.

## CLAIMS FOR RELIEF

**Count One –** ~~Retaliatory Discharge in violation of ADA, Title VII, ACRA: A.R.S. § 23-1501~~
~~*et seq*.~~ **and FMLA**
~~(All Defendants)~~

106.   Plaintiff re-alleges and incorporates by reference each of the allegations set forth in the

preceding paragraphs of this Complaint.

107.   As alleged above, Plaintiff was an employee of Defendant ASLS and responsible for

managing and reporting various financial data of the School, including the completion of the Tax

Form that is reported the Arizona Department of Revenue.

108.   As alleged above, Plaintiff was approached by Smith of ASLS, and was told by that

employee to use false and incorrect information on the Tax Form that would be reported to the

Arizona Department of Revenue.

109.   As alleged above, the effect of using false and incorrect information would constitute a

violation of a known statute, specifically A.R.S. § 42-1109.

110.   As alleged above, another effect of using false and incorrect information is that Plaintiff

would jeopardize her potential status as an attorney, and her Arizona Department of Insurance

licenses because an attorney violating A.R.S. § 42-1109, even at the behest of an employer, would

violate the Arizona Ethical Rules for Attorneys.

111.   As alleged above, Plaintiff refused to complete the Tax Form using false and incorrect

information.

112.   As alleged above, Plaintiff spoke with General Counsel for ASLS and was told not to use

false and incorrect information on the Tax Form even if such would result in the termination of her

employment.

113.   As alleged above, after Plaintiff refused to complete the Tax Form with false and incorrect information, Defendants began a coordinated, intentional, and unlawful plan designed to deny Plaintiff opportunities for promotion within ASLS and color Plaintiff's employee record with unfavorable, unfounded, and undeserved employee evaluation system that they alone controlled.

114.   As alleged above, Plaintiff told ASLS management, including Shirley Mays, that the enrollment and bar passage data were incorrect and therefore misleading to students and prospective students.

115.   As alleged above, Plaintiff told Shirley Mays, the Dean of the School, that these statistics and statements were false and misleading.

116.   Plaintiff reasonably believed that these misrepresentations were fraudulent and in violation of statute, including A.R.S. § 44-1521 *et seq.*

117.   As a result of Defendants' coordinated, intentional, and unlawful plan to punish Plaintiff for not completing the Tax Form with false and incorrect information and for speaking out about the misleading bar passage statistics, Defendants unilaterally terminated Plaintiff's employment from ASLS, thereby violating A.R.S. § 23-1501(A)(3)(c)(i)-(ii).

118.   Defendants Lee and Thompson were acting in the scope and course of their employment with ASLS and Infilaw, accordingly ASLS and Infilaw are liable for the actions of Thompson and Lee under the theory of *respondeat superior.*

119.   As a result of Defendants' actions, Plaintiff has suffered damages, including but not limited to, the loss of income, loss of employee benefits, and damage to her reputation because she will now be known as a whistleblower and will be forever publicly linked to a whistleblower complaint.

120.   Further, Defendants actions were willful, wanton, intentional, malicious, and done with reckless and evil mind that consciously disregarded Plaintiff's rights and the damages that would

plainly and obviously result.  As such, an assessment of exemplary and punitive damages in an amount to be determined at trial is warranted.

**Count Two – Violation of 34 CFR Parts 600,** *et seq.*
(Defendants Infilaw and ASLS)

121.    Plaintiff re-alleges and incorporates by reference each of the allegations set forth in the preceding paragraphs of this Complaint.

122.    Mrs. Lorona expressed that ASLS was in violation of Program Integrity Regulations under 34 C.F.R. Parts 600, 602, 603, *et seq.* requiring accurate reporting as required for eligibility of Title IV HEA funding.

123.    Mrs. Lorona expressed concerns that admissions marketing, policies of actively recruiting students unlikely to succeed in a law school program likely constituted fraud against the aforementioned students is also protected behavior pursuant to A.R.S. § 44-1531(A), and A.R.S. § 44-1521 *et seq.*  As a result of her report, Lorona was fired by employees or agents of Defendants ASLS and Infilaw.

124.    As a result of Defendants' actions, Plaintiff has suffered damages, including but not limited to, the loss of income, loss of employee benefits, and damage to her reputation because she will now be known as a whistle-blower and will be forever publicly linked to a whistleblower complaint.

125.    Further, Defendants actions were willful, wanton, intentional, malicious, and done with reckless and evil mind that consciously disregarded Plaintiff's rights and the damages that would plainly and obviously result.  As such, an assessment of exemplary and punitive damages in an amount to be determined at trial is warranted.

**Count Three  Consumer Fraud in violation of A.R.S. § 44-1521** *et seq.*
(Defendants Infilaw and ASLS)

125.   Lorona restates and re-alleges the allegations of the previous paragraphs as if fully set forth herein.

126.   ASLS is a private, for-profit post-secondary school, owned and managed by Infilaw Corp. that offers Legal Education Programs in Phoenix, Arizona. ASLS is licensed by the Arizona State Board for Private Post-Secondary Education and is accredited by the American Bar Association (ABA).

127.   In 2012, the school began marketing the MyBar Program in an effort to comply with the Department of Education "90/10" requirements.  Federal law requires that for-profit colleges get no more than 90% of their revenues from Title IV federal student aid. 20 U.S.C. § 1094 (a) (24). 90/10 requirements.

128.   On December 12, /12/2013, ASLS sent an email advising students not to sign up for Kaplan bar review, and touting higher bar passage rates for students taking MyBar as opposed to Barbri or Kaplan.

129.   Advertisements on the ASLS website; https://www.azsummitlaw.edu/student-resources/student-success-programs/mybar/mybar-faqs include statements such as:

> Why is myBAR the best?
>
> The myBAR Program has been specially designed to offer you the best of everything—including live lectures and practice tests by the two nationally-known bar prep companies (BarBri and Kaplan) and personalized assistance from the myBAR team of experts and fellow bar-takers.
>
> With myBAR you are able to get a jump start on your bar review. You can request materials before the lectures start and get access to

BarBri                                              AMP.

BarBri AMP combines brain science techniques with cutting-edge game studies research to fully engage and teach you in the most effective way possible. Its unique functionality – a multiple-choice testing format like no other – and proven memory-recall devices help you grasp the law faster and retain it longer. Exactly what you need to reinforce all the material you'll cover during the myBAR program.

130.   According to LSAC, ASLS reports an average bar pass rate, LSAT scores, and average admissions grade point average intentionally disregarding students not admitted through traditional enrollment.

131.   The myBAR program actually consisted of ASLS and Infilaw "loaning" money to students in an effort to increase the non-Title IV student aid included in ASLS' and Infilaw's reported revenues. However, under federal law these expenditures do not qualify for inclusion in the calculation of 90/10 Rule compliance because myBAR is not required for all students and is in fact a program for graduates, rather than existing students, of ASLS. 34 C.F.R. § 668.28(a)(3)(ii)(C).

130.   Admission ASLS reports on the school website at increase in enrollment through non-traditional enrollment (AAMPLE) from 11% in 2005 to 80% in spring 2011.

131. 132.   However, admission and enrollment through AAMPLE does not require grade point average or LSAT scores within the range of traditional admissions. AAMPLE students are admitted through alternative means. As such, LSAT and undergraduate GPA statistics are not included in the admissions statistics Defendants provide to government agencies and to potential students.

133.   ASLS reports on the school website an increase in enrollment through non-traditional enrollment (AAMPLE) from 11% in 2005 to 80% in spring 2011.  However, Defendants do not disclose in their marketing materials or information provided to new or potential students that the reported statistics on incoming students does not include the LSAT scores or undergraduate GPA's of AAMPLE students.

134.   Defendants, thus, misrepresented their admission requirements and the caliber of students being admitted to ASLS.

132.135.     Reporting enrollment and success statistics based on 20% or less of the student population is grossly misleading to incoming students, and existing students.

133.   As alleged above, Defendants continuedBar passage rates are advertised as 68.85% for first time takers.

136.   Bar exam results sent in misleading emails to tout "Ultimate Bar Pass Rates" of greater than 80%.

134.137.     As alleged about Defendants continued to tout to ASLS faculty, staff, students, and prospective students representing that ASLS graduatesstudent purport bar exam passage rates were approximately 86at 87%, when actual rates weare approximately 47%.

135.138.     Recent graduates, after spending hundreds of thousands of dollars in tax payer backed loans were informed via email that their anticipated bar passage rate for the February 2015 Arizona Bar exam was 47were 45%, in stark comparison to the rosy projections presented before and at the time of enrollment.

139.   Additionally, as described above, Defendants had previously acknowledged that their overall bar passage rates were significantly lower than the 86% they touted in marketing materials.

140.   ASLS deceptively represented that its Legal Education Program provided:

> 136.   "We believe by graduation, lawyers should enter the workforce professionally prepared to practice law in a variety of diverse settings and industries. Summit Law partners with local law firms, courts, municipalities, businesses and non-profits to provide real-world work experiences that foster our students' desire to learn, grow and succeed while creating **well-rounded lawyers who add immediate value to their firms and employers**."

137.141.   ASLS misrepresented the existence of success of past, present, and future graduate's ability to meet job qualification requirements, including but not limited to: graduation; bar passage; character and fitness; and other job requirements.

138.142.   ASLS misleads students by enrolling students ineligible for federal financial aid based on credit by "giving students time to fix their credit to receive loans" knowing with certainty that Department of Education does not lend to students for specified time periods with specific credit blemishes include foreclosures, and bankruptcies.

139.143.   The school provided institutional loans causing students to incur debt, without the means to repay such debt in an effort to deceive the students and investors that students would somehow be able to continue at ASLS without funding.

144.   Defendants also misrepresented what incoming students should expect to pay for their education. For example, ASLS's website represented that:

As of the 2010-11 academic year, tuition and fees for the 3 year JD program total $101,310.00. Books and supplies for the program total $2,184.00.

The median cumulative program debt for PhoenixLaw graduates between July 1, 2009 and June 30, 2010 is $93, 142.51 for federal student loan debt and $5,000.00 for private student loan debt.

127.   These representations were false. In fact, Lorona incurred approximately $204,000 of student loan debt to attend ASLS.

140. 128.   As alleged above, Defendants published misleading representations about school success and bar passage rates of its students, admission requirements, the caliber of students being admitted, the amount of expense, and debt its students should expect to incur. Defendants used deception, used a deceptive act or practice, used fraud, used false pretense, made false promises, made misrepresentations, and concealed, suppressed and omitted material facts in connection with the sale or advertisement of merchandise.

145.   Defendants' intended that others rely upon these misrepresentations.

141. 146.   Lorona in fact relied upon Defendants' misrepresentations in deciding to enroll in law school at ASLS, and to continue to enroll in and remain a student at ASLS, and to incur debt in connection therewith. But for Defendant's misrepresentations, Lorona Plaintiff would not have enrolled in ASLS, continued to enroll and remain a student at ASLS, and continued to incur substantial debt in connection therewith.

142. 147.   As a direct and proximate result of Lorona's reliance on Defendants' misrepresentations, Lorona Plaintiff has suffered damages, including but not limited to student loan debt that includes accruing interest and fees throughout its term. In addition, Lorona is unable to obtain employment with her ASLS degree.

## Count Two – Common Law Fraud

148.   Lorona restates and re-alleges the allegations of the previous paragraphs as if fully set for the herein.

149.   As alleged herein Defendants made numerous representations to Lorona regarding the bar passage rate and expected bar passage rates of ASLS graduates, admission requirements, the caliber of students being admitted to ASLS, qualifications of ASLS graduates, and the amount of tuition, fees, and debt its students should expect to incur.

150.   These representations were false. As alleged herein, the actual bar passage rates and expected bar passage rates of ASLS graduates was substantially and materially lower than those represented by Defendants. Admission requirements and the academic caliber of students being admitted to ASLS was also materially lower than that being represented by Defendants. Also, expected tuition, fees, and student loan debt was substantially higher than that represented by Defendants.

151.   Defendants knew these representations were false. Defendants had possession of the true statistics that were substantially and materially different from those represented by Defendants.

152.   Defendants' representations were material in that they were sufficiently important to influence Lorona's actions and the actions of a reasonable person.

153.   Defendants intended that Lorona rely upon these representations in deciding to enroll and to remain enrolled at ASLS, and to pay Defendants very substantial amounts of money for tuition and fees.

154.   Lorona in fact relied upon the truth of these representations in deciding to enroll and to continue to enroll and remain a student at ASLS, and in deciding to incur substantial debt in the form of loans to pay for attendance at ASLS.

155.   Lorona's reliance on Defendants' representations was reasonable and justified under the circumstances.

156.   Lorona was unaware that Defendants' representations were false.

157.   As a direct and proximate result of Lorona's reliance on Defendants' misrepresentations Lorona sustained damages in an amount to be proven at trial including, but not limited to, student loan debt that continues accruing interest and fees throughout its term. In addition, Lorona is unable to obtain employment with her ASLS degree.

158.   Defendants' conduct was willful and intentional, extreme and outrageous; thus entitling Lorona to an award of punitive damages.

**Count Three –Negligent Misrepresentation**

159.   Lorona restates and re-alleges the previous paragraphs of this Complaint as if fully set forth herein.

160.   As alleged herein Defendants made numerous representations to Lorona regarding the bar passage rate and expected bar passage rates of ASLS graduates, admission requirements and the caliber of students being admitted to ASLS, qualifications of ASLS graduates, and the amount of tuition, fees and debt its students should expect to incur.

161.   These representations were false. As alleged herein, the actual bar passage rates and expected bar passage rates of ASLS graduates was substantially and materially lower than those represented by Defendants. Admission requirements and the academic caliber of students being admitted to ASLS was also materially lower than that being represented by Defendants. Also, expected tuition, fees, and student loan debt was substantially higher than that represented by Defendants.

162.   Defendants intended that Lorona rely on these representations and Defendants made these representations for that purpose.

163.   Defendants failed to exercise reasonable care nor competence in obtaining or communicating the information conveyed in these representations.

164.   Lorona relied on the information conveyed in these representations as alleged herein in deciding to enroll in and to continue to enroll and remain a student at ASLS, and to incur substantial debt in connection therewith.

165.   Lorona's reliance on these representations was justified.

166.   As a direct and proximate result of Lorona's reliance on Defendants' misrepresentations, Lorona sustained damages in an amount to be proven at trial including, but not limited to, student loan debt that continues accruing interest and fees throughout its term. In addition Lorona is unable to obtain employment with her ASLS degree.

**Count Four – Family Caregiver And Family Responsibilities Discrimination**
**Association Discrimination The Americans With Disabilities Act.**
(All Defendants)

167.   Lorona restates and re-alleges the previous paragraphs of this Complaint as if fully set forth herein.

168.   ASLS and Infilaw are "covered entities" within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 (2) in that each of them is an employers engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

169.   At all relevant times Lorona was an "employee" of ASLS and Infilaw within the meaning of the ADA, 42 U.S.C. § 12111 (4).

170.   At all relevant times Lorona was a "qualified individual" within the meaning of the ADA, 42 U.S.C. § 12111 (8) in that Lorona can, and at all relevant times could, perform the essential functions of her employment position and the employment position she sought with Defendants with or without reasonable accommodation.

171.   The ADA, 42 U.S.C.§ 12112 (a) specifically provides that:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

This provision of the ADA applied to ASLS and Infilaw at all relevant times.

