Quarles & Brady LLP
Firm State Bar No. 00443100
Renaissance One
Two North Central Avenue
Phoenix, AZ 85004-2391
Telephone 602.229.5200

Nicole France Stanton (#020452)
nicole.stanton@quarles.com
Eric B. Johnson (#020512)
eric.johnson@quarles.com
Michael S. Catlett (#025238)
Michael.catlett@quarles.com
Attorneys for Defendants ASL and IC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Paula C. Lorona,<br><br>    Plaintiff,<br><br>vs.<br><br>Arizona Summit Law School, LLC, et al.<br><br>    Defendants. | NO. CV-15-00972-PHX-NVW<br><br>**DEFENDANTS' MOTION TO DISMISS**<br><br>(Assigned to the Honorable Neil V. Wake) |

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Arizona Summit Law School, LLC ("ASL") and InfiLaw Corporation ("IC") hereby move to dismiss Plaintiff Paula Lorona's ("Lorona") Second Amended Complaint ("SAC") in its entirety for failure to state a claim. This Motion is supported by the following Memorandum of Points and Authorities.[1]

RESPECTFULLY SUBMITTED this 3rd day of August 2015.

QUARLES & BRADY LLP

By s/ Eric Johnson
    Nicole France Stanton
    Eric B. Johnson
    Michael S. Catlett
    Attorneys for Defendants ASL and IC

---

[1] Pursuant to the Court's Order dated May 29, 2015 [Dkt. 5], a Certificate of Conferral is attached as Exhibit A.

QB\152522.00007\35961570.3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION.

Plaintiff is a former employee and student of ASL.  ASL terminated Lorona's employment on April 13, 2013.[2]  Nearly two years later, Lorona filed this lawsuit.  In the SAC, Lorona alleges the following causes of action: 1) consumer fraud; 2) common law fraud; 3) negligent misrepresentation; 4) violation of ADA; 5) violation of FMLA; 6) violation of Title VII; 7) retaliatory discharge (Title VII and FMLA); 8) declaratory relief; and 9) injunctive relief.  Lorona has failed, however, to set forth facts plausibly establishing any of those claims.  Defendants, therefore, bring this Motion to Dismiss.

## II.   BACKGROUND.[3]

ASL hired Lorona in 2009.[4]  At the time of her termination in 2013, Lorona served as a Student Accounts Manager.[5]  Lorona alleges that, in 2012, ASL's then Director of Finance, Judy Smith, told Lorona to submit a form to the Arizona Department of Revenue ("ADOR") that contained inaccurate information.  Lorona refused to submit the form to ADOR.[6]  Thereafter, Lorona alleges that Smith continued to pressure her to file the tax form.  Lorona subsequently met with ASL's Director of Human Resources, Stephanie Lee ("Lee"), who directed Lorona to the whistleblower hotline to report the incident.[7]  Lorona eventually made a whistleblower complaint and a few days later, ASL terminated Smith.[8]

Following Smith's dismissal, Lorona claims that she was "harassed" by Lee and ASL's President Scott Thompson.[9]  In particular, Lorona claims that when she inquired about being promoted to an open position, she was told that she was not qualified and

---

[2] *SAC* at ¶¶90-92.
[3] For purposes of this Motion only, Defendants assume that the factual allegations contained in the SAC are true.
[4] *SAC.* at ¶ 23.
[5] *Id.*
[6] *Id.* at ¶ 40.
[7] *Id.* at ¶¶ 46 and 47.
[8] *Id.* at ¶ 56.
[9] *Id.* at ¶ 57 and 63.

would not be considered.[10]  In addition, Lorona alleges that while she was on leave to care for her children, ASL improperly applied some of her paid time off ("PTO").[11] Ultimately, Lorona alleges that as a result of refusing to submit what she believed to be an incorrect tax form with ADOR in 2012, she was continually harassed and then eventually terminated on April 13, 2013.[12]

Lorona filed a Discrimination Charge ("Charge") with the EEOC on or about February 28, 2014.[13]  In the Charge, Lorona alleged that 1) she was charged PTO when she worked from home to care for her children; 2) she applied for the position of Assistant Director of Finance but the role was filled by two other females; and 3) she was discharged for no good reason.[14]  Lorona alleges that she was discriminated against due to her association with her alleged disabled children and because of her sex.  Nowhere in the Charge does Lorona claim she was retaliated against or explain why she believes she was discriminated against because of her sex.[15]

In addition to working at ASL, Lorona enrolled in and began attending ASL as a traditional law student in August of 2012.  Lorona attended ASL for three (3) years, graduating in 2015.  Lorona then took and passed the February 2015 bar examination.