172.   The ADA, 42 U.S.C.§ 12112 (b) provides that:

> As used in subsection (a) of this section, the term 'discriminate against a qualified individual on the basis of disability' includes---
>
> ***
>
> (4) excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association.

173.   The ADA, 42 U.S.C. § 12203 (a), further prohibits retaliation against any individual who opposes a violation of the ADA:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

174.   Lorona's minor children (B.L. and C.L.) each have a "disability", specifically severe asthma, within the meaning of the ADA 42, U.S.C. § 12102 (1).

Lorona

143.   Plaintiff minor children (B.L. and C.L.) are disabled person(s) within the meaning of the ADA.

144.175.   Plaintiff is in a protected category under the ADA because she is associated with her minor children that have disabilities that are recognized under the ADA.

176.   Defendants knowingly, intentionally, and with reckless disregard of Lorona's rights under the ADA discriminated against Lorona on the basis of disability in violation of the ADA as alleged herein.

177.   Defendants ASLS and Infilaw, at all relevant times, knew that Lorona's minor children had a disability, and that Lorona was the primary caregiver to her minor children. Lorona specifically discussed with her first ASLS supervisors, Alicia Togno and later Jim Lemire, that Lorona's children suffered from chronic severe asthma. Lorona also informed Viki Coen from Infilaw about her children's chronic severe asthma. In addition, Lorona informed Stephanie Lee of her children's severe asthma. In fact, Ms. Lee delivered Lorona's

work laptop to Lorona at Banner Thunderbird Hospital while Lorona's daughter was hospitalized due to a severe asthma attack. Others at ASLS were also aware that Lorona's children suffered from a chronic severe illness.

145.178.    Lorona~~Plaintiff~~ is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the Defendant, the employer.

179.    Defendants discriminated against Lorona because of the known disability of Lorona's~~Plaintiff and her~~ minor children.

146.    Defendants' employees who do not have ~~by failing and refusing to engage in interactive conversations with Plaintiff to determine her job accommodation needs to care for her ill,~~ disabled children or close.

~~147.    Defendants discriminated against Plaintiff and her minor daughter by failing to provide Plaintiff with reasonable job accommodations to care for her disabled children.~~

148.180.    ~~Defendant's employees that have no families, no children and who are parents of non-disabled children and~~ family members are given special consideration and more favorable treatment by Defendants. ~~the defendant.~~

149.181.    Employees who have disabled~~that are primary caregivers of either~~ children or close~~adult~~ family members for whom the employee is a caregiver, like Lorona, are required to take paid time off and not advised of their FMLA rights while performing caregiver duties while non-caregiver employees are permitted to work remotely and not blocked from promotions.

150.182.   ASLS turnover rates, both voluntary and involuntary, for employee caregivers are higher than non-caregiver employees, and the executive staff is primarily made up of employees with non-caregiving duties.

151.183.   While employees that are not disabled and/or do not have caregiving responsibilities are permitted to work remotely at will, those with disabilities and caring for family members with disabilities are not permitted the same accommodations. For example, Stephanie Lee was allowed to "work" remotely while she shopped, attended appointments, or just stayed at home. Other ASLS employees, including without limitation, Glen Fogerty, Diane Alkais, Dave Bachechi, Nina Sergovia, Debbie Richards, Eric Border, and Reid White, who did not have disabled children or family members were allowed to work remotely as they desired. ASLS allowed Jennifer Hanny, who was single and without children, work accommodations in connection with an ongoing illness.  Lorona, on the other hand, was frequently denied the opportunity to work remotely or was criticized and harassed when she did work remotely.

184.   In addition, Lorona was charged paid time off when she worked remotely and was not advised of or offered FMLA leave.

152.185.   LoronaPlaintiff was denied interview for promotions, and promotions based on recommendations by three previous supervisors.

153.186.   During the first week of April 2012, LoronaPlaintiff was advised by Lee, she would not be getting an interview for the promotion for which she applied.  When asked if it was because she complained about being charged paid time off to care for her disabled

children, Lee responded that Lorona~~Plaintiff~~ would just not be receiving an interview, "period."~~.~~

187. During this same time period, ASLS's Viki Coen recommended Lorona for promotions, raises and bonuses, and expressed to Lorona that she could not understand why Lorona was not being promoted.

~~154.~~188.     ASLS advised the EEOC that Lorona~~Plaintiff~~ did not qualify for positions she applied for.

~~155.~~189.     EEOC requested copy of the job description during investigation.

~~156.~~190.     ASLS provided a job description different from the position Lorona~~Plaintiff~~ applied for.

~~157.~~191.     When the EEOC Investigator inquired as to why the school provided a misleading job posting, with an incorrect date, ASLS told EEOC Investigator that they did not provide the correct posting requested because they were moving in a different direction with the posting.

~~158.~~192.     Lorona~~Plaintiff~~ acquired posting requirements of the "new position" and they appear to be identical to the job duties of the prior posting with the exception of the CPA required that was not included on the posting Lorona~~Plaintiff~~ applied for.

~~159.~~193.     The individual "filling in" for the position Lorona~~Plaintiff~~ applied for is a male without a disability and without caregiving responsibilities.

194.   As described herein, Defendants discriminated against Lorona because of the known disability of Lorona's minor children.

195.   As a direct and proximate result of Defendants violations of the ADA, Lorona sustained damages, including the loss of wages and benefits, and the loss of increased salary and benefits and the potential for increased salary and benefits, in an amount to be proven at trial.

196.   Defendants' conduct was willful, intentional and malicious, and was done in reckless disregard of Lorona's rights, thus entitling Lorona to an award of punitive damages.

**Count Five – FMLA Denial and FMLA Interference**
(All Defendants)

~~160.~~197.   Lorona's ~~Plaintiff's~~ minor children B.L. and C.L., suffered from a "serious health condition" within the meaning of the FMLA, 29 U.S.C.§ 2611 (11) at all times relevant herein.

198.   Specifically, Lorona's minor children suffered from severe asthma, which involved inpatient care in a hospital and continuing treatment by a healthcare provider.

199.   At all relevant times ASLS was an "employer" within the meaning of the FMLA, 29 U.S.C. § 2611 (4) in that it was engaged in an industry or activity affecting commerce and employed 50 or more employees for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year.

200.   At all relevant times Infilaw was an "employer" within the meaning of the FMLA, 29 U.S.C. § 2611 (4) in that it was engaged in an industry or activity affecting commerce and

employed 50 or more employees for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year.

201.   At all relevant times Lorona was an "eligible employee" within the meaning of the FMLA, 29 U.S.C. § 2611 (2).

202.   Pursuant to the FMLA, 29 U.S.C. § 2612 (a)(1):

> "Subject to section 2613 of this title, an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for any one or more of the following:
> ***
> (c)  In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.

203.   At all relevant times Defendants knew that each of Lorona's minor children had a serious health condition.

~~161.~~204.   While working under the supervision of Alicia Togno and Jim Lemire, Lorona~~Plaintiff~~ was permitted accommodations such as working remotely for partial or full days in order to care for her disabled children.

~~162.~~205.   Lorona~~Plaintiff~~ was permitted to work from home and required to work weekends from home to complete her workload.  Lorona~~Plaintiff~~ was the only employee in the Student Accounts department, while sister schools had 2-4 employees completing the same amount of work.

~~163.~~206.   Lorona~~Plaintiff~~ was also required to cover certain activities in the absence of a Finance Director.  Lorona~~Plaintiff~~ received assistance from the Information Technology Department on weekends while working remotely.

164.207.      While Lorona's~~Plaintiff's~~ daughter was hospitalized for her disability, Lee brought Lorona~~Plaintiff~~ her work computer so she could work remotely.

165.208.      Lee and Thompson were notified via email, phone, and in person of Lorona's~~Plaintiff's~~ need to work remotely to care of her disabled children yet at no point did Lee offer FMLA protection to Lorona. ~~Plaintiff.~~

209.   Instead Lorona was continually charged paid time off when she worked remotely in order to be with her disabled children.

210.   In 2012, Lorona requested and received from Stephanie Lee FMLA paperwork, including information to be provided by Lorona's children's doctor.

211.   Lorona provided the paperwork to the doctor and asked that he fill it out and fax it to ASLS.

212.   Lorona was later informed by the doctor's office that the paperwork had been misplaced.

213.   Stephanie Lee at ASLS confirmed that she had not received the paperwork and again provided the forms to Lorona.

214.   Lorona's employment was terminated before she was able to confirm that ASLS had received the paperwork.

166.215.      Male employees without disabilities or caregiving responsibilities were placed on "FMLA leave" by Lee without documentation from a doctor or request from the employee to be placed on FMLA. For example, ASLS employee, Ron Bambacus, was permitted temporary work accommodations while he assisted in the care of his wife.

167.216.     In the case of one male employee, Eric Border, Lee stated she needed to place him on FMLA to protect herself and the male employee by indicating he was on FMLA leave as opposed to just taking vacation time for the birth of his child.

217.   Lee did not request documentation of the wife's pregnancy.

168.218.     When the male employee advised Lee that he did not want to deal with the paperwork and that he would just use vacation time, Lee assured him she would not require standard FMLA paperwork from the male employee.

219.   Defendants knew that Lorona needed and desired FMLA leave to care for her children, but Defendants did not grant such leave despite the fact that they granted such leave to a male employee without any paperwork or even a request for FMLA leave. Defendants thus violated Lorona's rights under the FMLA.

220.   As a direct and proximate result of Defendants' violations of the FMLA, Lorona sustained damages in an amount to be proven at trial.

221.   Defendants' violations of the FMLA were willful, intentional and malicious, and were done in reckless disregard of Lorona's rights; thus entitling Lorona to an award of punitive damages.

**Count Six – Gender Discrimination – Disparate Treatment Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section(s) 200e et seq.**
(All Defendants)

222.   Lorona restates and re-alleges the allegations of the previous paragraphs of this Complaint as if fully set forth herein.

169.223.     This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section(s) 2000e et seq. for relief

based upon the unlawful employment practices of Defendant. ~~Specifically, Lorona~~Plaintiff complains of Defendant's violation of Title VII's prohibition in employment based, in whole or in part, upon an employee's gender.

224.   Defendant ASLS is an "employer" within the meaning of 42 U.S.C. § 2000e (b) in that ASLS was engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

225.   Defendant Infilaw is an "employer" within the meaning of 42 U.S.C. § 2000e (b) in that Infilaw was engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

226.   At all relevant times, Lorona was a "employee" of ASLS and Infilaw within the meaning of 42 U.S.C. § 2000e (f) in that she was employed by ASLS and Infilaw.

227.   Title VII of the Civil Rights Act of 1964, as amended, provides in pertinent part:

> "It shall be an unlawful employment practice for an employer –
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

42 U.S.C. § 2000e—2 (a). At all relevant times this provision was applicable to Defendants ASLS and Infilaw.

228.   Title VII of the Civil Rights Act of 1964, as amended, also provides in part:

"It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment … because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

42 U.S.C. § 2000e—3 (a).

170.229.      During her employment with Defendant, LoronaPlaintiff was a member of a protected class under Title VII against gender based discrimination by her employer, Defendant, or by its managers and supervisory personnel.

171.230.      After a senior management meeting, Dave Bachechi, ASLS's Director of Information Technology, a manager approached LoronaPlaintiff and informedadvised her that there was a discussionLee and Dean Mays had discussed the attractiveness of her butt in the meeting that made him veryhad just ended.  The manager stated that she felt uncomfortable. with the discussion.

231.   Bachechi stated that during the meeting, Dean Mays had stated that every time she walks by Judy's office, Lorona is leaning over her desk and all she sees is Lorona's butt. Stephanie Lee commented that Lorona had a great butt, so she did not see what the big deal was. Dean Mays said she was not complaining and agreed that Lorona has a great butt. Dean Mays said she did not mind seeing Lorona's butt when she turned the corner. Others present at the meeting with Dean Mays were Christy Ryan, Glen Fogerty, Scott Thompson, Diane Alkais, and the Dean of Academic Success.

232.   Christy Ryan, ASLS Interim Director of Library Services, who as mentioned was present at the meeting with Dean Mays, confirmed to Lorona that what Bachechi reported about the meeting was true.

233.   Ryan told Lorona that she was afraid she would face retaliation if Dean Mays, Thompson, or Lee believed Ryan had told Lorona about the meeting.

234.   The following day, Lorona~~Plaintiff~~ met with Lee, Eric Border, and Alicia Togno to discuss what occurred during the meeting with Dean Mays.

~~172.~~235.   ~~—~~Lee stated that since they said good things about Lorona's~~Plaintiff's~~ butt she should be flattered.

~~173.~~236.   Lee also stated, as she had in previous Emotional Intelligence Training, that sexual harassment is only harassment if it is unwanted.

~~174.~~237.   Lorona~~Plaintiff~~ advised Lee that she was embarrassed that they had discussed her in a senior management meeting.

~~175.~~238.   Lee brushed Lorona~~Plaintiff~~ off and did not further discuss the matter.

~~176.~~239.   Subsequently, Lorona's~~Plaintiff's~~ supervisor compared Lorona's~~Plaintiff's~~ body and face to that of a Barbie Doll.

~~177.~~240.   Lorona~~Plaintiff~~ responded that she did not feel she resembled a Barbie Doll. ~~—~~In response, Lorona's ~~Plaintiff's~~ supervisor drew a naked female body and commented that is what a Barbie looks like, and that is what your body looks like as well.

~~178.~~241.   Lorona~~Plaintiff~~ did not address the discussion with Human Resources because Lee had failed to address her prior complaint and further was personally involved in the inappropriate discussion in the presence of the entire senior management staff.

242.   Lorona~~Plaintiff~~ scheduled a meeting with Lee to discuss disparate treatment and whether Lorona's~~Plaintiff's~~ job was in jeopardy for some reason.

179.243.    Lorona ~~Plaintiff~~ asked whether there were concerns with performance that she should correct.  Lee advised that Thompson had never expressed any concern with her performance and Lee did not have any concerns with Lorona's ~~Plaintiff's~~ performance or employment in general.

244.   In fact, in at least three meetings with Stephanie Lee, at least one of which was also attended by Scott Thompson, Lorona expressed concern that she was being treated differently from other employees and excluded from work related meetings and discussions. Lorona specifically asked whether her job was in jeopardy. Lee and Thompson stated that they did not have any concerns with Lorona's work. Lee assured Lorona that her job was not in jeopardy. Lee told Lorona that if Lorona were to be terminated she would first receive counseling and several write-ups to provide an opportunity to improve where needed.

180.245.    Lorona ~~Plaintiff~~ was terminated without cause through a "mutual separation" because Lee stated, "We feel you would be happier somewhere else".

181.246.    During the "mutual separation" meeting Lorona ~~Plaintiff~~ asked Lee why she was being terminated because she had never been advised of any behavior or performance issues.  Further, Lee had informed Lorona ~~Plaintiff~~ in a meeting merely weeks prior that her employment was not in jeopardy, and neither Lee nor Thompson had concerns with employee's performance.

182.247.    Lee stated that Lorona ~~Plaintiff~~ was "not being terminated for cause and had done nothing wrong.  They just felt Lorona ~~Plaintiff~~ would be happier somewhere else".

183.248.    ASLS later informed the EEOC that Lorona ~~Plaintiff~~ was terminated for cause because she talked about students and had performance issues, such as poor 360 results.