## III. LEGAL ARGUMENT.

### A. Standard for Dismissal.

To survive a motion to dismiss for failure to state a claim, the plaintiff must allege

---

[10] *Id.* at ¶¶ 58 and 59.
[11] *Id.* at ¶¶ 67 and 68.
[12] *Id.* at ¶¶ 41, 43, 65 and 90-94.
[13] *See* Charge attached as Exhibit B.  The inclusion of the Charge to this motion does not transmute it into one for summary judgment as the Charge is central to Lorona's claims and referred to in the SAC. *See, e.g., Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (court may consider the allegations made in the complaint and any other materials that are (1) specifically referred to in the complaint, (2) central to the plaintiff's claim, and (3) of uncontested authenticity); *Bamonte v. City of Mesa*, No. CV 06-01860-PHX-NVW, 2007 WL 2022011, at *5 (D. Ariz. July 10, 2007) (*citing Marder*)).
[14] Charge (Exhibit B).
[15] *Id.*

"enough facts to state a claim for relief that is plausible on its face."[16] The allegations in the complaint are generally accepted as true and construed in the light most favorable to the plaintiff.[17] The Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."[18]

### B.  Plaintiff Has Failed to Plead Plausible Fraud Claims (Counts I and II).

Lorona's fraud claims (Consumer Fraud and Common Law Fraud, respectively) should be dismissed. To establish a consumer fraud claim under Arizona law, a plaintiff must plead facts plausibly establishing that the defendant used deception, used a deceptive act or practice, used fraud, used false pretense, made a false promise, made a misrepresentation, or concealed, suppressed or omitted a material fact in connection with the sale or advertisement of merchandise with the intent that the plaintiff rely on the unlawful practice, and that the plaintiff suffers damage as a consequent and proximate result.[19] The elements of common law fraud are similar, and require a specific showing that the defendant knowingly made a false, material misrepresentation with the intent that the plaintiff rely on that representation, and that the plaintiff did reasonably rely on that representation and suffered damage as a consequent and proximate result.[20] Critically, for fraud to be actionable, it "must be based upon a misrepresentation of ***material fact***, and ***not upon an expression of opinion***."[21] Lorona's fraud claims fail to satisfy these required elements in a number of respects.

#### 1.  Lorona Failed to Plead the Element of Fraud with Particularity.

Among other deficiencies, Lorona repeatedly and improperly lumps ASL and IC together throughout her fraud claims as "Defendants," making it impossible to distinguish which allegations she is making against which defendant, and which representation each

---

[16] Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 556 U.S. 544, 570 (2007); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) (applying *Twombly* standard).
[17] *Id.* (*citing Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).
[18] *Sprewell*, 266 F.3d at 988, *amended on other grounds*, 275 F.3d 1187 (9th Cir. 2001).
[19] *See Dunlap v. Jimmy GMC of Tucson, Inc.*, 666 P.2d 83, 87, 89 (Ariz. App. 1983).
[20] *Peery v. Hansen*, 585 P.2d 574, 577 (Ariz. App. 1978).
[21] *Poley v. Bender*, 347 P.2d 696 (Ariz. 1959) (emphasis added).

defendant purportedly made.[22]  Rule 9(b) does not permit group pleading.[23]  The Ninth Circuit has made clear that "[i]n the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme."[24]  Lorona failed to do this.

### 2. Lorona Failed to Plead Facts Plausibly to Establish Misrepresentation.

Lorona failed to plead facts plausibly establishing that either ASL or IC made a misrepresentation or omitted a material fact.  Lorona takes issue with ASL's statements regarding the myBAR program, ASL's Legal Education Program, the quality of lawyers leaving ASL upon graduation, and the future anticipated bar passage rate for the February 2015 Arizona bar exam.[25]  Lorona does not explain how those alleged statements were false or can be construed as anything other than statements of opinion about ASL's educational offerings or predictions of future events.  In fact, the portion of the statement that Lorona quotes regarding the Legal Education Program explicitly states that it is based on the subjective belief of ASL, not on facts.  Specifically, it states that "[w]e ***believe*** by graduation, lawyers should enter the workforce professionally prepared to practice law in a variety of diverse settings and industries . . . [and will be] well-rounded lawyers who add immediate value to their firms and employers."[26]  Furthermore, assertions by ASL that ASL's graduates are "professionally prepared" and "well-rounded lawyers who add immediate value" can only be fairly construed as subjective characterizations and matters of judgment which cannot properly form the basis of a fraud claim.[27]

---

[22] *See* SAC at ¶¶ 130-132, 134-35, 137, 142-147, 149-153, and 155-58.