184.249.    This again demonstrates a shifting in reason for termination by the Defendants in attempt to mislead as to the true reason for the "mutual separation".

185.250.    Vanessa Ethier and Gail Sauers were also present in the "mutual separation" meeting.

186.251.    Lorona Plaintiff had recently discussed via email and in person concerns regarding paid time off being deducted while Lorona Plaintiff was working from home caring for her children.

187.252.    Lee stated there is a not a telecommuting policy. However, Lorona Plaintiff had copy of company telecommuting policy.

188.253.    Most members of the management staff routinely worked remotely, including Lee and Thompson without a deduction in their paid time off.

189.254.    When Lorona Plaintiff discussed concerns regarding Lee's response and deduction of paid time off with colleagues at Infilaw they advised Lorona Plaintiff that employees at all cCampuses and Infilaw routinely were permitted to telecommute based on necessity. Colleagues also advised Lorona Plaintiff they would speak with Lee regarding policy.

190.255.    Lorona Plaintiff was also denied opportunities for promotion on multiple occasions.  Whereas, ASLS hired male executives without posting positions nor interviewing potential candidates, female candidates were forced to follow standard hiring procedures.

191.256.   Shortly after being terminated, Lorona~~Plaintiff~~ was replaced by a male employee, Eric Border, with fewer qualifications who~~whom also~~ was not required to follow standard hiring procedures.

257.   Unlike Lorona, Mr. Border had never worked in Student Accounts, and did not have any experience managing student accounts. He had never worked in Financial Aid until he started working at ASLS.  He was also promoted to Lorona's position without the job being posted to the public, and without the interview and screening process that others, like Lorona, were required to complete.

258.   In fact, after Mr. Border was promoted, Lorona received numerous calls and emails from individuals in ASLS's IT Department asking Lorona to help train Mr. Border because no one knew how to do Lorona's job.

259.   Defendants in fact have established a pattern and practice of discrimination against women in general and those with caregiving responsibilities.

192.260.   The Director of Admissions, a male, is frequently permitted to leave work early during key times for admissions to attend children's sporting events and other activities.

193.261.   In addition, Director of Admissions was berated openly in management meeting regarding performance, and inability to meet performance goals.

194.262.   Director of Admissions resigned to take a Professor Position at~~as~~ Arizona State University.  Upon non-renewal of that contract, Director returned to ASLS as the Director of Admissions despite the severe drop in admissions numbers, and an apparent inability to adapt to enrollment challenges prior to his initial departure.

263.   In addition, ASLS hired Kenneth Schnolobler as Director of Technology in 2014 without posting the position or interviewing alternative candidates.

195.264.     Lorona~~Plaintiff~~ was required to work until at least 5PM daily to accommodate night students.

196.265.     Lorona's~~Plaintiff's~~ male replacement routinely works no later than 4PM. The male ~~Male~~ employee states he needs to leave early so that he can take public transportation although public transportation runs much later than 4PM on a daily basis.

266.   As alleged above, Defendants also discriminated against Lorona on the basis of her gender in violation of Title VII by filing to offer her FMLA leave in the same manner that it offered such leave to Lorona's male colleagues similarly situated, and by failing to promote Lorona or to even consider her for promotions due to her gender and the fact that she was the primary caregiver of her minor children.

### ~~Count Six – Gender Discrimination – Disparate Treatment Arizona Civil Rights Act of 1974, A.R.S §§ 41-1463, -1464.~~
~~(All Defendants)~~

~~197.     This claim is authorized and instituted pursuant to the provisions of ACRA for relief based upon the unlawful employment practices of Defendant.  Specifically, Plaintiff complains of Defendant's violation of the ACRA's prohibition against discrimination in employment based, in whole or in part, upon an employee's gender.~~

~~198.     During her employment with Defendants, Plaintiff was a member of a protected class under ACRA against gender based discrimination by her employer, Defendant, or by its managers and supervisory personnel.~~

~~199.     Plaintiff's complaint(s) and her opposition to Defendant's discrimination were reasonable and made by her in good faith.~~

200.   After plaintiff engaged in the fundamental public policies and protected employment activities/speech as alleged herein, Plaintiff was retaliated against by exclusion from management meetings, taking Plaintiff's corporate credit card, being ignored by Lee and other supervisors, and eventually termination of her employment without cause.

201.   There exists a causal link between Plaintiff's complaint(s) and Defendant's decision to retaliate and take adverse employment actions against Plaintiff, including termination of her employment.

267.   As a direct and proximate result of Defendants' violations of Title VII Lorona has sustained damages, including but not limited to lost wages and benefits, lost promotions and the opportunity for promotions, and the loss of increased wages and benefits through promotion or otherwise in an amount to be proven at trial.

268.   Defendants' violations of Title VII were willful, intentional and malicious, and were done in reckless disregard of Lorona's rights, thus entitling Lorona to an award of punitive damages.

**Count Seven – Retaliatory Discharge in violation of Title VII and FMLA**
(All Defendants)

269.   Lorona re-alleges and incorporates by reference each of the allegations set forth in the preceding paragraphs of this Complaint.

270.   On numerous occasions during the course of her employment at ASLS, Lorona complained to her supervisors and superiors that Defendants were treating her unfairly and discriminated against her because she: (a) has minor children with disabilities; (b) needs to work from home on occasions so that she can care for her minor children with severe and chronic asthma; and (c) is a woman in that, as described herein, Lorona's male coworkers

were not subjected to harassment and denied promotions and the opportunities for promotion in the same or similar manner as Lorona, and male coworkers who were less qualified than Lorona were advanced and promoted in the company while Lorona was not.

271.   Lorona notified Stephanie Lee, Scott Thompson and Viki Coen that it was not appropriate for Lorona's PTO to be deducted while Lorona was working from home. Lorona pointed out that other ASLS employees routinely worked from home without being charged PTO.

272.   Lorona also complained that Lorona was not allowed to bring her children on campus while other employees and students were permitted to bring their children on campus. For example, Professor Jefferson-Bullock was permitted to bring her children on campus and even to have other professors watch her children while she taught class. Stephanie Lee advised Lorona that there was no written policy on bringing children onto the campus, but that Lorona would be written up if she brought her children on campus at any time for any reason. Lee nonetheless continued to allow her husband to bring Lee's minor daughter on campus.

273.   Defendants terminated Lorona's employment because she attempted to exercise her rights protected under the ADA, FMLA and Title VII and complained about unfair, unequal and disparate treatment in violation of the ADA FMLA and Title VII as alleged herein.

274.   But for Lorona's complaints about, and opposition to, unlawful and disparate treatment in violation of the ADA, FMLA, Title VII, and her attempts to exercise her rights thereunder, Defendants would not have terminated Lorona's employment.

275.    Defendants Lee and Thompson were acting in the scope and course of their employment with ASLS and Infilaw, accordingly ASLS and Infilaw are liable for the actions of Thompson and Lee under the theory of *respondeat superior.*

202.276.    As a direct and proximate result of Defendants' Defendant's unlawful employment, retaliation, adverse employment actions, Lorona has and wrongful termination, Plaintiff suffered damages, including but not limited to, the loss of income, loss of employee benefits, and damage to her reputation because she will now be known as a whistleblower and will be forever publicly linked to a whistleblower complaint. employment entitlements, the loss of her personal dignity, inconveniences, costs, expenses and other consequential damages.

277.    Further, Defendants actions were willful, wanton, intentional, malicious, and done with reckless and evil mind that consciously disregarded Lorona's rights and the damages that would plainly and obviously result.  As such, an assessment of exemplary and punitive damages in an amount to be determined at trial is warranted.

### Count Eight – Declaratory Relief

278.    Lorona restates and re-alleges the previous paragraphs of this Complaint as if fully set forth herein.

279.    An actual controversy exists between Lorona and Defendants concerning their respective rights and duties. Lorona contends that Defendants retaliated against her because she attempted to exercise her rights under the ADA, FMLA, and Title VII, and complained that Defendants were violating those protections and rights as alleged herein.

280.    Lorona is informed and believes, and based thereon alleges, that Defendants deny that their actions were unlawful under the FMLA, ADA, and Title VII.

281.   Lorona seeks a judicial declaration of the rights and duties of the respective parties, including a declaration of Defendants' duties to comply with the ADA, FMLA, and Title VII.

### Count Nine – Injunctive Relief

282.   Lorona restates and re-alleges the previous paragraphs of this Complaint as if fully set forth herein.

283.   No previous applications for the injunctive relief sought herein have been made to this Court.

284.   If this Court does not grant the injunctive relief sought herein, Lorona will be irreparably harmed.

285.   No plain, adequate, or complete remedy at law is available to Lorona to redress the wrongs addressed herein.

### DEMAND FOR JURY TRIAL

286.   Lorona demands trial by jury on all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, Lorona~~Plaintiff~~ requests the Court to enter judgment in favor of Lorona~~Plaintiff~~ and against Defendants as follows:

A.   Ordering Defendants to pay Lorona for the wages, salary, employment benefits, and other compensation denied or lost to Lorona by reason~~An award~~ of Defendants' violations of the ADA, FMLA and Title VII in an amount to be proven at trial; and

B.   Awarding Lorona actual, compensatory, consequential, statutory, and incidental damages in an amount to be proven at trial; and

C~~B~~.   Awarding Lorona punitive damages; and

D.   Awarding Lorona~~to Plaintiff~~ her costs, expenses, and attorneys' fees incurred herein as allowed by~~pursuant to A.R.S. §§ 23-1501 and other applicable~~ law; and

E.     Ordering Defendants to pay Lorona interest on such damages as are appropriate, including pre- and post- judgment interest; and

F.     Granting all injunctive relief necessary to bring Defendants into compliance with the ADA, FMLA and Title VII including reinstatement of Lorona's employment; and

G.     Granting a declaratory judgment that Defendants violated the ADA, FMLA and Tile VII and wrongfully terminated Lorona; and

H.     Granting such other and further~~C.  Other~~ relief as the court deems just and proper.

DATED

~~Dated~~ this 25~~22nd~~ day of June~~April,~~ 2015.

**MILLS + WOODS LAW PLLC**

By     /s/ Sean A. Woods
          Robert T. Mills
          Sean A. Woods
          5055 N 12th Street
          Suite 101
          Phoenix, AZ  85014
Attorneys for
                    ~~Paula C. Lorona,~~ Plaintiff

~~Original filed this 2nd day of March, 2015:~~

~~MARICOPA COUNTY SUPERIOR COURT~~
~~14264 W. Tierra Buena Lane~~
~~Surprise, AZ 85374~~

EXHIBIT 1

JT-1/UC-001 (7/11)



# ARIZONA JOINT TAX APPLICATION

**IMPORTANT:** *Incomplete applications WILL NOT BE PROCESSED. All required information is designated with asterisk* *
To complete this application see attached instructions. Please return Complete application with appropriate license fee(s) to: **License & Registration Section, Department of Revenue, PO BOX 29032, Phoenix AZ 85038-9032.**

**To complete this online, go to** www.aztaxes.gov ✓

---

| Section A: Taxpayer Information (Print legibly or type the information on this application.) |
|---|

**1. License Type (Check all that apply) ***
- [ ] Transaction Privilege Tax (TPT)
- [ ] Withholding/Unemployment Tax (*if hiring employees*)
- [x] Use Tax
- [ ] TPT For Cities ONLY

**2. Type of Ownership ***
- [ ] Individual / Sole Proprietorship
- [ ] Partnership
- [ ] Professional Limited Liability
- [x] Limited Liability Company
- [ ] Limited Liability Partnership
- [ ] Corporation
  - State of Inc. _____
  - Date of Inc. _____
- [ ] Sub-Chapter S Corporation
- [ ] Association
- [ ] Trust
- [ ] Government
- [ ] Estate
- [ ] Joint Venture
- [ ] Receivership

Tax exempt organizations must attach a copy of the Internal Revenue Service letter of determination.

**3. Federal Employer Identification Number (Required for Employers and Entities other than Sole Proprietors) or Social Security Number ***
14-1977610

**4. Legal Business Name / Owner / Employing Unit ***
Phoenix School of Law, LLC

**5. Business or "Doing Business As" Name ***
Phoenix School of Law

**6. Business Phone Number ***
602.682.6815

**7. Fax Number**
602.682.6998

**8. Mailing Address (Street, City, State, ZIP code) ***
Suite 1400
ONE NORTH Central Ave PHOENIX AZ, 85004

**9. Country**
U.S.A.

**10. Email Address**
jsmith@Phoenixlaw.edu

**11. Is your business located on an Indian Reservation?**
- [ ] Yes   If yes, _____ (See Section G for listing of Reservations)
- [x] No

**12. Physical Location of Business (Street, City, State, ZIP code) Do not use PO Box or Route No. ***

**13. County**
USA MARICOPA

| For additional business locations, complete Section B-12 |
|---|

**14. Are you a construction contractor? ***
- [ ] Yes   (See Bonding Requirements below)
- [x] No

**15. Did you acquire, or change the legal form of business of, all or part of an existing business? ***
- [ ] Yes   If yes, you must complete the Unemployment Tax Information (Section D)
- [x] No

**Bonding Requirements:** Prior to the issuance of a Transaction Privilege Tax license, new or out-of-state contractors are required to post a Taxpayer Bond for Contractors, unless the Contractor qualifies for an exemption from the bonding requirement. The primary type of contracting being performed determines the amount of bond to be posted. Bonds may also be required from applicants who are delinquent in paying Arizona taxes or have a history of delinquencies. For more information on bonding, please see the "Taxpayer Bonds" publication, which is available online or at the Department of Revenue offices.

**16. Description of Business (Must include type of merchandise sold or taxable activity; for employers, the type of employment) ***
LAW SCHOOL . LEGAL EDUCATION.