[23] *See Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (affirming dismissal because "Rule 9(b) does not allow a complaint to merely lump multiple defendants together . . . ").

[24] *Id.*

[25] *SAC* at ¶¶ 129, 135-36, and 138.

[26] *Id.* at ¶ 138 (emphasis added).

[27] *See Larkey v. Health Net Life Ins. Co.*, No. 1 CA–CV 11–0523, 2012 WL 2154185, at *3 (Ariz. Ct. App. June 14, 2012) (noting that "Arizona courts have repeatedly held that a claim for fraud may not be based on subjective characterizations of value, which are regarded as mere puffing"); *Sydney*, 47 Ariz. at 4, 53 P.2d at 66 (stating that fraud

Next, Lorona alleges that "ASLS misrepresented the existence of success of past, present, and future graduate's ability to meet job qualification requirements," without explaining how or when ASL did so.[28] Lorona also alleges, in conclusory fashion, that ASL "misrepresented what incoming students should expect to pay for their education."[29] In support of this assertion, Lorona points out that ASL stated years ago that *as of a prior ASL year* (i.e., 2009) the costs for tuition, fees, books, and supplies totaled a certain amount. Then, Lorona summarily concludes that because *her* education, which occurred years later (2012-2015), cost more than the amounts set forth regarding the 2009 ASL year, that ASL committed fraud. This in no way establishes that the 2009 figures were false when made. Lorona also fails to explain whether (and to what extent) the debt she incurred included expenses *apart from* tuition, fees, books, and supplies, such as discretionary expenses associated with room, board, food, etc. Finally, Lorona alleges that ASL has committed consumer fraud by "enrolling students ineligible for federal financial aid."[30] Enrolling someone, however, is not a statement (it is an action) and therefore it cannot give rise to fraud.

### 3. Lorona Failed to Plead Fact Plausibly to Establish Detrimental Reliance.

Lorona has not pled facts *plausibly* establishing that she detrimentally relied on any of the "false statements" at issue in deciding to enroll at ASL. Although Lorona *claims* that "she in fact relied upon Defendants' misrepresentations" in deciding to enroll (in 2012),[31] most of the representations she points to in support of her claim were clearly made well after Lorona was already a student at ASL.[32] Lorona attempts to remedy this defect by alleging that these representations also caused her to "continue to enroll in and

---

"cannot be predicated upon the mere expression of an opinion or upon representations in regards to matters of estimate or judgment . . . ").
[28] *SAC* at ¶ 139.
[29] *Id.* at ¶ 142.
[30] *Id.* at ¶ 140.
[31] *Id.* at ¶¶ 146 and 154.
[32] *Id.* at ¶¶ 126-27, 134-38, 144, and 149.

remain a student at ASLS"[33], but such an assertion is implausible and unsupported by particularized facts.  It is highly unlikely that had she known the "true" caliber of incoming students, or the admission requirements those incoming students faced, and so on, that she would have immediately dropped out of ASL.  Because Lorona does not plead facts plausibly establishing that she heard and acted on any of ASL's allegedly fraudulent statements *prior to* Lorona's enrollment in August 2012, her fraud claims fail.

### 4.     Lorona Fails to Plead Cognizable Damages.

Lorona does not plead facts plausibly establishing that she has suffered any cognizable damages as a result of ASL's alleged misrepresentations.[34]  Lorona has not pled that *she* was "ineligible for federal financial aid" or that *she* had difficulty in graduating from ASL, passing the Arizona bar exam, or obtaining gainful employment.[35]  Lorona also does not allege that *she* is not "professionally prepared" to practice law or that *she* is incapable of "add[ing] immediate value" to employers.  Instead, Lorona pleads only that her damages include "student loan debt that includes accruing interest and fees throughout its term."[36]  It appears, therefore, that Lorona's fraud claims are based on the following damages theory:  because of ASL's alleged fraud, Lorona enrolled at ASL; because she enrolled at ASL, she had to take out loans to pay for her education at ASL; and because she took out loans to pay for her education at ASL, she will at some point in the future have to pay interest and fees.  Arizona law does not permit fraud claims to be

---

[33] *Id.* at ¶¶ 146 and 154.