**17. NAICS Code:** (Select at least one. Go to www.aztaxes.gov for a listing of codes) *
611310       *Account.*

**18. Identification of Owner, Partners, Corporate Officers, Members / Managing Members or Officials of this employing unit**

| A. Name (Last, First, MI) * | B. Soc. Sec. No. * | C. Title * | D. % Owned * | E. Complete Residence Address * | F. Phone Number * |
|---|---|---|---|---|---|
| Scott Thompson | 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 | DIRECTOR OF FIN | 0 | ONE N. CENTRAL AVE, STE 1400, PHX, AZ 85004 | 602-682-6815 |
| Judy Smith. | | | | | |
| | | | | | |
| | | | | | |

If the owner, partners, corporate officers or combination of partners or corporate officers, members and/or managing members own more than 50% of or control another business in Arizona, attach a list of the businesses, percentages owned and unemployment insurance account numbers.

| THIS BOX FOR AGENCY USE ONLY |
|---|

- [ ] New   Acct. No. _____   LIAB _____   DLN _____
- [ ] Change   Start _____   LIAB Est. _____   TPT _____
- [ ] Revise   S/E Date _____   WH _____
- [ ] Reopen

ADOR 10194 (7/11)



# APPLICATION FOR TRANSACTION PRIVILEGE (SALES) TAX LICENSE

**ACCOUNT NO.**

**City of Phoenix**
**Finance Department**
Tel:   602-262-6785,
       press 4,1
TTY: 602-534-5500

FEE MUST BE MAILED WITH APPLICATION (see page 3)



PAT0711



| Check one: ● Permanent ○ Temporary | Check one: ● New Business ○ New Owner of Existing Business | Previous City License # | Former Owner (if applicable) |
|---|---|---|---|

| Section I. Business Information | Verify if your business is in Phoenix www.phoenix.gov/webpmo.html |
|---|---|

**Business Name (Individual, Company or "DBA" first name first):**  PHOENIX SCHOOL OF LAW, LLC    **Owning Entity Name (Corp, LLC etc.):**  4 LLC

Physical Business Street Address of retail store, rental property, etc (NOT a P.O. Box Number, a PMB, or single family home rentals)
ONE N CENTRAL AVE, STE 1400

City, State, Country, Zip Code +4:  PHOENIX, AZ  85004-4460    **Business Phone (Including Area Code)**  602-682-6815

**When did your tax liability start in Phoenix?**    E-Mail address:

State License #:    Federal ID #:  74-1977610

| OFFICE USE ONLY |
|---|
| NOV Date or DISV # |
| ST Code |
| / |
| / |
| / |
| NAICS Code |
| Rental Units |
| Owner Type |
| Report Method   C   A |
| Liability Date |
| Entered by |
| I Edited by |
| Approved by |

| Section II. Mailing Address & Phone Number |
|---|

Enter Name if Different from Section I (above) or Enter Care-of Name:

Mailing Address:

City, State, Country, Zip Code +4:    Phone (Including Area Code)

| Section III. Business Ownership | * Sole and Husband/Wife must submit a photo ID with application. See instructions for more info. |
|---|---|

Ownership:  ☐ *Sole   ☐ *Husband/Wife   ☒ LLC   ☐ Corp.-State Inc. _____   ☐ Gen. Partnership   ☐ Ltd. Partnership
☐ Revocable Trust   ☐ Irrevocable Trust   ☐ Other explain _____

| List of officers attached? ○ Yes ○ No | 1)Name | | Title |
|---|---|---|---|
| | Home Address | | SSN # |
| | City, State, Country, Zip Code +4: | | Phone No. |
| | 2)Name | | Title |
| | Home Address | | SSN # |
| | City, State, Country, Zip Code +4: | | Phone No. |

| Section IV. Business Type (Check all that apply) Provide a detailed description of your business. |
|---|

Do you sell Liquor? ☐ Yes ☒ No
**Accounting Method**
☐ Cash
☒ Accrual

☐ Retail   ☐ Restaurant/Bar   ☐ Hotel/Motel
☐ Commercial Rental Property   ☐ Residential Rental Property-# of Units _____
☐ Advertising   ☐ Job Printing   ☐ Personal Property Rental
☐ Short Term Motor Vehicle Rental   ☐ Telecommunications   ☐ Amusement
☐ Construction Contracting  AROC# _____   ☐ Home Builder/Spec. Sale
☒ Use Tax (Phoenix Business) ☐ Use Tax (Out of State Business with no AZ Nexus)

**NAICS Code: (6 digit)**  6 1 1 3 1 0
Principal business codes available at:
www.naics.com search.htm

Describe Nature of Business:  PRIVATE UNIVERSITY

| Section V. Business Premises Status |
|---|

Do you own your business location? ☐ Yes ☒ No    If yes, is this your residence?   ☐ Yes ☒ No    If yes, skip to Signature
Do you rent a portion of the business premises to another entity or business? ☒ No ☐ Yes   If yes, see instructions for more info.

**Landlord/Property Manager**  RYAN    **Mailing Address**  One N. Central - Phoenix AZ    **Phone Number**

I certify that the statements made in this application are true and complete to the best of my knowledge.  I accept the permit authorized and issued in response to this application with the condition that I report timely and pay any and all taxes due by me to the City of Phoenix.
*IF APPLICABLE. BE SURE ALL SALES TAX HAS BEEN PAID BY FORMER OWNER.*
*BY LAW YOU MAY BE LIABLE FOR ANY UNPAID TAX.*

**FOR CITY USE ONLY BELOW**

*Applications received incomplete or without payment may not be processed.*

| Print Name | Title |
|---|---|
| Signature | Date |

Checks Payable to Phoenix City Treasurer, P.O. Box  2005 , Phoenix, AZ 85001-2005

JT-1/UC-001 (7/11)

Page 2

## Section B:   Transaction Privilege Tax (TPT)

| 1. Date Business Started in Arizona * | 2. Date Sales Began * | 3. What is your anticipated annual income for your first twelve months of business? |
|---|---|---|
| 7/1/02 | 8/1/18 | 380 million |

4. Business Classes (Select at least one. See Section H for a listing of business classes on page 4) *

029   USE TAX PURCHASES

| 5. TPT Filing Method | 6. Does your business sell tobacco products? | 7. Does your business sell new motor vehicle tires or vehicles? |
|---|---|---|
| ☐ Cash Receipts<br>☒ Accrual | ☐ Yes   If yes, ☐ Retailer<br>OR<br>☒ No   ☐ Distributor | ☒ No<br>☐ Yes   (You will be required to file a TR-1.) |

| 8. Are you a seasonal filer? | If yes, please check the months in which you intend to do business: |
|---|---|

| | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ☐ Yes   ☒ No | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |

9. Location of Tax Records (Street Address, City, State and ZIP code) Do not use PO Box or Route No. *

| 10. Name of Company or Person to Contact   Judy Smith | 11. Phone Number   602-682-6815 |
|---|---|

**For additional locations, complete the following:  (If more space is needed, please attach additional sheets)**

| 12. "Doing Business As" Name for this Location | 13. Phone Number |
|---|---|

14. Physical Location Address (Do not use PO Box or Route No.)

| 15. City | 16. County | 17. State | 18. ZIP code |
|---|---|---|---|

| 19. "Doing Business As" Name for this Location | 20. Phone Number |
|---|---|

21. Physical Location Address (Do not use PO Box or Route No.)

| 22. City | 23. County | 24. State | 25. ZIP code |
|---|---|---|---|

## Section C:  Program Cities / License Fees  Below is a list of cities and towns licensed by the Arizona Department of Revenue.

| City/Town | Code | Fee | No. of Loc | Total | City/Town | Code | Fee | No. of Loc | Total | City/Town | Code | Fee | No. of Loc | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Benson | BS | 5.00 | | | Hayden | HY | 5.00 | | | Show Low | SL | 2.00 | | |
| Bisbee | BB | 1.00 | | | Holbrook | HB | 1.00 | | | Sierra Vista | SR | 1.00 | | |
| Buckeye | BE | 2.00 | | | Huachuca City | HC | 2.00 | | | Snowflake | SN | 2.00 | | |
| Camp Verde | CE | 2.00 | | | Jerome | JO | 2.00 | | | South Tucson | ST | 2.00 | | |
| Carefree | CA | 10.00 | | | Kearny | KN | 2.00 | | | Springerville | SV | 5.00 | | |
| Casa Grande | CG | 2.00 | | | Kingman | KM | 2.00 | | | St. Johns | SJ | 2.00 | | |
| Cave Creek | CK | 20.00 | | | Lake Havasu | LH | 5.00 | | | Star Valley | SY | 2.00 | | |
| Chino Valley | CV | 2.00 | | | Litchfield Park | LP | 2.00 | | | Superior | SI | 2.00 | | |
| Clarkdale | CD | 2.00 | | | Mammoth | MH | 2.00 | | | Surprise | SP | 10.00 | | |
| Clifton | CF | 2.00 | | | Marana | MA | 5.00 | | | Taylor | TL | 2.00 | | |
| Colorado City | CC | 2.00 | | | Maricopa | MP | 2.00 | | | Thatcher | TC | 2.00 | | |
| Coolidge | CL | 2.00 | | | Miami | MM | 2.00 | | | Tolleson | TN | 2.00 | | |
| Cottonwood | CW | 2.00 | | | Oro Valley | OR | 12.00 | | | Tombstone | TS | 1.00 | | |
| Dewey/Humboldt | DH | 2.00 | | | Page | PG | 2.00 | | | Tusayan | TY | 2.00 | | |
| Duncan | DC | 2.00 | | | Paradise Valley | PV | 2.00 | | | Wellton | WT | 2.00 | | |
| Eagar | EG | 10.00 | | | Parker | PK | 2.00 | | | Wickenburg | WB | 2.00 | | |
| El Mirage | EM | 15.00 | | | Patagonia | PA | 25.00 | | | Williams | WL | 2.00 | | |
| Eloy | EL | 10.00 | | | Payson | PS | 2.00 | | | Winkelman | WM | 2.00 | | |
| Florence | FL | 2.00 | | | Pima | PM | 2.00 | | | Winslow | WS | 10.00 | | |
| Fountain Hills | FH | 2.00 | | | Pinetop/Lakeside | PP | 2.00 | | | Youngtown | YT | 10.00 | | |
| Fredonia | FD | 10.00 | | | Prescott Valley | PL | 2.00 | | | Yuma | YM | 2.00 | | |
| Gila Bend | GI | 2.00 | | | Quartzsite | QZ | 2.00 | | | | | | | |
| Gilbert | GB | 2.00 | | | Queen Creek | QC | 2.00 | | | | | | | |
| Globe | GL | 2.00 | | | Safford | SF | 2.00 | | | | | | | |
| Goodyear | GY | 5.00 | | | Sahuarita | SA | 5.00 | | | | | | | |
| Guadalupe | GU | 2.00 | | | San Luis | SU | 2.00 | | | | | | | |

▶ Please Note:  City fees are subject to change (go to our website for updates). For cities not listed above, please contact the cities directly. Your license will not be issued until all fees are paid.

| Total of City Fees: | |
|---|---|
| State Fees $12.00 X _____ Number of Locations: | |
| TOTAL Fees: | |

ADOR 10194 (7/11)

JT-1/UC-001 (7/11)                                                                                                     Page 3

| Section D: | Withholding/Unemployment Tax Information |
|---|---|

| 1. Date Employees First Hired in Arizona. * | 2. Are you liable for Federal Unemployment Tax? | 3. Are individuals performing services that are excluded from withholding or unemployment tax? |
|---|---|---|
| | ☐ Yes   If yes, what was the first year of liability? | ☐ Yes   If yes, describe the services: |
| | ☐ No    Year _____ | ☐ No |

| 4. Do you have an IRS Ruling that grants an exclusion from Federal Unemployment Tax? | 5. Do you have or have you previously had an Arizona Unemployment Tax Number? |
|---|---|
| ☐ Yes   If yes, attach a copy of the Ruling Letter. | ☐ No |
| ☐ No | ☐ Yes   If yes, Business Name _____ |
| | Unemployment Number _____ |

6. Record of Arizona wages paid by calendar quarter for current and preceding calendar year.

| YEAR | 1ST QUARTER | 2ND QUARTER | 3RD QUARTER | 4TH QUARTER |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

7. Weekly record of number of persons performing services in Arizona for current and preceding calendar year.

| YEAR | JANUARY | FEBRUARY | MARCH | APRIL | MAY | JUNE |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

| YEAR | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | DECEMBER |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

**Complete this section if you acquired, or changed the legal form of business of, all or part of an existing Arizona business.**

| 8. Date Acquired or Date Legal Form of Business changed * | 9. Acquired, or Changed Legal Form of Business of, * | 10. Acquired by * | If other, including change in legal form of business, explain: |
|---|---|---|---|
| | ☐ All | ☐ Purchase | |
| | ☐ Part   If part, to obtain an unemployment tax rate based on the business's previous account you must request it no later than 180 days after the date entered in item 8 of this section. See instructions. | ☐ Lease | |
| | | ☐ Other | |

Previous Owner Information or Previous Legal Form of Business Information (See instructions.)

| 11. Name(s) of Previous Owner(s) * | 12. Business Name of Previous Owner(s) * |
|---|---|
| | |

| 13. Current Mailing Address of Previous Owner(s) (Street, City, State, ZIP code) |
|---|
| |

| 14. Current Telephone Number of Previous Owner(s) | 15. Unemployment Account Number of Previous Owner(s) |
|---|---|
| | |

Voluntary Election of Unemployment Insurance Coverage (subject to Unemployment Tax Office approval).

16. The applicant, on behalf of the employing unit, voluntarily elects beginning January 1 of the current calendar year or the date employment started, if later, and continuing for not less than two calendar years, to:

☐ A. Be deemed an employer subject to Title 23, Chapter 4, Arizona Revised Statutes, to the same extent as all other such employers and provide unemployment insurance coverage to my workers performing services defined by law as employment, even though I have not met conditions requiring me to provide such coverage.

☐ B. Extend unemployment insurance coverage to workers referred to in item 2, above, by having the services they perform be deemed to constitute. Employment by an employer subject to Title 23, Chapter 4, A.R.S.

ADOR 10194 (7/11)

JT-1/UC-001 (7/11)                                                                                          Page 4

**Section E:  AZTaxes.gov Security Administrator (Authorized User)**

By electing to register for www.aztaxes.gov you can have online access to account information, and file and pay Arizona transaction, use, and withholding taxes.  You also designate authorized users to access these services.

[X] I Elect to Register to use aztaxes.gov to file and pay online.

[ ] I DO NOT Elect to Register to use aztaxes.gov to file and pay online.

| 1. Authorized Users Last Name | 2. Authorized Users First Name |
|---|---|
| Smith | Judy |

| 3. Authorized Users Title | 4. Authorized Users Social Security Number |
|---|---|
| Director of Finance | 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 |

| 5. Authorized Users Email Address | 6. Authorized Users Phone Number |
|---|---|
| JSmith@PhoenixLaw.edu | 602-682-6815 |

**Section F:   Signature(s) by individuals legally responsible for the business (required)**

This application must be signed by either a sole owner, partners, corporate officer, managing member, the trustee, receiver or personal representative of an estate.

Under penalty of perjury I (we), the applicant, declare that the information provided on this application is true and correct.  I (we) hereby authorize the security administrator, if one is listed in Section E, to access the AZTaxes.gov site for the business identified in Section A.  This authority is to remain in full force and effect until the Arizona Department of Revenue has received written termination notification from an authorized officer.

| Type or Print Name | Title | Signature | Date |
|---|---|---|---|
| Judy Smith | Director of... | /s/ Judy Smith | |
| Scott Thompson | President | /s/ Scott Thompson | |

**THIS APPLICATION MUST BE COMPLETED, SIGNED AND RETURNED AS PROVIDED BY ARS § 23-722**
Equal Opportunity Employer/Program • This document available in alternative formats by contacting the UI Tax Office.