[34]  Lorona bases her fraud claims on the purported woes of others – for example, non-traditional students, students enrolled in the myBAR program, and students who did not pass the bar exam.  *See SAC* at ¶¶ 121, 127, 129-131.  Lorona, who is currently employed, was enrolled at ASL as a *traditional* student, did *not* enroll in the myBAR program, *did* graduate, and *did* pass the February 2015 bar exam.  A fraud claim cannot be based upon the purported injuries of third parties.

[35]  While Lorona does claim that she "is unable to obtain employment with her ASLS degree", (*SAC* at ¶ 147), this statement cannot save her fraud claims.  First, it assumes that ASL promised her in the first instance that she would gain legal employment upon graduation.  Of course, ASL never promised such a thing.  And second, it implies that Lorona is currently unemployed, which, on information and belief, is not true.

[36] *Id.* at ¶¶ 147 and 157.

founded on such an indirect (and far-flung) damages theory.[37] Thus, the Court should dismiss with prejudice Counts I and II of the SAC.

### C. Lorona Has Failed to Plead a Plausible Claim for Negligent Misrepresentation (Count III).

Lorona's claim for negligent misrepresentation (Count III) fails for many of the same reasons that her fraud-based claims fail.

#### 1. Lorona Must Meet the Same Particularity Requirements.

Rule 9(b)'s particularity requirement applies equally to negligent misrepresentation claims.[38] As with the allegations supporting her fraud-based claims, Lorona improperly lumps together the "Defendants" in almost all of her negligent misrepresentation allegations.[39] For this reason alone, the Court should dismiss Count III.

#### 2. Lorona Must Establish a Misrepresentation of Material Fact.

Although negligent misrepresentation is a separate tort from fraud, like fraud, it requires a plaintiff to demonstrate the "misrepresentation or omission of a [material] *fact*."[40] As demonstrated above, the representations allegedly made by ASL were in the nature of opinions, predictions as to future events, and subjective characterizations. Those types of statements are not *facts* capable of supporting a negligent misrepresentation claim.[41] In addition, as described in detail above, Lorona failed to plead facts plausibly establishing that she has suffered any cognizable damages as a result of ASL's alleged misrepresentations – whether those representations were made fraudulently or negligently.

#### 3. Lorona Failed to Allege Duty and Breach of Duty

Lorona's negligent misrepresentation claim fails for yet another (and independent) reason. Namely, Lorona failed to allege in the SAC the most basic, threshold elements

---

[37] *See Smith v. Don Sanderson Ford, Inc.*, 439 P.2d 837, 839 (Ariz. App. 1968) (a showing of actual damages is essential to a case of fraud).
[38] *Gould v. M & I Marshall & Ilsley Bank*, 860 F. Supp. 2d 985, 988 (D. Ariz. 2012).
[39] SAC at ¶¶ 160-163, and 166.
[40] *McAlister v. Citibank,* 829 P.2d 1253, 1261 (Ariz. App. 1992); *Arnold & Assocs., Inc. v. Misys Healthcare Sys.,* 275 F. Supp. 2d 1013, 1029 (D. Ariz. 2003).
[41] *See id.; see also Poley*, 347 P.2d at 698-99; *Sydney*, 53 P.2d at 66; *Larkey*, 2012 WL 2154185, at *3; *Waddell*, 108 P.2d 565 at 569.

required to state any negligence claim – i.e., that a duty existed and that the Defendants breached that duty.[42]  Because Lorona's negligent misrepresentation claim is completely silent as to the elements of duty and breach, it should be dismissed.

### D.     Lorona Has Failed to State a Valid ADA Claim (Count IV).

#### 1.     IC Was Not Lorona's Employer and She Has Failed to Exhaust Administrative Remedies.

Count IV is the first of several employment-related claims Lorona makes against ASL and IC.  Despite that ASL employed Lorona, she also names IC as her employer.  To support her claim, Lorona alleges that IC controlled certain aspects of its business, such as budgeting.[43]  But these types of allegations are irrelevant when determining whether an entity is an "employer" under the ADA.[44]  Lorona's failure to allege facts sufficient to support her claim against IC warrant dismissal of her ADA claim asserted against IC.