**Section G:  Indian Reservation Codes**

| Indian Reservation (County) | Code | Indian Reservation (County) | Code | Indian Reservation (County) | Code | Indian Reservation (County) | Code |
|---|---|---|---|---|---|---|---|
| Ak-Chin (Pinal) | PNA | Hopi (Coconino) | COJ | Pascua-Yaqui (Maricopa) | MAN | Tohono O'dham (Pinal) | PNT |
| Cocopah (Yuma) | YMB | Hopi (Navajo) | NAJ | Pascua-Yaqui (Pima) | PMN | Tonto Apache (Gila) | GLU |
| Colorado River (La Paz) | LAC | Hualapai (Coconino) | COK | Salt River Pima-Maricopa (Mar.) | MAO | White Mtn Apache (Apache) | APD |
| Fort McDowell-Yavapai (Mar.) | MAE | Hualapai (Mohave) | MOK | San Carlos Apache (Gila) | GLP | White Mtn Apache (Gila) | GLD |
| Fort Mohave (Mohave) | MOF | Kaibab-Paiute (Coconino) | COL | San Carlos Apache (Graham) | GRP | White Mtn Apache (Graham) | GRD |
| Fort Yuma-Quechan (Yuma) | YMG | Kaibab-Paiute (Mohave) | MOL | San Carlos Apache (Pinal) | PNP | White Mtn Apache (Navajo) | NAD |
| Gila River (Maricopa) | MAH | Navajo (Apache) | APM | San Juan Southern Paiute (Coco.) | COQ | Yavapai Apache (Yavapai) | YAW |
| Gila River (Pinal) | PNH | Navajo (Coconino) | COM | Tohono O'Odham (Maricopa) | MAT | Yavapai Prescott (Yavapai) | YAX |
| Havasupai (Coconino) | COI | Navajo (Navajo) | NAM | Tohono O'Odham (Pima) | PMT | | |

**Section H:  Business Classes**

| Business Class | Code | Business Class | Code | Business Class | Code | Business Class | Code |
|---|---|---|---|---|---|---|---|
| Mining - Nonmetal | 002 | Commercial Lease | 013 | Use Tax - Utilities | 026 | Jet Fuel Tax | 049 |
| Utilities | 004 | Personal Property Rental | 014 | Rental Occupancy Tax | 028 | Jet Fuel Use Tax | 051 |
| Communications | 005 | Contracting - Prime | 015 | Use Tax Purchases | 029 | Rental Car Surcharge | 053/055 |
| Transporting | 006 | Retail | 017 | Use Tax from Inventory | 030 | Jet Fuel Tax > 10 million gallons | 056 |
| Private Car - Pipeline | 007/008 | Severance - Metalliferous Mining | 019 | Telecommunications Devices | 033 | Use Tax Direct Payments | 129 |
| Publication | 009 | Severance - Timbering Ponderosa | 021 | 911 Wireless Telecommunications | 036 | 911 Wireline Telecommunications | 131 |
| Job Printing | 010 | Severance - Timbering Other | 022 | Contracting - Owner Builder | 037 | Rental Car Surcharge - Stadium | 153 |
| Restaurants and Bars | 011 | Recreational Vehicle Surcharge | 023 | Municipal Water | 041 | | |
| Amusement | 012 | Transient Lodging | 025 | Membership Camping | 047 | | |

ADOR 10194 (7/11)

# INSTRUCTIONS FOR ARIZONA JOINT TAX APPLICATION

**IMPORTANT:** You must complete each of the following sections or your application will be returned

- **For licensing questions on Transaction Privilege, Withholding or Use Tax (Department of Revenue) call (602) 542-4576 or 1-800-634-6494 (from area codes 520 and 928).**

- **For Unemployment Tax (Department of Economic Security) call (602) 771-6602 or e-mail uit.status@azdes.gov**

## USE THIS APPLICATION TO:

- **License New Business:** A new business with no previous owners.

- **Change Ownership:** If acquiring or succeeding to all or part of an existing business or changing the legal form of your business (sole proprietorship to corporation, etc.).

  If you need to update a license, add a business location, get a copy of your license or make other changes: **Complete a Transaction Privilege Tax License Update form and include fees of $12 per location.**

## Section A: TAXPAYER INFORMATION

### 1. LICENSE TYPE

**Transaction Privilege Tax (TPT):** Anyone involved in an activity taxable under the TPT statutes must apply for a TPT License before engaging in business.

For TPT, you are required to obtain and display a separate license certificate for each business or rental location. This may be accomplished in one of the following ways:

Each location may be licensed as a separate business with a separate license number for purposes of reporting transaction privilege and use taxes individually. Therefore a separate application is needed for each location.

Multiple locations may be licensed under a consolidated license number, provided the ownership is the same, to allow filing of a single tax return. If applying for a new license, list the various business locations as instructed below. If already licensed and you are adding locations, *do not use this application to consolidate an existing license. Please submit update form.*

**Withholding & Unemployment Taxes:** Employers paying wages or salaries to employees for services performed in the State must apply for a Withholding number & Unemployment number.

**Use Tax:** Out-of-state vendors (that is, vendors with no Arizona location) making direct sales into Arizona must obtain a Use Tax Registration Certificate. In-state vendors making out-of-state purchases for their own use (and not for resale) must also obtain the Use Tax Registration Certificate.

**TPT for cities only:** This type of license is needed if your business activity is subject to city TPT that is collected by the state, but the activity is not taxed at the state level. Many of the larger cities in Arizona administer and collect their own privilege taxes. Please contact those cities directly to obtain information regarding licensing requirements.

### 2. TYPE OF OWNERSHIP

Check as applicable. A corporation must provide the state and date of incorporation.

### 3. Enter your **Federal Employer Identification number.**

- Taxpayers are required to provide their taxpayer identification number (TIN) on all returns and documents. A TIN is defined as the federal employer identification number (EIN), or social security number (SSN) depending upon how income tax is reported. The EIN is required for all employers. A penalty of $5 will be assessed

by the Department of Revenue for each document filed without a TIN.

4. Enter the **Legal Business Name** of the Owner or Employing Unit (name of corporation as listed in its articles of incorporation, or individual & spouse, or partners, or organization owning or controlling the business).

5. Enter the name of the **Business/DBA (doing business as) Name.** If same as above, enter "same."

6. Enter the **business telephone number** including area code.

7. Enter the **fax number** including area code.

8. **and 9.** Enter **mailing address** where all correspondence is to be sent. You may use your home address, corporate headquarters, or accounting firm's address, etc. If mailing address differs for licenses (for instance withholding and unemployment insurance), please use cover letter to explain.

10. Enter the **e-mail address** (option) for the business or contact person.

11. See section G for listing of **reservation codes** if your business is located on an Indian Reservation.

12. **and 13.** Enter the **physical location** of business including county. This can not be a PO Box or Route Number.

14. If you are a **construction contractor**, read the bonding requirements carefully.

15. If you answered yes, you must complete Section D.

16. Describe the major business activity: principal product you manufacture, commodity sold, or services performed. Your description of the business is very important because it determines your transaction privilege tax rate and provides a basis for state economic forecasting.

17. Enter the **North American Industries Classification System (NAICS) code** identified for your business activity.

    **18.** Identify the owners of the business. Enter as many as applicable; attach a separate sheet if additional space is needed.

## Section B: TRANSACTION PRIVILEGE TAX (TPT)

1. Enter the date the business started in Arizona.

2. Enter **date sales began in Arizona**, or estimate when you plan to begin selling in Arizona.

3. Enter the amount of Transaction Privilege Tax income you can reasonably expect to generate in your first twelve months of business. You will be set up for monthly filing unless your anticipated annual income will result in a tax liability of less than $1,250, which may qualify you for quarterly filing.

4. For businesses applying for Transaction Privilege and/or Use Tax, enter the applicable **business classes** based on your activity. See Section H for listing of business classes.

# TRANSACTION PRIVILEGE, USE, AND SEVERANCE TAX RETURN (TPT-1)

TPT-1 return must be received by the 20th day of the month following the reporting period.

**Arizona Department of Revenue**
PO BOX 29010 • PHOENIX, AZ 85038-9010
For assistance out-of-state or in the Phoenix area: (602) 255-2060 or
Statewide, toll free from area codes 520 and 928: (800) 843-7196

STATE LICENSE NUMBER.

TAXPAYER IDENTIFICATION NUMBER:
☒ EIN  ☐ SSN   14-1977610

PERIOD BEGINNING                 PERIOD ENDING

## I. TAXPAYER INFORMATION

☐ Amended Return   ☐ Multipage Return   ☐ One-Time Only Return   ☐ Final Return: *(CANCEL LICENSE)*

BUSINESS NAME
PHOENIX SCHOOL OF LAW, LLC.
C/O

ADDRESS
ONE N CENTRAL AVE, STE 1400
CITY                    STATE  ZIP
PHOENIX            AZ    85004

☐ Address Changed

DOR USE ONLY                              ☐ LABELED RETURN

POSTMARK DATE

RECEIVED DATE

## II. TRANSACTION DETAIL *(If more reporting lines are necessary, please attach continuation pages.)*

| LINE | (A) BUSINESS DESCRIPTION | (B) REGION CODE | (C) BUSINESS CLASS | (D) GROSS AMOUNT | (E) DEDUCTION AMOUNT | (F) NET TAXABLE AMOUNT | (G) TAX RATE | (H) TOTAL TAX AMOUNT | (I) ACCOUNTING CREDIT RATE | (J) = (F × I) ACCOUNTING CREDIT |
|------|--------------------------|-----------------|--------------------|------------------|----------------------|------------------------|--------------|----------------------|----------------------------|---------------------------------|
| 1 | PRIVATE UNIVERSITY | MAR | 229 | | | | | | | |
| 2 | | | | | | | | | | |
| 3 | | | | | | | | | | |
| 4 | | | | | | | | | | |
| 5 | | | | | | | | | | |
| Subtotal | | | | | | | | | | |

## III. TAX COMPUTATION

| | | |
|---|---|---|
| 1 Total deductions from Schedule A | 1 | |
| 2 Total Tax Amount (from column H) | 2 | |
| 3 State excess tax collected | + 3 | |
| 4 Other excess tax collected | + 4 | |
| 5 Total Tax Liability: *Add lines 2, 3, and 4* | = 5 | |
| 6 Accounting Credit (from column J) | 6 | |
| 7 State excess tax accounting credit: *Multiply line 3 by .01* | + 7 | |
| 8 Total Accounting Credit: *Add lines 6 and 7* | = 8 | |
| 9 Net tax due line: *Subtract line 8 from line 5* | 9 | |
| 10 Penalty and interest | + 10 | |
| 11 TPT estimated payments to be used | - 11 | |
| 12 Total amount due this period | = 12 | |
| 13 Additional payment to be applied (for other periods) | + 13 | |
| 14 TOTAL AMOUNT REMITTED WITH THIS RETURN | = 14 | |

**AMENDED RETURN ONLY**
ORIGINAL REMITTED AMOUNT
$

DOR USE
$

*Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.*

► 
PAID PREPARER'S SIGNATURE (OTHER THAN TAXPAYER)

► 
TAXPAYER'S SIGNATURE                 DATE          PAID PREPARER'S EIN OR SSN

ADOR 10872 (6/10)
Previous ADOR 60-1046

**Please make check payable to Arizona Department of Revenue.**

**Office Location: 3rd Floor, 251 W. Washington St.**
Mailing Address: P.O. Box 2005, Phoenix, AZ 85001-2005
Telephone: (602) 262-6785, press 4
   TDD (602)534-5500
www.phoenix.gov/plt          email  tax @phoenix.gov
This material is available in alternative formats.

## WHO IS REQUIRED TO HAVE A PRIVILEGE (SALES) LICENSE? (See Phoenix Tax Code Section 14-300)
1. Every person desiring to engage or continue in business activities within the City upon which a Privilege Tax is imposed.
2. Every person, engaging or continuing in business within the City, storing or using tangible personal property in this City upon which a Use Tax is imposed.
3. Every person required to report and pay a tax upon Rental Occupancy, as imposed by Phoenix Tax Code Section 14-440.
A person engaged in more than one activity subject to City Privilege and Use Taxes at any one business location is not required to obtain a separate license for each activity provided that, at the time such person makes application for a license, he shall list on such application each category or activity in which he is engaged. The licensee shall inform the Tax Collector of any changes in his business activities within thirty (30) days.
This license does not preclude the authority of other city agencies. You should call the Planning and Zoning Department, (602) 262-7844, if you have any questions concerning land use or sign placement before engaging in business.

## GENERAL INSTRUCTIONS
*All information given on this application is public information (except Social Security number)*
The application is used for data entry and must be <u>TYPED OR PRINTED IN BLACK INK</u>. Return the completed application to the City of Phoenix, enclosing the appropriate fee with a check payable to Phoenix City Treasurer. There is also an annual license fee that must be paid prior to issuance of a license.

If you are a new owner of an existing business, please provide the name and Phoenix license number of the previous owner. ***Check to be sure that the person you are buying the business from owes no back taxes or fees to the City of Phoenix. By law you may be responsible for all back taxes and fees.***

The Privilege License shall be nontransferable between owners and shall be on display to the public in the licensee's place of business. Except as provided in Phoenix Tax Code Section 14-320, the Privilege License shall be valid until request for cancellation and/or surrender of the license by the licensee of the business activity for which it was issued.

Application must be completed, signed and returned with fees to be processed. **Incomplete applications or applications submitted without payment may not be processed and will delay your business activity.** Your license must be obtained and fees fully paid prior to engaging in business.
Permanent licenses are for an on-going year around business. Temporary licenses or Special Events licenses are issued only for periods of up to 30 consecutive days for a total fee of $25.00. Complete the following sections:

Check one: O Permanent     Check one: O New Business          Previous City License #     Former Owner (if applicable)
            O Temporary                O New Owner of Existing Business

**Section I – Business Information** *verify if your business is in Phoenix www.phoenix.gov/azmap.htm*

| | |
|---|---|
| Business Name: | Business name if using one. If not, list name of the business owner. Property managers applying on behalf of a client should indicate the property owner's name in this section. |
| Owning Entity Name: | List the ownership name of the business if different from business name. |
| Business Address & Phone: | Physical address of your Phoenix business location, including suite, unit, or apartment number. A P.O. Box or PMB is not acceptable for a business location. A separate license application must be completed for each multi-unit property and/or all commercial property. For single family residential rental property please use the owners home address. The phone number listed here should correspond to the Phoenix business location. (For further information regarding residential rentals see Quick Fact Sheet located in the Residential Rentals section) |
| Liability Start Date: | The date (month/day/year) in which you will begin taxable business activity in Phoenix. Licensing fees are based on this date. |
| E-mail address: | The email address for the person who should receive general Phoenix Privilege (Sales) and Use Tax information and updates |
| State Tax License #: | www.revenue.state.az.us |
| Federal ID #: | www.irs.gov |

## Section II – Mailing Address & Phone Number-Complete this area only if the information is different from Section I.
This area is for the name of the person and the address to which the business license and tax return mail will be sent. Please include suite, unit, or apartment numbers.

**Section III – Business Ownership** (Please indicate the type of ownership. If you mark "Other" please describe.)

Ownership:
Sole or Husband/Wife ownerships must provide a color copy of their identification. See website for acceptable forms of identifications. All corporations must provide the State of incorporation and at least two officers information. A "LLC" must have at least the Managing Member. General Partnerships must provide the names of the general partner(s). You may attach a list to the application

Owners/Partners/Corporate Officers/LLC Members
List complete owner/officer/partner information as requested including names and titles. Please use the home (not business) address for each officer/partner. P.O. Box numbers or PMB's are not acceptable for home addresses.

**Section IV – Business Type** (Check all that apply)
Do you sell Liquor? If "Yes" contact License Services @ (602) 262-4638 Option #3 or email: clk.liquor.license@phoenix.gov.

Mark "Cash" if you recognize income based upon the date funds are received. Mark "Accrual" if you recognize income when earned regardless of when the cash is received.