Lorona's ADA claim against IC is also barred because she has failed to exhaust administrative remedies.  The ADA requires that before asserting an ADA claim, the plaintiff must first file a charge of discrimination against her employer.  The charge provides the employer with notice of the allegations against it and the opportunity to respond accordingly.[45]  Lorona did not name IC as her employer in her Charge.  She instead identified her actual employer, ASL,[46] who then responded to the Charge.  Had Lorona identified IC as her employer, IC would have immediately responded and made

---

[42] *See Arnold & Assocs., Inc.,* 275 F. Supp. 2d at 1029.
[43] *SAC* at ¶¶ 15-19.
[44] Courts look to the following factors: 1) Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work; 2) Whether and to what extent the organization supervises the individual's work; 3) Whether the individual reports to someone higher in the organization; 4) Whether and, if so, to what extent the individual is able to influence the organization; 5) Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts; 6) Whether the individual shares in the profits, losses, and abilities of the organization. *Brown v. Arizona*, CV-09-2272-PHX-GMS, 2010 WL 396387, at *1, 2 (D. Ariz. Jan. 28, 2010).
[45] *Maune v. Bankers Life and Casualty Insurance Co.*, No. CV 10-074-E-BLW, 2010 WL 2104145, at *11, (D. Idaho Jan. 28, 2010); *Sosa v. Hiraoka,* 920 F.2d 1451, 1458 (9th Cir.1990).
[46] At the time, ASL was doing business under the name of Phoenix School of Law.

clear that Lorona has never been an employee of IC and that it had been improperly named. But Lorona avoided the issue altogether. And she now attempts to benefit from doing so by adding an additional employer for the first time in her lawsuit. Lorona's failure to exhaust administrative remedies with IC is grounds for dismissal.

### 2. Lorona Was Not Entitled to Reasonable Accommodation to Work From Home.

Irrespective of how many employers Lorona claims she had, her ADA claim is deficient for other reasons. In particular, Lorona alleges she was discriminated against in violation of the ADA because she was not provided with a reasonable accommodation to work remotely from home to care for her disabled children.[47] But the ADA does not provide for reasonable accommodations to care for disabled[48] family members. The duty to provide a reasonable accommodation to a disabled employee applies only for the employee's *own* disability.[49] As such, Lorona's claim that she should have been given a reasonable accommodation by being allowed to work from home is without merit.[50]

### 3. Lorona Failed to Identify the Requisite Causal Link.

Lorona also alleges she was denied an interview for a promotion in April of 2012 because of her care giving responsibilities for her children.[51] But she fails to link this event in any way to the fact that she is a caregiver for her asthmatic children. Lorona does not offer any concrete allegations to establish any such causal link because none exists.

---

[47] *SAC* at ¶ 183.
[48] Lorona's children apparently have Asthma. It is unclear whether their condition qualifies as a disability under the ADA. Nevertheless, Defendants will accept the allegations as true for the purpose of this Motion.
[49] *Magnus v. St. Mark United Methodist Church*, 688 F.3d 331, 336-337 (7th Cir. 2012); *see also* 29 C.F.R. Pt. 1630, App. (§ 1630.8) ("[A]n employer need not provide the applicant or employee without a disability with a reasonable accommodation because that duty only applies to qualified applicants or employees with disabilities.").
[50] *Lukic v. Eisai Corp. of N. Amer.*, 919 F. Supp.2d 938, 945 (W.D. Tenn. 2013) ("[W]hile Plaintiff did request a transfer to accommodate her need to care for her disabled daughter, this is not protected activity: 'employers are not required to provided reasonable accommodations to non-disabled workers' due to their association with a disabled person'").
[51] *SAC* at ¶ 186.

To the contrary, Lorona alleges extensively that any adverse employment action she suffered was related to her raising issues about ASL's tax returns.[52] Indeed, this was the crux of her original and First Amended Complaint. Though she no longer asserts a whistleblower claim, she continues to allege that her whistleblowing activities were the cause of subsequent employment actions.[53]

Even if she did allege that her failure to get promoted was due to her association with disabled persons, she still fails to identify the basis from which she is able to reach this conclusion. In particular, although she asserts that ASL's HR Director was aware that Lorona's children had asthma, she does not allege that the HR Director was the one who ultimately made the decision not to promote Lorona or how her caregiving duties had anything to do with that decision. To the extent the decisionmaker was someone other than the HR Director, Lorona fails to identify whether or not that person even had any knowledge that Lorona's children had asthma. The mere fact that Lorona's children have asthma does not mean that any employment related decision concerning Lorona must have been related to her caring for her children.[54] Lorona's failure to allege facts that would show a causal link between her caregiving duties and any adverse action dooms her claim.