Provide a detailed description of business activity. If retail sales, list type of items to be sold; if construction contracting, list type of contracting, etc. Please indicate your Contractor's number with the Arizona Registrar of Contractors if you checked construction contracting.
NAICS Code: (6 digit)   Principal business codes available at: www.naics.com/search.htm

**Section V – Business Premises Status**
Please indicate whether or not you own your business location. If you answer "No", please provide the name of the legal owner or property manager along with their mailing address and phone number. If you lease or take considerations for use of property from a related entity you own, this is taxable as commercial rental and an additional license would be needed.

<h2 style="text-align:center">FEE SCHEDULE</h2>

**A NON-REFUNDABLE APPLICATION FEES MUST BE PAID AT THE TIME OF APPLICATION: Any combination of activities may result in additional fees. If license fees are not paid in full within 30 days of start date, a 50 percent late fee will be assessed.**

| | | |
|---|---|---|
| **Commercial Rental or Use Tax Activity only.** | For persons engaged exclusively in the rental and leasing of nonresidential real property or Use Tax, a $20 application fee is charged. | $20 total due |

| | | | |
|---|---|---|---|
| **Residential Rental Activity** | For persons engaged in the rental of residential real property, a $2 pro-rated fee per unit is charged with an annual cap of fifty ($50) dollars per license, based on the Phoenix Tax Liability Start Date, per the chart below: | | $20 Application Fee **plus** pro-rated Annual License Fee |
| | Start Date | Pro-Rated Annual Fee Per Unit | 50% Late Fee Per Unit |
| | January 1 – March 31 | $2.00 | $1.00 |
| | April 1 – June 30 | $1.50 | $.75 |
| | July 1 – September 30 | $1.00 | $.50 |
| | October 1 – December 31 | $.50 | $.25 |

| | | | |
|---|---|---|---|
| **All other types of business excluding Residential Rental, Commercial Rental and Use Tax** | For persons engaged in the activities listed, a $50 pro-rated fee is charged, based on the Phoenix Tax Liability Start Date, per the chart below: | | $20 Application Fee **plus** pro-rated Annual License Fee |
| | Start Date | Pro-Rated Annual Fee | 50% Late Fee |
| | January 1 – March 31 | $50.00 | $25.00 |
| | April 1 – June 30 | $37.50 | $18.75 |
| | July 1 – September 30 | $25.00 | $12.50 |
| | October 1 – December 31 | $12.50 | $6.25 |

Any licensee who permits his license to expire through cancellation as provided in Phoenix Tax Code Section 14-320, by his request for cancellation by surrender of the license, or by the cessation of the business activity for which the license was issued, and who thereafter applies for a license, shall be granted a new license as an original application and shall pay the current license fee. Any licensee who loses or misplaces his Privilege License that is still in effect shall be charged the current license fee for each reissuance of a license.        Rev. 10/20/09

EXHIBIT 2

JT-1/UC-001 (7/11)



# ARIZONA JOINT TAX APPLICATION

**IMPORTANT:** *Incomplete applications WILL NOT BE PROCESSED. All required information is designated with asterisk* *

To complete this application see attached instructions. Please return Complete application with appropriate license fee(s) to: **License & Registration Section, Department of Revenue, PO BOX 29032, Phoenix AZ 85038-9032.**

**To complete this online, go to   www.aztaxes.gov** ✓

## Section A: Taxpayer Information (Print legibly or type the information on this application.)

**1. License Type (Check all that apply) ***
- [ ] Transaction Privilege Tax (TPT)
- [ ] Withholding/Unemployment Tax (*if hiring employees*)
- [x] Use Tax
- [ ] TPT For Cities ONLY

**2. Type of Ownership ***
- [ ] Individual / Sole Proprietorship
- [ ] Partnership
- [ ] Professional Limited Liability
- [x] Limited Liability Company
- [ ] Limited Liability Partnership
- [ ] Corporation
  - State of Inc. _____
  - Date of Inc. _____
- [ ] Sub-Chapter S Corporation
- [ ] Association
- [ ] Trust
- [ ] Government
- [ ] Estate
- [ ] Joint Venture
- [ ] Receivership

Tax exempt organizations must attach a copy of the Internal Revenue Service letter of determination.

**3. Federal Employer Identification Number (Required for Employers and Entities other than Sole Proprietors) or Social Security Number ***
14-1977610

**4. Legal Business Name / Owner / Employing Unit ***
Phoenix School of Law, LLC

**5. Business or "Doing Business As" Name ***
Phoenix School of Law

**6. Business Phone Number ***
602.682.6815

**7. Fax Number**
602.682.6998

**8. Mailing Address (Street, City, State, ZIP code) ***
ONE NORTH CENTRAL AVE   Suite 1400   PHOENIX AZ,   85004

**9. Country**
U.S.A.

**10. Email Address**
jsmith @ Phoenixlaw.edu

**11. Is your business located on an Indian Reservation?**
- [ ] Yes   If yes, _____   (See Section G for listing of Reservations)
- [x] No

**12. Physical Location of Business (Street, City, State, ZIP code) Do not use PO Box or Route No. ***

**13. County**
USA MARICOPA

### For additional business locations, complete Section B-12

**14. Are you a construction contractor? ***
- [ ] Yes   (See Bonding Requirements below)
- [x] No

**15. Did you acquire, or change the legal form of business of, all or part of an existing business? ***
- [ ] Yes   If yes, you must complete the Unemployment Tax Information (Section D)
- [x] No

**Bonding Requirements:** Prior to the issuance of a Transaction Privilege Tax license, new or out-of-state contractors are required to post a Taxpayer Bond for Contractors, unless the Contractor qualifies for an exemption from the bonding requirement. The primary type of contracting being performed determines the amount of bond to be posted. Bonds may also be required from applicants who are delinquent in paying Arizona taxes or have a history of delinquencies. For more information on bonding, please see the "Taxpayer Bonds" publication, which is available online or at the Department of Revenue offices.

**16. Description of Business (Must include type of merchandise sold or taxable activity; for employers, the type of employment) ***
LAW SCHOOL. LEGAL EDUCATION.

**17. NAICS Code:** (Select at least one. Go to www.aztaxes.gov for a listing of codes) *
611310                                                                         Account.

**18. Identification of Owner, Partners, Corporate Officers, Members / Managing Members or Officials of this employing unit**

| A. Name (Last, First, MI) * | B. Soc. Sec. No. * | C. Title * | D. % Owned * | E. Complete Residence Address * | F. Phone Number * |
|---|---|---|---|---|---|
| Scott Thompson | 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 | DIRECTOR OF FIN | 0 | ONE N. CENTRAL AVE, STE 1400, PHX, AZ 85004 | 602-682-6815 |
| Judy Smith. | | | | | |
| | | | | | |
| | | | | | |

If the owner, partners, corporate officers or combination of partners or corporate officers, members and/or managing members own more than 50% of or control another business in Arizona, attach a list of the businesses, percentages owned and unemployment insurance account numbers.

### THIS BOX FOR AGENCY USE ONLY

- [ ] New
- [ ] Change
- [ ] Revise
- [ ] Reopen

Acct. No. _____
Start _____
S/E Date _____

LIAB _____
LIAB Est. _____

DLN _____
TPT _____
WH _____

ADOR 10194 (7/11)



# APPLICATION FOR TRANSACTION PRIVILEGE (SALES) TAX LICENSE

**City of Phoenix**
**Finance Department**
Tel:  602-262-6785,
     press 4,1
TTY: 602-534-5500

**ACCOUNT NO.**

FEE MUST BE MAILED WITH APPLICATION (see page 3)





PAT0711

| Check one: ● Permanent | Check one: ● New Business | Previous City License # | Former Owner (if applicable) |
|---|---|---|---|
| ○ Temporary | ○ New Owner of Existing Business | | |

**Section I. Business Information**          Verify if your business is in Phoenix *www.phoenix.gov/webpmo.html*

Business Name (Individual, Company or "DBA" first name first):   Owning Entity Name (Corp, LLC etc.)

PHOENIX SCHOOL OF LAW, LLC                    4 LLC

Physical Business Street Address of retail store, rental property, etc (NOT a P.O. Box Number, a PMB, or single family home rentals)

ONE N CENTRAL AVE, STE 1400

City, State, Country, Zip Code +4:                    Business Phone (Including Area Code)

PHOENIX, AZ  85004-4460              602-682-6815

When did your tax liability start in Phoenix?   E-Mail address:

State License #:              Federal ID #:  74-1977610

| OFFICE USE ONLY |
|---|
| NOV Date or DISV # |
| ST Code |
| / |
| / |
| / |
| NAICS Code |

**Section II. Mailing Address & Phone Number**

Enter Name if Different from Section I (above) or Enter Care-of Name:

Mailing Address:

City, State, Country, Zip Code +4:                    Phone (Including Area Code)

| Rental Units |
|---|
| Owner Type |
| Report Method   C  A |
| Liability Date |
| Entered by |
| I Edited by |
| Approved by |

**Section III. Business Ownership**     * Sole and Husband/Wife must submit a photo ID with application. See instructions for more info.

Ownership:  ☐ *Sole   ☐ *Husband/Wife   ☒ LLC  ☐ Corp.-State Inc. _____  ☐ Gen. Partnership  ☐ Ltd. Partnership
            ☐ Revocable Trust ☐ Irrevocable Trust  ☐ Other explain _____

| List of officers attached? ○ Yes ○ No | 1)Name | Title |
|---|---|---|
| | Home Address | SSN # |
| | City, State, Country, Zip Code +4: | Phone No. |
| | 2)Name | Title |
| | Home Address | SSN # |
| | City, State, Country, Zip Code +4: | Phone No. |

**Section IV. Business Type (Check all that apply) Provide a detailed description of your business.**

| Do you sell Liquor? ☐ Yes ☒ No | ☐ Retail  ☐ Restaurant/Bar  ☐ Hotel/Motel | NAICS Code: (6 digit) |
|---|---|---|
| **Accounting Method** | ☐ Commercial Rental Property  ☐ Residential Rental Property-# of Units____ | 6 1 1 3 1 0 |
| ☐ Cash | ☐ Advertising ☐ Job Printing  ☐ Personal Property Rental | Principal business codes |
| ☒ Accrual | ☐ Short Term Motor Vehicle Rental   ☐ Telecommunications  ☐ Amusement | available at: |
| | ☐ Construction Contracting  AROC#_____            ☐ Home Builder/Spec. Sale | *www.naics.com search.htm* |
| | ☒ Use Tax (Phoenix Business) ☐ Use Tax (Out of State Business with no AZ Nexus) | |

Describe Nature of Business:  PRIVATE UNIVERSITY

**Section V. Business Premises Status**

Do you own your business location? ☐ Yes ☒ No   If yes, is this your residence?  ☐ Yes ☒ No   If yes, skip to Signature
Do you rent a portion of the business premises to another entity or business? ☒ No ☐ Yes   If yes, see instructions for more info.

Landlord/Property Manager          Mailing Address                Phone Number

RYAN              One N. Central Phoenix AZ

I certify that the statements made in this application are true and complete to the best of my knowledge.  I accept the permit authorized and issued in response to this application with the condition that I report timely and pay any and all taxes due by me to the City of Phoenix.
*IF APPLICABLE, BE SURE ALL SALES TAX HAS BEEN PAID BY FORMER OWNER.*
*BY LAW YOU MAY BE LIABLE FOR ANY UNPAID TAX.*

**FOR CITY USE ONLY BELOW**

*Applications received incomplete or without payment may not be processed.*

| Print Name | Title |
|---|---|
| Signature | Date |

Checks Payable to Phoenix City Treasurer, P.O. Box  2005 , Phoenix, AZ 85001-2005

JT-1/UC-001 (7/11)                                                                                                    Page 2

## Section B:   Transaction Privilege Tax (TPT)

| 1. Date Business Started in Arizona *   7/1/02 | 2. Date Sales Began *   8/1/18 | 3. What is your anticipated annual income for your first twelve months of business?   380 million |

4. Business Classes (Select at least one.  See Section H for a listing of business classes on page 4) *

029   USE TAX PURCHASES

| 5. TPT Filing Method   ☐ Cash Receipts   ☒ Accrual | 6. Does your business sell tobacco products?   ☐ Yes   If yes,   ☒ No | 7. Does your business sell new motor vehicle tires or vehicles? |
| | | ☐ Retailer   OR   ☐ Distributor | ☒ No   ☐ Yes   (You will be required to file a TR-1.) |

| 8. Are you a seasonal filer?   ☐ Yes   ☒ No | If yes, please check the months in which you intend to do business: |

| Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |

9. Location of Tax Records (Street Address, City, State and ZIP code) Do not use PO Box or Route No. *

| 10. Name of Company or Person to Contact   Judy Smith | 11. Phone Number   602-682-6815 |

**For additional locations, complete the following:  (If more space is needed, please attach additional sheets)**

| 12. "Doing Business As" Name for this Location | 13. Phone Number |

14. Physical Location Address (Do not use PO Box or Route No.)

| 15. City | 16. County | 17. State | 18. ZIP code |

| 19. "Doing Business As" Name for this Location | 20. Phone Number |

21. Physical Location Address (Do not use PO Box or Route No.)

| 22. City | 23. County | 24. State | 25. ZIP code |

## Section C:  Program Cities / License Fees  Below is a list of cities and towns licensed by the Arizona Department of Revenue.

| City/Town | Code | Fee | No. of Loc | Total | City/Town | Code | Fee | No. of Loc | Total | City/Town | Code | Fee | No. of Loc | Total |
|-----------|------|-----|-----------|-------|-----------|------|-----|-----------|-------|-----------|------|-----|-----------|-------|
| Benson | BS | 5.00 | | | Hayden | HY | 5.00 | | | Show Low | SL | 2.00 | | |
| Bisbee | BB | 1.00 | | | Holbrook | HB | 1.00 | | | Sierra Vista | SR | 1.00 | | |
| Buckeye | BE | 2.00 | | | Huachuca City | HC | 2.00 | | | Snowflake | SN | 2.00 | | |
| Camp Verde | CE | 2.00 | | | Jerome | JO | 2.00 | | | South Tucson | ST | 2.00 | | |
| Carefree | CA | 10.00 | | | Kearny | KN | 2.00 | | | Springerville | SV | 5.00 | | |
| Casa Grande | CG | 2.00 | | | Kingman | KM | 2.00 | | | St. Johns | SJ | 2.00 | | |
| Cave Creek | CK | 20.00 | | | Lake Havasu | LH | 5.00 | | | Star Valley | SY | 2.00 | | |
| Chino Valley | CV | 2.00 | | | Litchfield Park | LP | 2.00 | | | Superior | SI | 2.00 | | |
| Clarkdale | CD | 2.00 | | | Mammoth | MH | 2.00 | | | Surprise | SP | 10.00 | | |
| Clifton | CF | 2.00 | | | Marana | MA | 5.00 | | | Taylor | TL | 2.00 | | |
| Colorado City | CC | 2.00 | | | Maricopa | MP | 2.00 | | | Thatcher | TC | 2.00 | | |
| Coolidge | CL | 2.00 | | | Miami | MM | 2.00 | | | Tolleson | TN | 2.00 | | |
| Cottonwood | CW | 2.00 | | | Oro Valley | OR | 12.00 | | | Tombstone | TS | 1.00 | | |
| Dewey/Humboldt | DH | 2.00 | | | Page | PG | 2.00 | | | Tusayan | TY | 2.00 | | |
| Duncan | DC | 2.00 | | | Paradise Valley | PV | 2.00 | | | Wellton | WT | 2.00 | | |
| Eagar | EG | 10.00 | | | Parker | PK | 2.00 | | | Wickenburg | WB | 2.00 | | |
| El Mirage | EM | 15.00 | | | Patagonia | PA | 25.00 | | | Williams | WL | 2.00 | | |
| Eloy | EL | 10.00 | | | Payson | PS | 2.00 | | | Winkelman | WM | 2.00 | | |
| Florence | FL | 2.00 | | | Pima | PM | 2.00 | | | Winslow | WS | 10.00 | | |
| Fountain Hills | FH | 2.00 | | | Pinetop/Lakeside | PP | 2.00 | | | Youngtown | YT | 10.00 | | |
| Fredonia | FD | 10.00 | | | Prescott Valley | PL | 2.00 | | | Yuma | YM | 2.00 | | |
| Gila Bend | GI | 2.00 | | | Quartzsite | QZ | 2.00 | | | | | | | |
| Gilbert | GB | 2.00 | | | Queen Creek | QC | 2.00 | | | | | | | |
| Globe | GL | 2.00 | | | Safford | SF | 2.00 | | | | | | | |
| Goodyear | GY | 5.00 | | | Sahuarita | SA | 5.00 | | | | | | | |
| Guadalupe | GU | 2.00 | | | San Luis | SU | 2.00 | | | | | | | |

| ▶ Please Note:  City fees are subject to change (go to our website for updates).  For cities not listed above, please contact the cities directly.  Your license will not be issued until all fees are paid. | Total of City Fees: |
| | State Fees $12.00 X _____ Number of Locations: |
| | TOTAL Fees: |