### E. **Plaintiff Has Failed to State a Valid FMLA Claim (Count IV).**

#### 1. IC Was Not Lorona's Employer

Like the ADA, the FMLA looks at various factors to determine who is an "employer" under the FMLA. These factors revolve around the control exerted by an entity over an employee.[55] As noted above, Lorona's argument that IC was her employer

---

[52] *Id.* at ¶¶ 57-68.
[53] *Id.*
[54] *See Cheeks v. Gen. Dynamics*, 22 F.Supp.3d 1015, 1039 (D. Ariz. 2014) (plaintiff unable to assert viable claim when she did "not even attempt to articulate a causal link between an adverse employment action and her association with a disabled son.").
[55] These factors include the following: 1) The nature and degree of control of the workers; 2) The degree of supervision, direct or indirect, of the work; 3) The power to determine the pay rates or the method of payment of the workers; 4) The right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers; and 5)

is centered upon the allegation that IC was ASL's parent and/or was engaged in activities such as budgeting.[56] But these allegations are insufficient to establish IC as Lorona's employer and her FMLA claim against IC should therefore be dismissed.

### 2.     Lorona's Claim is Time Barred

Regardless of who Lorona's employer was, Lorona's FMLA claim is time barred. Pursuant to 29 U.S.C. § 2617(c), FMLA violations must be brought no later than two years "after the date of the last event constituting the alleged violation for which the action is brought." Lorona's FMLA claim was first brought in her First Amended Complaint filed on May 2, 2015, over two years after her termination. As such, her claim is untimely and barred.

### 3.     Accommodations Are Not Available Under the FMLA.

Lorona's substantive claim under the FMLA is that she should have been permitted to work remotely to care for her children.[57] The FMLA, however, does not provide for such accommodations. Instead, the FMLA allows eligible employees up to 12 weeks of leave for their own (or a family member's) serious health condition.[58] Therefore, the only issue under the FMLA is whether an employee has been provided with the appropriate leave.[59]

Lorona does not identify any instance when she was denied FMLA leave. Instead, she argues that she was not offered "FMLA protection" and that male employees were placed on FMLA leave without having to submit documentation from a doctor or request from the employee to be placed on FMLA leave.[60] But whether leave is "designated" as

---

Preparation of payroll and the payment of wages. *Brown v. Arizona*, No. CV-09-2272-PHX-GMS, 2011 WL 2911054, at *3 (D. Ariz. July 20, 2011).
[56] *Id.*
[57] SAC at ¶ 204-209.
[58] 29 U.S.C.A. § 2612.
[59] *See generally* Daniel Sweeney, Deputy Assist. Adm'r, United States Department of Labor FMLA-55 *(March 10, 1995),* http://www.dol.gov/whd/opinion/FMLA/prior2002/FMLA-55.htm.
[60] SAC at ¶¶ 1215-218.

1   FMLA leave or not is irrelevant.[61]  The only issue is whether the employee was eligible
2   for and/or received the requested leave.[62]  Further, Lorona's claim that her PTO was
3   improperly applied is also immaterial.[63]  Because Lorona has failed to state an actionable
4   FMLA claim, the claim should be dismissed.

### F.   **Plaintiff Has Failed to State a Valid Title VII Claim (Count VI).**

#### 1.   **IC Was Not Lorona's Employer.**

Under Title VII, courts determine whether an entity is an "employer" using the same multi-factor test used in FMLA cases, which are enumerated above.[64]  As such, for the same reasons IC is not an "employer" for purposes of her FMLA claim, so too is IC not Lorona's employer with respect to her Title VII claim.  The claims against IC are also improper because Lorona failed to exhaust administrative remedies by not identifying IC as her employer in her Charge.[65]

#### 2.   **Lorona's Did Not Exhaust Administrative Remedies.**

Lorona argues in the SAC that she was sexually harassed.  Specifically, she claims that someone told her that he or she heard ASL's Dean and HR Director once commented that Lorona had an attractive "butt"[66] and that a supervisor once allegedly compared

---

[61] It should be noted that while Lorona goes to great lengths to argue that her FMLA leave was never "designated" as FMLA leave, she explicitly acknowledges in the SAC that she and/or her physician never turned in the FMLA paperwork that ASL provided to her.  *SAC* at ¶ 210-214.

[62] *Morehardt v. Spirit Airlines, Inc.,* 174 F. Supp.2d 1272, 1278 (M.D. Fla. 2001) (assuming plaintiff was entitled to FMLA leave, her employer's allowing her to take more leave defeated FMLA interference claim; "12 week period applies whether or not the employer notified the employee after leave begins that the leave is being taken under the FMLA"); *Norman v. So. Guar. Ins. Co.,* 191 F. Supp.2d 1321, 1331-32 (M.D. Ala. 2002), *citing McGregor v. Autozone, Inc.,* 180 F.3d 1305, 1307-08 (11th Cir. 1999) (rights under the FMLA include 12 weeks of medical leave, not the right to have those 12 weeks designated as a particular kind of leave).