ADOR 10194 (7/11)

JT-1/UC-001 (7/11)                                                                                                          Page 3

## Section D:   Withholding/Unemployment Tax Information

| 1. Date Employees First Hired in Arizona. * | 2. Are you liable for Federal Unemployment Tax? | 3. Are individuals performing services that are excluded from withholding or unemployment tax? |
|---|---|---|
| | ☐ Yes   If yes, what was the first year of liability? | ☐ Yes   If yes, describe the services: |
| | ☐ No    Year _____ | ☐ No |

| 4. Do you have an IRS Ruling that grants an exclusion from Federal Unemployment Tax? | 5. Do you have or have you previously had an Arizona Unemployment Tax Number? |
|---|---|
| ☐ Yes   If yes, attach a copy of the Ruling Letter. | ☐ No |
| ☐ No | ☐ Yes   If yes, Business Name _____ |
| | Unemployment Number _____ |

6. Record of Arizona wages paid by calendar quarter for current and preceding calendar year.

| YEAR | 1ST QUARTER | 2ND QUARTER | 3RD QUARTER | 4TH QUARTER |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

7. Weekly record of number of persons performing services in Arizona for current and preceding calendar year.

| YEAR | JANUARY | FEBRUARY | MARCH | APRIL | MAY | JUNE |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

| YEAR | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | DECEMBER |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

### Complete this section if you acquired, or changed the legal form of business of, all or part of an existing Arizona business.

| 8. Date Acquired or Legal Form of Business changed * | 9. Acquired, or Changed Legal Form of Business of, * | 10. Acquired by * | If other, including change in legal form of business, explain: |
|---|---|---|---|
| | ☐ All | ☐ Purchase | |
| | ☐ Part   If part, to obtain an unemployment tax rate based on the business's previous account you must request it no later than 180 days after the date entered in item 8 of this section.  See instructions. | ☐ Lease  ☐ Other | |

Previous Owner Information or Previous Legal Form of Busness Information (See instructions.)

| 11.  Name(s) of Previous Owner(s) * | 12.  Business Name of Previous Owner(s) * |
|---|---|
| | |

13.  Current Mailing Address of Previous Owner(s) (Street, City, State, ZIP code)

| 14.  Current Telephone Number of Previous Owner(s) | 15.  Unemployment Account Number of Previous Owner(s) |
|---|---|
| | |

Voluntary Election of Unemployment Insurance Coverage (subject to Unemployment Tax Office approval).

16.  The applicant, on behalf of the employing unit, voluntarily elects beginning January 1 of the current calendar year or the date employment started, if later, and continuing for not less than two calendar years, to:

☐  A.  Be deemed an employer subject to Title 23, Chapter 4, Arizona Revised Statutes, to the same extent as all other such employers and provide unemployment insurance coverage to my workers performing services defined by law as employment, even though I have not met conditions requiring me to provide such coverage.

☐  B.  Extend unemployment insurance coverage to workers referred to in item 2, above, by having the services they perform be deemed to constitute. Employment by an employer subject to Title 23, Chapter 4, A.R.S.

ADOR 10194 (7/11)

JT-1/UC-001 (7/11)                                                                                                   Page 4

| Section E:   AZTaxes.gov Security Administrator (Authorized User) |
|---|

By electing to register for www.aztaxes.gov you can have online access to account information, and file and pay Arizona transaction, use, and withholding taxes.  You also designate authorized users to access these services.

☒  I Elect to Register to use aztaxes.gov to file and pay online.

☐  I DO NOT Elect to Register to use aztaxes.gov to file and pay online.

| 1.   Authorized Users Last Name Smith | 2.   Authorized Users First Name Judy |
|---|---|
| 3.   Authorized Users Title Director of Finance | 4.   Authorized Users Social Security Number 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 |
| 5.   Authorized Users Email Address JSmith@Phoenixlaw.edu | 6.   Authorized Users Phone Number 602-682-6815 |

| Section F:   Signature(s) by individuals legally responsible for the business (required) |
|---|

This application must be signed by either a sole owner, partners, corporate officer, managing member, the trustee, receiver or personal representative of an estate.

Under penalty of perjury I (we), the applicant, declare that the information provided on this application is true and correct.  I (we) hereby authorize the security administrator, if one is listed in Section E, to access the AZTaxes.gov site for the business identified in Section A.  This authority is to remain in full force and effect until the Arizona Department of Revenue has received written termination notification from an authorized officer.

| Type or Print Name Judy Smith | Title Director of Fin | Signature /s/ Judy Smith | Date |
|---|---|---|---|
| Type or Print Name Scott Thomas | Title President | Signature /s/ Scott Thomas | Date |

**THIS APPLICATION MUST BE COMPLETED, SIGNED AND RETURNED AS PROVIDED BY ARS § 23-722**
Equal Opportunity Employer/Program • This document available in alternative formats by contacting the UI Tax Office.

| Section G:   Indian Reservation Codes | | | | | | | |
|---|---|---|---|---|---|---|---|
| Indian Reservation (County) | Code | Indian Reservation (County) | Code | Indian Reservation (County) | Code | Indian Reservation (County) | Code |
| Ak-Chin (Pinal) | PNA | Hopi (Coconino) | COJ | Pascua-Yaqui (Maricopa) | MAN | Tohono O'dham (Pinal) | PNT |
| Cocopah (Yuma) | YMB | Hopi (Navajo) | NAJ | Pascua-Yaqui (Pima) | PMN | Tonto Apache (Gila) | GLU |
| Colorado River (La Paz) | LAC | Hualapai (Coconino) | COK | Salt River Pima-Maricopa (Mar.) | MAO | White Mtn Apache (Apache) | APD |
| Fort McDowell-Yavapai (Mar.) | MAE | Hualapai (Mohave) | MOK | San Carlos Apache (Gila) | GLP | White Mtn Apache (Gila) | GLD |
| Fort Mohave (Mohave) | MOF | Kaibab-Paiute (Coconino) | COL | San Carlos Apache (Graham) | GRP | White Mtn Apache (Graham) | GRD |
| Fort Yuma-Quechan (Yuma) | YMG | Kaibab-Paiute (Mohave) | MOL | San Carlos Apache (Pinal) | PNP | White Mtn Apache (Navajo) | NAD |
| Gila River (Maricopa) | MAH | Navajo (Apache) | APM | San Juan Southern Paiute (Coco.) | COQ | Yavapai Apache (Yavapai) | YAW |
| Gila River (Pinal) | PNH | Navajo (Coconino) | COM | Tohono O'Odham (Maricopa) | MAT | Yavapai Prescott (Yavapai) | YAX |
| Havasupai (Coconino) | COI | Navajo (Navajo) | NAM | Tohono O'Odham (Pima) | PMT | | |

| Section H:   Business Classes | | | | | | | |
|---|---|---|---|---|---|---|---|
| Business Class | Code | Business Class | Code | Business Class | Code | Business Class | Code |
| Mining - Nonmetal | 002 | Commercial Lease | 013 | Use Tax - Utilities | 026 | Jet Fuel Tax | 049 |
| Utilities | 004 | Personal Property Rental | 014 | Rental Occupancy Tax | 028 | Jet Fuel Use Tax | 051 |
| Communications | 005 | Contracting - Prime | 015 | Use Tax Purchases | 029 | Rental Car Surcharge | 053/055 |
| Transporting | 006 | Retail | 017 | Use Tax from Inventory | 030 | Jet Fuel Tax > 10 million gallons | 056 |
| Private Car - Pipeline | 007/008 | Severance - Metalliferous Mining | 019 | Telecommunications Devices | 033 | Use Tax Direct Payments | 129 |
| Publication | 009 | Severance - Timbering Ponderosa | 021 | 911 Wireless Telecommunications | 036 | 911 Wireline Telecommunications | 131 |
| Job Printing | 010 | Severance - Timbering Other | 022 | Contracting - Owner Builder | 037 | Rental Car Surcharge - Stadium | 153 |
| Restaurants and Bars | 011 | Recreational Vehicle Surcharge | 023 | Municipal Water | 041 | | |
| Amusement | 012 | Transient Lodging | 025 | Membership Camping | 047 | | |

ADOR 10194 (7/11)

JT-1/UC-001 (7/11)                                                                                                         Page 5

## INSTRUCTIONS FOR ARIZONA JOINT TAX APPLICATION

IMPORTANT: You must complete each of the following sections or your application will be returned

- **For licensing questions on Transaction Privilege, Withholding or Use Tax (Department of Revenue) call (602) 542-4576 or 1-800-634-6494 (from area codes 520 and 928).**
- **For Unemployment Tax (Department of Economic Security) call (602) 771-6602 or e-mail uit.status@azdes.gov**

### USE THIS APPLICATION TO:

- **License New Business:** A new business with no previous owners.
- **Change Ownership:** If acquiring or succeeding to all or part of an existing business or changing the legal form of your business (sole proprietorship to corporation, etc.).

  If you need to update a license, add a business location, get a copy of your license or make other changes: **Complete a Transaction Privilege Tax License Update form and include fees of $12 per location.**

### Section A: TAXPAYER INFORMATION

#### 1.  LICENSE TYPE

**Transaction Privilege Tax (TPT):** Anyone involved in an activity taxable under the TPT statutes must apply for a TPT License before engaging in business.

For TPT, you are required to obtain and display a separate license certificate for each business or rental location.  This may be accomplished in one of the following ways:

Each location may be licensed as a separate business with a separate license number for purposes of reporting transaction privilege and use taxes individually.   Therefore a separate application is needed for each location.

Multiple locations may be licensed under a consolidated license number, provided the ownership is the same, to allow filing of a single tax return.  If applying for a new license, list the various business locations as instructed below.  If already licensed and you are adding locations, *do not use this application to consolidate an existing license. Please submit update form.*

**Withholding & Unemployment Taxes:** Employers paying wages or salaries to employees for services performed in the State must apply for a Withholding number & Unemployment number.

**Use Tax:** Out-of-state vendors (that is, vendors with no Arizona location) making direct sales into Arizona must obtain a Use Tax Registration Certificate.  In-state vendors making out-of-state purchases for their own use (and not for resale) must also obtain the Use Tax Registration Certificate.

**TPT for cities only:** This type of license is needed if your business activity is subject to city TPT that is collected by the state, but the activity is not taxed at the state level.  Many of the larger cities in Arizona administer and collect their own privilege taxes.  Please contact those cities directly to obtain information regarding licensing requirements.

#### 2.  TYPE OF OWNERSHIP

Check as applicable.  A corporation must provide the state and date of incorporation.

#### 3.  Enter your **Federal Employer Identification number.**

- Taxpayers are required to provide their taxpayer identification number (TIN) on all returns and documents.  A TIN is defined as the federal employer identification number (EIN), or social security number (SSN) depending upon how income tax is reported.  The EIN is required for all employers.  A penalty of $5 will be assessed

by the Department of Revenue for each document filed without a TIN.

4.  Enter the **Legal Business Name** of the Owner or Employing Unit (name of corporation as listed in its articles of incorporation, or individual & spouse, or partners, or organization owning or controlling the business).

5.  Enter the name of the **Business/DBA (doing business as) Name.**  If same as above, enter "same."

6.  Enter the **business telephone number** including area code.

7.  Enter the **fax number** including area code.

8. and 9.  Enter **mailing address** where all correspondence is to be sent.  You may use your home address, corporate headquarters, or accounting firm's address, etc.  If mailing address differs for licenses (for instance withholding and unemployment insurance), please use cover letter to explain.

10.  Enter the **e-mail address** (option) for the business or contact person.

11.  See section G for listing of **reservation codes** if your business is located on an Indian Reservation.

12. and 13.  Enter the **physical location** of business including county.  This can not be a PO Box or Route Number.

14.  If you are a **construction contractor**, read the bonding requirements carefully.

15.  If you answered yes, you must complete Section D.

16.  Describe the major business activity: principal product you manufacture, commodity sold, or services performed.   Your description of the business is very important because it determines your transaction privilege tax rate and provides a basis for state economic forecasting.

17.  Enter the **North American Industries Classification System (NAICS) code** identified for your business activity.

     **18.**   Identify the owners of the business. Enter as many as applicable; attach a separate sheet if additional space is needed.

### Section B: TRANSACTION PRIVILEGE TAX (TPT)

1.  Enter the date the business started in Arizona.

2.  Enter **date sales began in Arizona**, or estimate when you plan to begin selling in Arizona.

3.  Enter the amount of Transaction Privilege Tax income you can reasonably expect to generate in your first twelve months of business.   You will be set up for monthly filing unless your anticipated annual income will result in a tax liability of less than $1,250, which may qualify you for quarterly filing.

4.  For businesses applying for Transaction Privilege and/or Use Tax, enter the applicable **business classes** based on your activity.  See Section H for listing of business classes.

ADOR 10194 (7/11)

# TRANSACTION PRIVILEGE, USE, AND SEVERANCE TAX RETURN (TPT-1)

**Arizona Department of Revenue**
PO BOX 29010 • PHOENIX, AZ 85038-9010
For assistance out-of-state or in the Phoenix area: (602) 255-2060 or
Statewide, toll free from area codes 520 and 928: (800) 843-7196

*TPT return is due the 20th day of the month following the reporting period.*

STATE LICENSE NUMBER.