[63] It should be noted that employers are explicitly permitted to apply an employee's PTO who is on FMLA leave.  29 C.F.R. § 825.207 (Substitution of Paid Leave).

[64] *E.E.O.C. v. Pacific Maritime Ass'n,* 351 F. 3d 1270, 1275 (9th Cir. 2003).

[65] *Maune,* 2010 WL 2104145, at *1; *Sosa,* 920 F.2d at 1458.

[66] *SAC* at ¶ 231.

Lorona to a Barbie Doll.[67]  Nowhere in the Charge is there any reference to these alleged events or any other allegation that Lorona believed that she was sexually harassed. Because she has failed to exhaust administrative remedies with respect to any sexual harassment claim, such allegations should be dismissed as a matter of law.[68]

### 3. The Alleged Sexual Harassment Was Not Severe or Pervasive.

Even if Lorona had properly asserted a sexual harassment claim in her Charge, the claim is still subject to dismissal because Lorona's allegations fall far short of the type needed to establish a valid hostile work environment claim.  Title VII makes it unlawful for an employer to "discriminate" against any individual in the terms and conditions of one's employment because of such individual's "sex."  The Supreme Court has set a high threshold before harassment can rise to the level of prohibited discrimination: "When the workplace is permeated with *discriminatory* intimidation, ridicule, and insult that are sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated."[69]  Further, the plaintiff "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted '*discriminat[ion]* . . . because of . . . sex.'"[70]

As the Supreme Court has made clear, "these standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'"[71]  The sporadic use of abusive language, gender-related jokes and occasional teasing will not suffice to support a hostile work environment claim.[72]  Rather, the Court

---

[67] *Id.* at ¶ 239.
[68] The claim is also subject to dismissal due to Lorona's failure to assert any such claim within 300 days of the alleged conduct.  42 U.S.C. § 2000e-5(e)(1).
[69] *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (emphasis added) (internal citations omitted); *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000).
[70] *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 81 (1998); *Proctor v. Safeway Food & Drug, Inc.*, No. 06-CV-1357-PHX-RCB, 2007 WL 2892944, at *8 (D. Ariz. Sept. 28, 2007) (plaintiff unable to show harassment "because of sex.").
[71] *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (*quoting Oncale,* 523 U.S. at 80).
[72] *Id.*

has "made it clear that *conduct must be extreme* to amount to a change in the terms and conditions of employment."[73] Even if accepted as true for the purposes of this Motion, Lorona's allegation that someone commented about her butt and compared her to a Barbie doll falls nowhere near the level needed to support a hostile work environment claim. As such, the claim is subject to dismissal.

### 4. Lorona Fails to State Valid Disparate Treatment Claim

In support of her Title VII disparate treatment claim, Lorona alleges that she was discriminated on the basis of sex because she was charged PTO while she was on leave. To try and prove this point, Lorona identifies other employees who were allowed to work remotely without their PTO being charged, such as Stephanie Lee.[74] But Lorona's identification of other female employees who were treated more favorably than her completely destroys any claim that Lorona was subject to sex discrimination.[75] Likewise, Lorona's allegations in her Charge and the SAC that she did not receive a promotion in 2012 due to her sex are deficient because she explains in her Charge that the position was filled by two female employees.[76] These allegations do not establish sex discrimination.

### G. Lorona Was Not Subject to a Retaliatory Discharge (Count VII).

#### 1. Title VII

In order to establish a *prima facie* case of retaliation under Title VII, a complaining party must establish that: 1) she engaged in a protected activity; 2) she suffered an adverse employment action; and 3) a causal link exists between the protected activity and the employment decision.[77] To establish this requisite causal link, "the plaintiff must present evidence sufficient to raise the inference that her protected activity was the likely reason

---

[73] *Id.* (emphasis added); *Brooks*, 229 F.3d at 927.
[74] *SAC* at ¶ 253.
[75] Further, being charged PTO while on FMLA is not an adverse employment action. Employers are specifically permitted to do so pursuant to 29 C.F.R. §541.602(b)(2).
[76] Charge (Exhibit B).
[77] *Kortan v. California Youth Auth.*, 217 F.3d 1104, 1112 (9th Cir. 2000).

for the adverse action."[78]

Lorona has not alleged that she engaged in protected activity, nor has she identified any causal link between the alleged protected activity and her discharge. As noted above, Lorona argues that she was retaliated against for being a whistleblower. Nevertheless, she now argues, without any support, that she was fired for being a "woman" in that male employees were treated differently than her.[79] If true, this is a disparate treatment, not retaliation, claim. To the extent Lorona complained about not getting a promotion or being charged PTO while on leave, unless she complained to ASL about these things and specifically said that she thought she was being treated differently because of her sex (which she does not do), she has not engaged in protected activity. Lorona has now been provided with several opportunities to make such allegations but she has failed to do so.