TAXPAYER IDENTIFICATION NUMBER:
☒ EIN  ☐ SSN  14-1977610

PERIOD BEGINNING                  PERIOD ENDING

## I. TAXPAYER INFORMATION

☐ Amended Return  ☐ Multipage Return  ☐ One-Time Only Return  ☐ Final Return: *(CANCEL LICENSE)*

BUSINESS NAME: PHOENIX SCHOOL OF LAW, LLC.
C/O

ADDRESS: ONE N CENTRAL AVE, STE 1400
CITY: PHOENIX   STATE: AZ   ZIP: 85004

☐ Address Changed

DOR USE ONLY          ☐ LABELED RETURN

POSTMARK DATE

RECEIVED DATE

## II. TRANSACTION DETAIL *(If more reporting lines are necessary, please attach continuation pages.)*

| LINE | (A) BUSINESS DESCRIPTION | (B) REGION CODE | (C) BUSINESS CLASS | (D) GROSS AMOUNT | (E) DEDUCTION AMOUNT | (F) NET TAXABLE AMOUNT | (G) TAX RATE | (H) TOTAL TAX AMOUNT | (I) ACCOUNTING CREDIT RATE | (J) = (F × I) ACCOUNTING CREDIT |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | PRIVATE UNIVERSITY | MAR | 229 | | | | | | | |
| 2 | | | | | | | | | | |
| 3 | | | | | | | | | | |
| 4 | | | | | | | | | | |
| 5 | | | | | | | | | | |
| Subtotal | | | | | | | | | | |

## III. TAX COMPUTATION

1 Total deductions from Schedule A ........................... **1**

2 Total Tax Amount (from column H) ........................... **2**

3 State excess tax collected ........................... + **3**

4 Other excess tax collected ........................... + **4**

5 Total Tax Liability: *Add lines 2, 3, and 4* ........................... = **5**

6 Accounting Credit (from column J) ........................... **6**

7 State excess tax accounting credit: *Multiply line 3 by .01* ........................... + **7**

8 Total Accounting Credit: *Add lines 6 and 7* ........................... = **8**

9 Net tax due line: *Subtract line 8 from line 5* ........................... **9**

10 Penalty and interest ........................... + **10**

11 TPT estimated payments to be used ........................... - **11**

12 Total amount due this period ........................... = **12**

13 Additional payment to be applied (for other periods) ........................... + **13**

14 TOTAL AMOUNT REMITTED WITH THIS RETURN ........................... = **14**

**AMENDED RETURN ONLY**
ORIGINAL REMITTED AMOUNT $

DOR USE $

*Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.*

► PAID PREPARER'S SIGNATURE (OTHER THAN TAXPAYER)

► TAXPAYER'S SIGNATURE          DATE          PAID PREPARER'S EIN OR SSN

ADOR 10872 (6/10)
Previous ADOR 60-1046

**Please make check payable to Arizona Department of Revenue.**

**Office Location: 3rd Floor, 251 W. Washington St.**
Mailing Address: P.O. Box 2005, Phoenix, AZ 85001-2005
Telephone: (602) 262-6785, press 4
   TDD (602)534-5500
www.phoenix.gov/plt       email  tax @phoenix.gov
This material is available in alternative formats.

## WHO IS REQUIRED TO HAVE A PRIVILEGE (SALES) LICENSE? (See Phoenix Tax Code Section 14-300)

1.  Every person desiring to engage or continue in business activities within the City upon which a Privilege Tax is imposed.
2.  Every person, engaging or continuing in business within the City, storing or using tangible personal property in this City upon which a Use Tax is imposed.
3.  Every person required to report and pay a tax upon Rental Occupancy, as imposed by Phoenix Tax Code Section 14-440.

A person engaged in more than one activity subject to City Privilege and Use Taxes at any one business location is not required to obtain a separate license for each activity provided that, at the time such person makes application for a license, he shall list on such application each category or activity in which he is engaged. The licensee shall inform the Tax Collector of any changes in his business activities within thirty (30) days.

This license does not preclude the authority of other city agencies. You should call the Planning and Zoning Department, (602) 262-7844, if you have any questions concerning land use or sign placement before engaging in business.

## GENERAL INSTRUCTIONS

*All information given on this application is public information (except Social Security number)*

The application is used for data entry and must be <u>TYPED OR PRINTED IN BLACK INK</u>. Return the completed application to the City of Phoenix, enclosing the appropriate fee with a check payable to Phoenix City Treasurer. There is also an annual license fee that must be paid prior to issuance of a license.

If you are a new owner of an existing business, please provide the name and Phoenix license number of the previous owner. *Check to be sure that the person you are buying the business from owes no back taxes or fees to the City of Phoenix. By law you may be responsible for all back taxes and fees.*

The Privilege License shall be nontransferable between owners and shall be on display to the public in the licensee's place of business. Except as provided in Phoenix Tax Code Section 14-320, the Privilege License shall be valid until request for cancellation and/or surrender of the license by the licensee of the business activity for which it was issued.

Application must be completed, signed and returned with fees to be processed. **Incomplete applications or applications submitted without payment may not be processed and will delay your business activity.** Your license must be obtained and fees fully paid prior to engaging in business.

Permanent licenses are for an on-going year around business. Temporary licenses or Special Events licenses are issued only for periods of up to 30 consecutive days for a total fee of $25.00. Complete the following sections:

| Check one: O Permanent | Check one: O New Business | Previous City License # | Former Owner (if applicable) |
|---|---|---|---|
| O Temporary | O New Owner of Existing Business | | |

**Section I – Business Information** verify if your business is in Phoenix www.phoenix.gov/zoning.fun

| | |
|---|---|
| Business Name: | Business name if using one. If not, list name of the business owner. Property managers applying on behalf of a client should indicate the property owner's name in this section. |
| Owning Entity Name: | List the ownership name of the business if different from business name. |
| Business Address & Phone: | Physical address of your Phoenix business location, including suite, unit, or apartment number. A P.O. Box or PMB is not acceptable for a business location. A separate license application must be completed for each multi-unit property and/or all commercial property. For single family residential rental property please use the owners home address. The phone number listed here should correspond to the Phoenix business location. (For further information regarding residential rentals see Quick Fact Sheet located in the Residential Rentals section) |
| Liability Start Date: | The date (month/day/year) in which you will begin taxable business activity in Phoenix. Licensing fees are based on this date. |
| E-mail address: | The email address for the person who should receive general Phoenix Privilege (Sales) and Use Tax information and updates |
| State Tax License #: | www.revenue.state.az.us |
| Federal ID #: | www.irs.gov |

## Section II – Mailing Address & Phone Number-Complete this area only if the information is different from Section I.

This area is for the name of the person and the address to which the business license and tax return mail will be sent. Please include suite, unit, or apartment numbers.

## Section III – Business Ownership (Please indicate the type of ownership. If you mark "Other" please describe.)

Ownership:
Sole or Husband/Wife ownerships must provide a color copy of their identification. See website for acceptable forms of identifications. All corporations must provide the State of incorporation and at least two officers information. A "LLC" must have at least the Managing Member. General Partnerships must provide the names of the general partner(s). You may attach a list to the application

Owners/Partners/Corporate Officers/LLC Members
List complete owner/officer/partner information as requested including names and titles. Please use the home (not business) address for each officer/partner. P.O. Box numbers or PMB's are not acceptable for home addresses.

## Section IV – Business Type (Check all that apply)
Do you sell Liquor? If "Yes" contact License Services @ (602) 262-4638 Option #3 or email: clk.liquor.license@phoenix.gov.

Mark "Cash" if you recognize income based upon the date funds are received. Mark "Accrual" if you recognize income when earned regardless of when the cash is received.

Provide a detailed description of business activity. If retail sales, list type of items to be sold; if construction contracting, list type of contracting, etc. Please indicate your Contractor's number with the Arizona Registrar of Contractors if you checked construction contracting.
NAICS Code: (6 digit)  Principal business codes available at: www.naics.com/search.htm

## Section V – Business Premises Status
Please indicate whether or not you own your business location. If you answer "No", please provide the name of the legal owner or property manager along with their mailing address and phone number. If you lease or take considerations for use of property from a related entity you own, this is taxable as commercial rental and an additional license would be needed.

### FEE SCHEDULE
**A NON-REFUNDABLE APPLICATION FEES MUST BE PAID AT THE TIME OF APPLICATION: Any combination of activities may result in additional fees. If license fees are not paid in full within 30 days of start date, a 50 percent late fee will be assessed.**

| Commercial Rental or Use Tax Activity only. | For persons engaged exclusively in the rental and leasing of nonresidential real property or Use Tax, a $20 application fee is charged. | | | $20 total due |
|---|---|---|---|---|

| Residential Rental Activity | For persons engaged in the rental of residential real property, a $2 pro-rated fee per unit is charged with an annual cap of fifty ($50) dollars per license, based on the Phoenix Tax Liability Start Date, per the chart below: | | | $20 Application Fee **plus** pro-rated Annual License Fee |
|---|---|---|---|---|
| | Start Date | Pro-Rated Annual Fee Per Unit | 50% Late Fee Per Unit | |
| | January 1 – March 31 | $2.00 | $1.00 | |
| | April 1 – June 30 | $1.50 | $ .75 | |
| | July 1 – September 30 | $1.00 | $ .50 | |
| | October 1 – December 31 | $ .50 | $ .25 | |

| All other types of business excluding Residential Rental, Commercial Rental and Use Tax | For persons engaged in the activities listed, a $50 pro-rated fee is charged, based on the Phoenix Tax Liability Start Date, per the chart below: | | | $20 Application Fee **plus** pro-rated Annual License Fee |
|---|---|---|---|---|
| | Start Date | Pro-Rated Annual Fee | 50% Late Fee | |
| | January 1 – March 31 | $50.00 | $25.00 | |
| | April 1 – June 30 | $37.50 | $18.75 | |
| | July 1 – September 30 | $25.00 | $12.50 | |
| | October 1 – December 31 | $12.50 | $ 6.25 | |

Any licensee who permits his license to expire through cancellation as provided in Phoenix Tax Code Section 14-320, by his request for cancellation by surrender of the license, or by the cessation of the business activity for which the license was issued, and who thereafter applies for a license, shall be granted a new license as an original application and shall pay the current license fee. Any licensee who loses or misplaces his Privilege License that is still in effect shall be charged the current license fee for each reissuance of a license.          Rev. 10/20/09

EXHIBIT 3



News & Events    Map & Directions    Library    Employer Services    Employee Directory    FAQ    Connect With ASLS    Login

Admissions    J.D. Programs    Student Resources    Campus Life    Alumni    About    | Gainful Employment and ABA Required Disclosures |

1.888.749.5291

# Controller

Arizona Summit Law School is seeking a **Controller** to join its Finance team!

Arizona Summit Law School is a member of The InfiLaw System, a consortium of independent law schools committed to making legal education more responsive to the realities of new career dynamics. Its mission is to establish student-centered, American Bar Association (ABA) accredited law schools in underserved markets that graduate students with practice-ready skills, and achieve true diversity programs aimed at student academic and career success.

The Controller will manage all aspects of accounting, budgeting and financial reporting of the organization.  This position is acts as primary liaison with external accountants and other audit organization for year-end audit activity.  This position supervises the student accounts function and provides analysis support to the Financial Aid Team.

### ESSENTIAL DUTIES AND RESPONSIBILITIES:

**Finance:**

- Lead Consolidation, General Ledger, Management Reporting, Accounts Payable, Fixed Assets and Tax.
- Create monthly income statements, balance sheets and cash flow statements with GAAP procedures, accruals and monthly cut-offs.
- Analyze major variances between actual and budget on a monthly basis.
- Plan, organize, coordinate, implement and control financial policies, and develop a sound system of internal controls.
- Drive P&L accountability throughout the organization through documented metrics, comparative analytics, benchmarking and a rigorous bottoms-up forecasting process.
- Provide oversight and quality control for audit process.  Supervise relationship with outside accounting firm assuring continual improvement and value-added services.
- Prepare ad hoc reports, financial analyses and special projects.
- Remain current on all regulations and standards to assure compliance.

**Business Analytics**

- Demonstrate strong analytical skills to drive business metrics through value-added analysis.
- Development and automate competitive data, benchmarks and related analysis.
- Inspire continuous improvement through the development of comparative analytics.
- Assist the school with business decision support.

**Financial Aid**

- Support the audit process and prepare scholarship s and other analyses, as required.

**General Administrative Duties:**

- Participate in and contribute to the Consortiums Facilities Best Practice Group.
- Supervise staff members.

- Establish and maintain professional attitude and good rapport with students, employees, community members and vendors.
- Will be privileged to confidential information and must maintain confidentiality of information at all times.
- Support and be a part of the Arizona Summit Law School mission, vision and values.
- Other job related duties as assigned.

## Education

- Bachelor's degree in finance or accounting required.
- Master's degree preferred.
- CPA preferred.

## Experience

- The ideal candidate has 5-7 year of progressive accounting and finance experience with specific expertise in financial planning & analysis, metrics reporting, business analytics, competitive benchmarking, acquisition/growth modeling.  Public accounting, consulting, investor relations and process improvement experience are preferred.
- 3+ years in a leadership position is required.
- Experience with internal and external reporting and associated analysis.
- Sarbanes-Oxley experience.
- Adherence to timelines with respect to internal and external reporting deadlines.
- Project management and process improvement (Six Sigma) skills strongly preferred.
- Metric driven and analytical.
- Credible and dependable.
- Dynamic team player.

## Computer Skills

- Intermediate to advanced level of experience with Microsoft Word, Excel, Outlook and PowerPoint.
- Experience with Great Plains, Hyperion and CampusVue software preferred.

## Communication Skills

- Ability to read, interpret and analyze more complex documents such as blue prints, legal documents, financial reports and technical/scientific manuals.
- Ability to create more complex reports, speeches, manuals and professional documents.
- Ability to effectively communicate and present to managers, advisory board, etc.
- Professional and positive attitude towards management, staff, students, board members and visitors.
- Must be able to professionally handle multiple tasks with a positive attitude.
- Must have excellent grammar skills.

## Reasoning Ability

- Ability to collect data, establish facts, draw valid conclusions to resolve complex situations with no assistance.  Capable of dealing with abstract or concrete variables and to interpret a variety of technical instructions with little or no assistance.
- Comfortable with a fast paced environment where priorities can change rapidly.
- Must be very detail oriented and accurate.
- Must display tact, discretion and judgment.

Salary to commensurate with experience. Arizona Summit Law School offers a full benefits package. For more information about Arizona Summit Law School, please visit www.azsummitlaw.edu.

If helping others and working in a dynamic workplace is what you feel passionate about and you are looking for a new challenge and a

chance to put your experience to work in an innovative environment – Arizona Summit Law School may be the place for you.

**TO APPLY:** Please send a resume with salary requirements to hr@azsummitlaw.edu or via mail to:

Arizona Summit Law School
Human Resources
One North Central 14th Floor
Phoenix. AZ 85004

Arizona Summit Law School is an Equal Employment Opportunity Employer in compliance with Title VII of the Civil Rights Act of 1964, Civil Rights Act Title VII of 1972, Title IX of the Education Amendments of 1972, Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act (ADA) of 1990. Arizona Summit Law School does not discriminate on the basis of race, color, religion, national origin, sex, disability or age in employment or in any of its educational programs or in the provisions of benefits and services to students.

The information contained in this job description is for compliance with the American's with Disabilities Act (ADA) and is not an exhaustive list of the duties performed by this position. Additional duties are performed by the individuals currently holding this position and additional duties may be assigned.

# Latest News

Tuesday October 21 2014
Arizona Supreme Court Vice Chief Justice Pelander Selects Arizona Summit Law School Alumnus Kyle...
Continue Reading »

United Nations Taps Arizona Summit Law Professor to Design ADR System for the Industrial Court of ...
Continue Reading »

Arizona Summit Law School Appoints New Associate Dean of Academic Affairs
Continue Reading »

More News