Lorona has also failed to exhaust administrative remedies in that nowhere in her Charge does she indicated that she was subject to retaliation. The retaliation box on her Charge is not checked, nor is there any allegation made by Lorona arguing that she was retaliated against. Her failure to exhausted administrative remedies is fatal to her claim.[80]

### 2.    FMLA

As noted above, any FMLA claim asserted by Lorona is time barred.[81] Even if it was timely, however, Lorona's claim is still deficient. 29 U.S.C. § 2615(a)(2) provides

---

[78] *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982) (citations omitted); *see also Shah v. Mt. Zion Hosp. and Med. Ctr.*, 642 F.2d 268, 271 (9th Cir. 1981) (plaintiff unable to establish retaliation claim where no causal link established); *Clemente v. United States*, 766 F.2d 1358, 1366 n.11 (9th Cir. 1985) (recognizing that plaintiff must show causal link between protected activity and adverse action to establish retaliation claim).
[79] *SAC* at ¶ 270.
[80] *Padilla v. Bechtel Constr. Co.*, No. CV 06 286 PHX LOA, 2007 WL 1219737 at *7 (D. Ariz. Apr. 25, 2007) (granting motion to dismiss where plaintiff added retaliation claim to national origin discrimination claims only after filing suit preventing employer from obtaining fair notice of the charge); *see also McIntosh v. Maricopa Community College Dist.*, No. CV07-00760-PHX-DGS, 2007 WL 4232696, at *1-2 (D. Ariz. Nov. 28, 2007) (granting motion to dismiss where plaintiff included new allegations regarding additional promotion denials by different perpetrators at different locations and times in his lawsuit not addressed in his original agency charge).
[81] 29 U.S.C. § 2617(c).

that it is unlawful "for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."[82] Lorona does not allege that she was discharged for opposing any unlawful FMLA practice. At most, she alleges that she complained about her PTO being charged while she was on leave. This is not protected activity. Indeed, it should be noted that the federal regulations specifically allow employers to require employees to utilize PTO while they are on FMLA leave.[83]

### H. Lorona's Claims for Declaratory Relief and Injunctive Relief Are Not Proper Causes of Action.

Lorona also seeks declaratory relief (Count VIII) and injunctive relief (Count IX) in the SAC. In particular, she seeks a declaration of the parties' respective rights under the ADA, FMLA and Title VII. But any such questions regarding the parties' rights under these statutes will be determined when those claims are resolved. Further, Lorona's request for injunctive relief is not a separate cause of action. Rather, it is merely a remedy sought by Lorona to the extent she is successful on her underlying claims. As such, Counts VII and IX are also subject to dismissal under Rule 12(b)(6).

## IV.  CONCLUSION.

Because Lorona has failed to state a claim upon which relief may be granted, Defendants respectfully request that the SAC be dismissed with prejudice.

RESPECTFULLY SUBMITTED this 3rd day of August 2015.

```
                              QUARLES & BRADY LLP

                              By  s/ Eric Johnson
                                  Nicole France Stanton
                                  Eric B. Johnson
                                  Michael S. Catlett
                              Attorneys for ASL and IC
```

---

[82] 29 U.S.C. § 2615(a)(2).
[83] 29 C.F.R. § 825.207 (Substitution of Paid Leave).

1  I hereby certify that on 3 August 2015, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

- Robert T Mills    rmills@millsandwoods.com
- Sean Anthony Woods    swoods@millsandwoods.com, docket@millsandwoods.com

I further certify that on 3 August 2015, I served a courtesy copy of the attached document by courier on the following:

- HONORABLE NEIL V. WAKE
  United States District Court
  Sandra Day O'Connor U.S. Courthouse, Suite 524
  401 West Washington Street, SPC 52
  Phoenix, AZ 85003-2154

s/ Jeannie Fraser
An employee of Quarles & Brady, LLP