1
2
3
4

Quarles & Brady LLP
Firm State Bar No. 00443100
Renaissance One
Two North Central Avenue
Phoenix, AZ  85004-2391
TELEPHONE 602.229.5200

5
6
7
8

Nicole France Stanton (#020452)
    nicole.stanton@quarles.com
Eric B. Johnson (#020512)
    eric.johnson@quarles.com
Michael S. Catlett (#025238)
    michael.catlett@quarles.com

9

Attorneys for Defendants

10

IN THE UNITED STATES DISTRICT COURT

11

FOR THE DISTRICT OF ARIZONA

12
13
14
15
16
17
18
19

Paula C. Lorona,

                    Plaintiff,

          vs.,

Arizona Summit Law School LLC, a
Delaware limited liability company; Infilaw
Corporation, a Delaware corporation; Jane
and John Doe 1-100; Black Corporation 1-
100; White Partnership 1-100,

                    Defendants.

NO. 2:15-CV-00972-NVW

**ANSWER TO THIRD AMENDED COMPLAINT**

20
21
22

          Defendants Arizona Summit Law School LLC ("ASL") and Infilaw Corporation ("Infilaw"; jointly referred to herein as "Defendants"), by and through their undersigned counsel, hereby answer Plaintiff's Third Amended Complaint as follows:

23
24
25
26
27
28

          1.          This is an action for relief from Defendants' violations of Plaintiff's civil rights. These violations include: wrongful and willful discrimination and retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12111 et seq., and wrongful and willful gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.  Plaintiff also brings claims for

1    fraud and negligent misrepresentation under Arizona state law.

2          **ANSWER:**  The allegations of Paragraph 1 of the Complaint do not state a factual

3    allegation to which a response is deemed necessary and Defendants therefore deny same.

4          2.     Plaintiff seeks damages, including lost wages and benefits, compensatory,

5    general punitive and liquidated damages, plus interest and reasonable attorneys' fees and

6    costs.

7          **ANSWER:**  The allegations of Paragraph 2 of the Complaint do not state a factual

8    allegation to which a response is deemed necessary and Defendants therefore deny same.

9    Defendants further deny that Plaintiff is entitled to the relief requested in the Complaint or

10   at all.

11                      **PARTIES, VENUE, AND JURISDICTION**

12         3.     Plaintiff Paula Lorona ("Lorona") is a resident of Maricopa County,

13   Arizona.

14         **ANSWER:**   Defendants lack information sufficient to confirm or deny the

15   allegations of Paragraph 3 of the Complaint and therefore deny same.

16         4.     Defendant Arizona Summit Law School ("ASLS") formerly known as

17   Phoenix School of Law, is a for-profit Arizona limited liability company. ASLS is a

18   private, for-profit post-secondary school, owned and managed by Infilaw Corp. that offers

19   Legal Education Programs in Phoenix, Arizona.  ASLS is licensed by the Arizona State

20   Board for Private Post-Secondary Education and is accredited by the American Bar

21   Association (ABA).

22         **ANSWER:**   Defendants admit that ASLS is owned by Infilaw and that it is

23   licensed by the Arizona State Board for Private Post-Secondary Education and is

24   accredited by the American Bar Association.   As to the remaining allegations of

25   Paragraph 4 of the Complaint, the term "managed" is vague, ambiguous and calls for

26   speculation and Defendants therefore deny same.

27         5.     Defendant Infilaw Corporation ("Infilaw") is a Delaware corporation with a

28   primary place of business in Naples, Florida, and is the parent company of ASLS.  In

addition to ASLS, Infilaw owns and operates two other private, for-profit law schools – Florida Coastal School of Law in Jacksonville, Florida, and Charlotte School of Law in Charlotte, North Carolina.

**ANSWER:**    Defendants admit that Infilaw is a Delaware corporation with a primary place of business in Naples, Florida, and that it is the parent company of ASLS. Defendants further admit that Infilaw owns and operates two other private, for-profit law schools – Florida Coastal School of Law in Jacksonville, Florida, and Charlotte School of Law in Charlotte, North Carolina.  As to the remaining allegations of Paragraph 5 of the Complaint, the term "operates" is vague, ambiguous and calls for speculation and Defendants therefore deny same.

6.    Defendants Jane Does and 1-100, Black Corporations 1-100, and White Partnerships 1-100 are certain unknown individuals or entities who through their own actions or inactions have caused or assisted others in causing the incidents and resulting harms set forth below. Despite diligent efforts by Lorona, the identity of these individuals has not yet been ascertained but they are well known by the Defendants.  Lorona will amend their complaint to allege the true names and capacities of the various Doe Defendants when they are learned.

**ANSWER:**  Defendants deny the allegations of Paragraph 6 of the Complaint.

7.    This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. § 1331 because this is an action under Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e et seq. (Title VII) and § 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981A, and pursuant to the ADA, 42 U.S.C. § 12111, et seq.

**ANSWER:**  Defendants admit the allegations of Paragraph 7 of the Complaint.

8.    Venue is proper in the District of Arizona pursuant to 28 U.S.C § 1391 (b), because the events giving rise to Lorona's claims occurred in this District.

**ANSWER:**  Defendants admit venue is proper but deny the remaining allegations of Paragraph 8 of the Complaint.

9.    Lorona timely filed a Charge of Discrimination with the Equal Employment

Opportunity Commission ("EEOC") and this Complaint is timely filed.

**ANSWER:**   The allegations of Paragraph 9 of the Complaint state legal conclusions to which no response is required and Defendants therefore deny the same.

10.    All administrative prerequisites have been met.

**ANSWER:**   The allegations of Paragraph 10 of the Complaint state legal conclusions to which no response is required and Defendants therefore deny the same.

**GENERAL ALLEGATIONS**

A.    <u>Liability of Infilaw on Plaintiff's Civil Rights Claims</u>.

11.    At all relevant times, Infilaw participated in or influenced the employment policies and practices of ASLS.

**ANSWER:**  Defendants deny the allegations of Paragraph 11 of the Complaint.

12.    Infilaw controlled and managed the budget and budgeting process of ASLS. All promotions, raises for performance reviews and any other incentives had to be approved by Infilaw. Infilaw also had to approve ASLS's annual budget.

**ANSWER:**  Defendants deny the allegations of Paragraph 12 of the Complaint.

13.    Infilaw prepared and distributed to ASLS and its sister schools all employee handbooks, and required the use of those handbooks in the operation of the schools.

**ANSWER:**  Defendants deny the allegations of Paragraph 13 of the Complaint.

14.    Infilaw promulgated and imposed on ASLS all hiring policies and Infilaw made all benefits decisions applicable to ASLS employees. Infilaw determined the insurance carriers and plans that were available to ASLS employees under ASLS health insurance benefits.

**ANSWER:**  Defendants deny the allegations of Paragraph 14 of the Complaint.

15.    Infilaw transferred employees of the three law schools it owns, including ASLS, between the three law school campuses.  For example, Don Lively, a founder of Infilaw, has rotated and served at various points in time as the President and Dean of all three Infilaw campuses.

**ANSWER:**  Defendants admit that some individuals have worked at more than one

of the campuses affiliated with Infilaw.  Defendants deny the remaining allegations of Paragraph 15 of the Complaint.

16.     Infilaw processed and maintained control of ASLS's payroll.

**ANSWER:** Defendants deny the allegations of Paragraph 16 of the Complaint.

17.     401-K and all other benefits of ASLS employees, including tuition waivers for ASLS students who also were also, were controlled and managed by Infilaw.

**ANSWER:** Defendants deny the allegations of Paragraph 17 of the Complaint.

18.     Reimbursement for corporate credit cards and expenses paid by individual employees while traveling for ASLS were made by Infilaw, which also had to review and approve such reimbursements.

**ANSWER:** Defendants deny the allegations of Paragraph 18 of the Complaint.

19.     Infilaw is accordingly liable for the violations of the ADA and Title VII alleged herein.

**ANSWER:** Defendants deny the allegations of Paragraph 19 of the Complaint.

20.     On information and belief, Defendant Infilaw was given actual notice of the EEOC proceedings alleged above during the time that the EEOC's investigation of Lorona's Charge of Discrimination was still pending.

**ANSWER:** Defendants admit that Infilaw was aware that Lorona had filed a charge of discrimination while the EEOC's investigation was pending.  Defendants deny the remaining allegations of Paragraph 20 of the Complaint.

21.     As alleged herein, at all relevant times Defendant Infilaw had an identity of interest with Defendant ASLS with respect to the matters alleged in Lorona's Charge of Discrimination filed with the EEOC.

**ANSWER:** Defendants deny the allegations of Paragraph 21 of the Complaint.

**B.      Lorona's Employment With ASLS.**

22.     ASLS hired Lorona to work as an administrative assistant in November 2009. While employed by ASLS Lorona received promotions to financial aid representative in 2010, assistant director of financial aid in 2011, and student

1  accounts/accounting manager in 2011.

2      **ANSWER:** Defendants deny the allegations of Paragraph 22 of the Complaint.

3      23.    Throughout her employment, Lorona received excellent employee reviews

4  and was assured by her superiors at ASLS that she would have the opportunity for

5  advancement commensurate with her skills and experience.

6      **ANSWER:** Defendants deny the allegations of Paragraph 23 of the Complaint.

7      24.    However, after Lorona began working for ASLS, she was subjected to a

8  pattern of discrimination because of her gender and because she was known to have minor

9  children with disabilities, for whom Lorona was the primary caregiver.  For example,

10  unlike her male colleagues and other employees who were not caregivers of disabled

11  family members, Lorona was denied promotions or even the opportunity to interview for

12  positions for which she was qualified.  She was also denied the opportunity to work

13  remotely, and was charged "paid time off" when she did work remotely.  Further,

14  Defendants did not offer her FMLA leave under the Family and Medical Leave Act

15  ("FMLA"), 29 U.S.C. § 2601 et seq., in the same manner it offered such leave to other

16  employees.

17      **ANSWER:** Defendants deny the allegations of Paragraph 24 of the Complaint.

18      25.    Lorona complained to her superiors, including ASLS President Scott

19  Thompson ("Thompson") and ASLS Director of Human Resources Stephanie Lee ("Lee")

20  that she was being treated worse than her male colleagues and colleagues who were not

21  caregivers of disabled family members.

22      **ANSWER:** Defendants deny the allegations of Paragraph 25 of the Complaint.

23      26.    Defendants took no corrective action on Lorona's complaints, and instead

24  continued their pattern of discrimination.

25      **ANSWER:** Defendants deny the allegations of Paragraph 26 of the Complaint.

26      27.    On April 13, 2013, Lee informed Lorona that Lorona and the School were

27  going to be "mutually separating," and that if Lorona signed a waiver of rights and

28  confidentiality agreement she would receive three weeks of pay.

1    **ANSWER:**  Defendants admit that they offered severance pay but lack knowledge

2    sufficient to admit or deny the remaining allegations of Paragraph 27 of the Complaint

3    and therefore deny same.

4    28.    Lorona did not agree to "mutually separate" her employment.

5    **ANSWER:**  Defendants lack information sufficient to confirm or deny the

6    allegations of Paragraph 28 of the Complaint and therefore deny same.

7    29.    Lorona asked Lee why she was being terminated, because in multiple

8    meetings just weeks prior Lee had assured Lorona that her job was not in jeopardy and she

9    had no performance concerns.

10    **ANSWER:**  Defendants lack information sufficient to confirm or deny the

11    allegations of Paragraph 29 of the Complaint and therefore deny same.

12    30.    Lee replied that Lorona was not being fired for cause, that Lorona had not

13    done anything wrong, and that the company just felt she would be happier somewhere

14    else.

15    **ANSWER:**  Defendants lack information sufficient to confirm or deny the

16    allegations of Paragraph 30 of the Complaint and therefore deny same.

17    31.    Lorona refused to sign the waiver of rights and/or confidentiality agreement.

18    **ANSWER:** Defendants admit the allegations of Paragraph 31 of the Complaint.

19    32.    In response, Lorona filed appropriate complaints with the Arizona Attorney

20    General's Office for whistleblower protection and the EEOC for discrimination.

21    **ANSWER:**  Defendants lack information sufficient to confirm or deny the

22    allegations of Paragraph 32 of the Complaint and therefore deny same.

23    33.    Despite ASLS's assurances to Lorona that her termination was without

24    cause, ASLS represented to the EEOC during the course of its investigation of Lorona's

25    charge of discrimination that Lorona had in fact been terminated for cause because she

26    talked about students and had performance issues, such as poor 360 results.

27    **ANSWER:**  Defendants refer to the documents provided by ASLS to the EEOC

28    for the content thereof.   Those documents should be interpreted in accordance with

Arizona and Federal law.

34.    In fact, Lorona had never had a disciplinary report filed against her at ASLS.

**ANSWER:**  In responding to the allegations in Paragraph 34 of the Complaint, the term "disciplinary report" is vague, ambiguous and calls for speculation.   ASLS did receive complaints concerning Lorona and Defendants therefore deny the allegations in Paragraph 34 of the Complaint.

**C.**    **Lorona's Enrollment at ASLS.**

    **1.**    **Lorona Relied On Defendants' Representations In Deciding to Enroll as a Student at ASLS**.

35.    One benefit given to employees of ASLS is a full tuition waiver to attend law school, beginning 12 months after full-time employment and continuing throughout employment. Also, based upon the employee's job performance, the employee could be granted a pro rata early tuition waiver starting at 9 months

**ANSWER:**  Defendants admit that a tuition waiver may be provided to eligible employees.  Defendants deny the remaining allegations of Paragraph 35 of the Complaint.

36.    This tuition waiver was one of the factors Lorona considered when accepting employment with ASLS.

**ANSWER:**   Defendants lack information sufficient to confirm or deny the allegations of Paragraph 36 of the Complaint and therefore deny same.

37.    Before her employment and before enrolling at ASLS, Lorona reviewed statistics set forth in marketing materials physically placed throughout the admissions area of the ASLS facility. This marketing material included the annual "Viewbook" which contained favorable statements from previous students about the caliber of the students attending ASLS and the quality of the education they received from ASLS. The "Viewbook" was also available online on ASLS' website.

**ANSWER:**   Defendants lack information sufficient to confirm or deny the allegations of Paragraph 37 of the Complaint and therefore deny same.

1    38.    ASLS posted on its website and in its "Viewbook" enrollment statistics,

2    including LSAT scores and undergraduate GPAs, of its students.   ASLS updated this

3    information at least annually on its website and in the "Viewbook."   ASLS also provided

4    this information to the Law School Admission Council ("LSAC"), which similarly posted

5    it on its website for review by students and potential students of ASLS.   Lorona reviewed

6    these statistics both online and in the paper copy marketing materials and "Viewbooks"

7    available in the admissions area of ASLS facilities.

8        **ANSWER:**   Defendants admit that ASLS has published enrollment statistics,

9    including average LSAT scores and undergraduate GPAs, of its students, including on its

10   own website and with LSAC.   Defendants refer to those publications for the content

11   thereof.   Defendants lack information sufficient to confirm or deny the allegation as to

12   what information Lorona reviewed and therefore deny same.

13   39.    Lorona also reviewed additional information on ASLS' graduates provided

14   by ASLS in its student application packet.   From this information, Lorona was impressed

15   to learn that only two out of 70 students that were actively seeking employment were

16   unemployed. She also learned from the application packet that the median salary for

17   ASLS graduates was $60,000, with a median student loan debt of $101,310.

18       **ANSWER:**   Defendants refer to the "information" referenced in Paragraph 39 for

19   the content thereof.   Defendants lack information sufficient to confirm or deny the

20   remaining allegations of Paragraph 39 of the Complaint and therefore deny the same.

21   40.    ASLS' law school application instructions that ASLS provided to Lorona

22   online contained in its Section 10 explicit assurance that:

23   > Phoenix School of Law's [ASLS's] admissions process is
24   > governed by the American Bar Association Standards for
     > Approval of Law Schools and Interpretations. In particular,
25   > Standard 501 provides that:
26   > (a) A law school's admission policies shall be consistent with
     > the objectives of its educational program and the resources
27   > available for implementing those objectives.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> (b) A law school shall not admit applicants who do not appear capable of satisfactorily completing its educational program and being admitted to the bar.

Lorona read and relied upon these assurances in deciding to enroll at ASLS as a law student.  ASLS repeated these assurances in its online application page through at least 2012.

**ANSWER:**  Defendants refer to ASLS' law school application instructions for the content thereof.  Defendants lack information sufficient to confirm or deny the remaining allegations contained in Paragraph 40 and therefore deny the same.

41.    Lorona also read on ASLS' website prior to enrolling at ASLS as a student that ASLS' graduates had bar passage rates exceeding 80%.

**ANSWER:**    Defendants lack information sufficient to confirm or deny the allegations of Paragraph 41 of the Complaint and therefore deny same.

42.    Based upon all the foregoing information, which ASLS provided to Lorona prior to her enrollment, Lorona decided that ASLS would be a good place for her to work and attend law school.

**ANSWER:**    Defendants lack information sufficient to confirm or deny the allegations of Paragraph 42 of the Complaint and therefore deny the same.

43.    Specifically, Lorona reasonably believed based upon this information that if she completed ASLS' law school program she had a very good chance of passing the bar examination and would easily be able to find employment at a law firm or even in the public sector making approximately $60,000 per year.

**ANSWER:**  Defendants deny that any such belief by Lorona was reasonable or based on any statement made by ASLS.  Defendants lack information sufficient to confirm or deny the remaining allegations of Paragraph 43 of the Complaint and therefore deny the same.

44.    In August 2009, Lorona applied for traditional enrollment at ASLS and was accepted as a traditional evening student.

1      **ANSWER:**  Defendants admit that Lorona applied for enrollment at ASLS in

2  August 2009.  As to the remaining allegations of Paragraph 44 of the Complaint, the term

3  "traditional" is vague, ambiguous and calls for speculation and Defendants therefore deny

4  same.  Defendants also affirmatively allege that Lorona was later academically dismissed,

5  and then reapplied and was accepted as a evening student in Spring 2012.

6      45.    Throughout the time she was a law student of ASLS, ASLS continued to

7  post on its website and in its "Viewbook" statistics including LSAT scores and grade

8  point averages of ASLS students. ASLS updated the reported statistics at least annually.

9  ASLS also continued to provide those statistics to LSAC, which with ASLS' knowledge

10  and permission, continued to post them on LSAC's website for review by students and

11  potential students of ASLS.

12      **ANSWER:**  Defendants admit that ASLS updates its reported enrollment statistics

13  at least annually and that it has continued to provide its enrollment statistics to LSAC for

14  publication on LSAC's website.  Defendants refer to ASLS' published enrollment statistics

15  for the content thereof.

16      46.    LSAT scores and undergraduate GPAs are commonly accepted indicators of

17  the likelihood of a student's success in law school and ability to pass the bar examination.

18      **ANSWER:**  Defendants lack information sufficient to confirm or deny the

19  allegations of Paragraph 46 of the Complaint and therefore deny same.

20      47.    Throughout the time Lorona was a student at ASLS she continued to read

21  and rely upon the admission statistics, including LSAT scores and undergraduate GPAs of

22  ASLS students as reported on ASLS' website and marketing materials, including the

23  "Viewbook" and on LSAC's website.

24      **ANSWER:**  Defendants lack information sufficient to confirm or deny the

25  allegations of Paragraph 47 of the Complaint and therefore deny same.

26      48.    Lorona took comfort in the fact that the reported statistics regarding LSAT

27  scores and undergraduate GPAs of ASLS students remained stable throughout this time,

28  and compared favorably to comparable statistics regarding students enrolled at other law

1   schools.

2       **ANSWER:**   Defendants lack information sufficient to confirm or deny the

3   allegations of Paragraph 48 of the Complaint and therefore deny the same.

4       49.   For example, median LSAT scores and undergraduate GPAs for ASLS

5   students as reported on ASLS website in the "Viewbook" as of Spring 2008 were 153 and

6   3.18 respectively.

7       **ANSWER:**   Defendants refer to the materials referenced in Paragraph 49 of the

8   Complaint for the content thereof.

9       **2.   <u>Admission of Large Numbers of Students Through the AAMPLE Program Materially Decreased the Median and Average LSAT Scores and Undergraduate GPAs of ASLS' Student Body</u>.**

10

11      50.   By 2005, ASLS was admitting certain students to its law school through a

12   program known as Alternative Admissions Model for Legal Education ("AAMPLE").

13      **ANSWER:**   Defendants admit the allegations of Paragraph 50 of the Complaint.

14      51.   Admission and enrollment through AAMPLE does not require grade point

15   average nor LSAT scores within the range of traditional admissions.

16      **ANSWER:**   Defendants deny the allegations contained in Paragraph 51 of the

17   Complaint.

18      52.   AAMPLE students are admitted through alternative means. As such, and

19   unbeknownst to Lorona, LSAT and undergraduate GPA statistics were not included in the

20   admissions statistics ASLS posted on its website, published in its marketing materials,

21   including the "Viewbook" and provided to the LSAC for review by potential and existing

22   ASLS students.

23      **ANSWER:**   Defendants admit that AAMPLE students are admitted through

24   alternative means.  Defendants deny the remaining allegations contained in Paragraph 52

25   of the Complaint.

26      53.   The percentage of AAMPLE applicants who were admitted to ASLS

27   increased from 11% in 2005 to 80% in Spring 2011. The number and percentage of

28   AAMPLE students included in ASLS' student body likewise increased substantially and

1    materially during that time period.

2          **ANSWER:**  Defendants deny the allegations contained in Paragraph 53 of the

3    Complaint.

4          54.    However, ASLS did not disclose on its website nor in marketing materials

5    nor the "Viewbook," nor in the information it provided to LSAC for posting on its website

6    that the reported admissions statistics, including LSAT scores and undergraduate GPAs,

7    did not include the LSAT scores or undergraduate GPAs of AAMPLE students.  As such,

8    the statistics ASLS reported were materially false and misleading.

9          **ANSWER:**  Defendants deny the allegations of Paragraph 54 of the Complaint.

10         55.    Lorona did not know that the reported LSAT scores and undergraduate

11   grade point averages of ASLS students that she reviewed on ASLS website and marketing

12   materials, including the "Viewbook," excluded AAMPLE students. This omission was

13   material, and rendered the reported statistics materially false and misleading.

14         **ANSWER:**  Defendants deny the allegations of Paragraph 55 of the Complaint.

15         56.    Defendants thus misrepresented their admission requirements and the

16   caliber of students being admitted to ASLS.

17         **ANSWER:**  Defendants deny the allegations of Paragraph 56 of the Complaint.

18         57.    Reporting enrollment and success statistics based on 20% or less of the

19   student population is grossly misleading to incoming and existing students.

20         **ANSWER:**  Defendants deny the allegations of Paragraph 57 of the Complaint.

21         58.    The actual impact of the admission of ever-increasing numbers of AAMPLE

22   students was not known to Lorona until ASLS' recent disclosure of abysmal and

23   progressively lower bar examination passage rates, culminating in the July 2015 bar

24   passage rate of 26.4% for first-time and repeat takers.

25         **ANSWER:**  Defendants deny the allegations contained in Paragraph 58 of the

26   Complaint.

27         59.    Actual bar pass rates (combined first time and repeat takers) of ASLS

28   graduates during Lorona's tenure as a student of ASLS were as follows:

February 2012 63.8%

July 2012 73.1%

February 2013 72.9%

July 2013 63.3%

February 2014 48.8%

July 2014 49.5%

February 2015 52.6%

Lorona took the February 2015 bar examination.

**ANSWER:** Defendants refer to the Arizona Supreme Court's publications relating to bar passage rates for the content thereof. Moreover, this allegation relates to a claim that the Court has now dismissed with prejudice.

60. The actual bar pass rate of ASLS graduates taking the July 2015 bar examination was 26.4%. The bar pass rate for Arizona State University Sandra Day O'Connor College of law and University of Arizona James E. Rogers College of Law graduates taking the July 2015 bar examination were 81.8% and 77%, respectively.

**ANSWER:** Defendants refer to the Arizona Supreme Court's publications relating to bar passage rates for the content thereof. Moreover, this allegation relates to a claim that the Court has now dismissed with prejudice.

61. However, prior to and continuing through the time that Lorona was a student of ASLS, ASLS continued to tout "Ultimate Bar Pass Rate[s]" exceeding 80%. For example, ASLS' "Viewbook" marketing brochure which was used to market to and attract student to ASLS in at least the years 2013 and 2014 prominently touts an "Ultimate Bar Pass Rate" of 86% for ASLS graduates, and in fine-print purportedly bases this on "[g]raduates who passed the Arizona Bar Exam on the first or subsequent attempts."

**ANSWER:** Defendants refer to ASLS' "Viewbook" marketing brochures for the content thereof. Moreover, this allegation relates to a claim that the Court has now dismissed with prejudice.

62.    In an October 16, 2014 email to ASLS students, including Lorona, Dean Mays reported an "Ultimate pass rate" of 80.8%.

**ANSWER:**  Defendants refer to Dean Mays' alleged email for the content thereof. Moreover, this allegation relates to a claim that the Court has now dismissed with prejudice.

63.    Throughout her tenure as a law student of ASLS Lorona read and relied upon and continued to read and rely upon ASLS's representations of an "Ultimate Bar Pass Rate" exceeding 80%.

**ANSWER:**   Defendants lack information sufficient to confirm or deny the allegations in Paragraph 63 of the Complaint.  Moreover, this allegation relates to a claim that the Court has now dismissed with prejudice.

64.    Moreover, as the bar pass rate of ASLS graduates continued to decline, enrollment at ASLS appeared to increase substantially during Lorona's tenure.

**ANSWER:**  Defendants deny the allegations of Paragraph 64 of the Complaint. Moreover, this allegation relates to a claim that the Court has now dismissed with prejudice.

65.    Thus, the "Ultimate" bar pass rates touted by ASLS were extremely misleading at best.

**ANSWER:**  Defendants deny the allegations of Paragraph 65 of the Complaint. Moreover, this allegation relates to a claim that the Court has now dismissed with prejudice.

66.    The Bar Examination statistics and pass rates maintained by the Arizona Supreme Court indicate that the passage rate for individuals taking the Arizona Bar Examination for a second time or subsequent times is substantially lower than the passage rate for individuals taking the Arizona Bar Examination for the first time.

**ANSWER:**   Defendants refer to the Bar Examination statistics and pass rates maintained by the Arizona Supreme Court for the content thereof. Moreover, this allegation relates to a claim that the Court has now dismissed with prejudice.

67.     Throughout the time Lorona was a law student of ASLS, Lorona continued to rely on ASLS' representations regarding the success of its graduates in finding employment in average salary of its graduates. This information could be found in ASLS' marketing materials and website.

**ANSWER:**  Defendants refer to ASLS' marketing materials and website for the content thereof.  Defendants lack information sufficient to confirm or deny the remaining allegations of Paragraph 67 of the Complaint and therefore deny the same.  Moreover, this allegation relates to a claim that the Court has now dismissed with prejudice.

68.     ASLS stated on its website from at least 2010 through 2013 that:

> PSL's [ASLS's] Bar Exam passage rates are high, and the school places 97% of its graduates into jobs within nine months of graduation.

**ANSWER:**     Defendants refer to ASLS' website for the content thereof. Moreover, this allegation relates to a claim that the Court has now dismissed with prejudice.

69.     Lorona read and took continuing comfort in this representation, and it gave her assurance and confidence that she would be able to obtain employment with her ASLS degree.

**ANSWER:**     Defendants lack information sufficient to admit or deny the allegations of Paragraph 69 of the Complaint and therefore deny same.  Moreover, this allegation relates to a claim that the Court has now dismissed with prejudice.

**3.      Defendants Knew But Failed to Reveal That the Percentage of Its Students Likely to Pass the Bar Exam Was Declining Rapidly and Materially.**

70.     Infilaw has studied bar passage rates for its students and based on its findings, Infilaw and ASLS have developed a bar exam failure predictor formula.

**ANSWER:**  Defendants deny the allegations of Paragraph 70 of the Complaint. Moreover, this allegation relates to a claim that the Court has now dismissed with prejudice.

71.     The failure predictor formula includes LSAT scores, undergraduate grade point average, and law school grade point average, among other factors.

**ANSWER:** Defendants deny the allegations of Paragraph 71 of the Complaint. Moreover, this allegation relates to a claim that the Court has now dismissed with prejudice.

72.     Both ASLS and Infilaw thus knew, but failed to disclose, that the percentage of its students who were likely to ever pass the bar examination was declining substantially and rapidly throughout the time of Lorona's legal education at ASLS. This omission was material.  For example, in an email dated December 23, 2014 from Ann Woodley, ASLS's Associate Dean for Bar Pass and Student Success to certain ASLS students and graduates stated that, "[t]he ASLS grads planning to take the bar exam in February have a predicted pass rate of 47%, compared to an expected state average of greater than 70%.  This is based on our statistical analysis of how our students have performed on the last few bar exams (and is primarily focused on law school grade point averages and LSAT scores)."

**ANSWER:** Defendants deny the allegations of Paragraph 72 of the Complaint. Moreover, this allegation relates to a claim that the Court has now dismissed with prejudice.

73.     Defendants also knew, but failed to disclose, that the substantial decline in likely bar pass rates was due to the admission of ever-increasing numbers of students through the AAMPLE program.  This omission was likewise material.

**ANSWER:** Defendants deny the allegations of Paragraph 73 of the Complaint.

74.     Rather than disclosing this substantial and material decline in their students' abilities to pass the bar exam and in expected bar passage rates, Defendants have attempted to manipulate reported bar pass rates.

**ANSWER:** Defendants deny the allegations of Paragraph 74 of the Complaint. Moreover, this allegation relates to a claim that the Court has now dismissed with prejudice.

1    75.    Beginning in May 2014, ASLS along with its Infilaw sister schools Florida

2  Coastal School of Law and Charlotte School of Law actually began to pay substantial and

3  material numbers of their graduates to defer or forego taking the bar exam upon

4  graduation based on these calculated failure predictors.

5    **ANSWER:**  Defendants deny the allegations of Paragraph 75 of the Complaint.

6  Moreover, this allegation relates to a claim that the Court has now dismissed with

7  prejudice.

8    76.    This is an attempt to deceive the ABA accrediting board, and Department of

9  Education, potential and existing students, and the general public by artificially increasing

10  bar passage percentages.

11    **ANSWER:**  Defendants deny the allegations of Paragraph 76 of the Complaint.

12  Moreover, this allegation relates to a claim that the Court has now dismissed with

13  prejudice.

14    77.    ASLS students who were predicted to fail the February 2015 bar exam

15  according to Infilaw's failure predictor formula were offered $5,000 and other benefits

16  such as bi-weekly payments, to defer taking the bar exam.

17    **ANSWER:**  Defendants deny the allegations of Paragraph 77 of the Complaint.

18  Moreover, this allegation relates to a claim that the Court has now dismissed with

19  prejudice.

20    78.    The effect of Infilaw's and ASLS's actions was to skew reported bar exam

21  results by eliminating from the pool of ASLS bar exam takers those who ASLS and

22  Infilaw believed would not pass. This enabled ASLS to maintain its reputation as a

23  competent law school producing well educated graduates capable of passing the bar and

24  actually practicing law at a law firm or in public employment by "cherry-picking" the

25  students who would attempt the bar exam in order to inflate their first-time test taker's

26  passing percentage.

27    **ANSWER:**  Defendants deny the allegations of Paragraph 78 of the Complaint.

28  Moreover, this allegation relates to a claim that the Court has now dismissed with

1    prejudice.

2        79.    The deception also enabled ASLS to retain accreditation and receive other

3    benefits, such as eligibility for Title IV funding from the Department of Education.

4        **ANSWER:**  Defendants deny the allegations of Paragraph 79 of the Complaint.

5    Moreover, this allegation relates to a claim that the Court has now dismissed with

6    prejudice.

7        80.    The ASLS bar examination preparation coach to whom Lorona was

8    assigned told Lorona frankly that the School is concerned that it may lose accreditation

9    and access to Title IV Federal Funding due to drastically low performance numbers.

10       **ANSWER:**   Defendants lack information sufficient to confirm or deny the

11   allegations of Paragraph 80 of the Complaint and therefore deny same.  Moreover, this

12   allegation relates to a claim that the Court has now dismissed with prejudice.

13       **4.    Lorona Reasonably Relied To Her Detriment Upon ASLS'**
         **Misrepresentations and Omissions of Material Facts.**
14

15       81.    Lorona incurred well over $200,000 in student loan debt while attending

     ASLS.
16

17       **ANSWER:**   Defendants lack information sufficient to confirm or deny the

     allegations of Paragraph 81 of the Complaint and therefore deny same.
18

19       82.    Based upon ASLS' misrepresentation and omissions of material facts

20   regarding the caliber of students attending ASLS and bar pass rates, Lorona was confident

21   and reasonably believed that if she completed law school at ASLS she would be able to

22   find gainful employment at a law firm or in the public sector that would pay a salary

23   sufficient to justify the incursion and continuing incursion of debt in order to attend

     ASLS.
24

25       **ANSWER:**  Defendants deny the allegations of Paragraph 82 of the Complaint.

26       83.    As revealed by the disastrous recent bar exam pass rates of ASLS graduates,

27   the quality and value of Lorona's law degree from ASLS is materially less than what she

     was led to believe by virtue of ASLS' misrepresentations and omissions of material facts.
28

1    **ANSWER:**  Defendants deny the allegations of Paragraph 83 of the Complaint.

2       84.    As a result, Lorona is unable to obtain employment as a lawyer.

3    **ANSWER:**  Defendants deny the allegations of Paragraph 84 of the Complaint.

4       85.    While she was waiting for her bar exam results, she had applied for
5    positions such as bailiff, clerk and paralegal, which did not even require a law license.
6    She did not even receive an interview for any of those positions.

7    **ANSWER:**   Defendants lack information sufficient to confirm or deny the
8    allegations of Paragraph 85 of the Complaint and therefore deny same.

9       86.    After being admitted to the bar, Lorona applied for numerous positions at
10   private law firms, positions as public prosecutor and public juvenile law positions.  She
11   also enlisted the services of employment placement firms including Robert Half and
12   Associates and Kelly Career Placement.  From all this effort, she received one interview,
13   which did not even result in a callback.

14   **ANSWER:**   Defendants lack information sufficient to confirm or deny the
15   allegations of Paragraph 86 of the Complaint and therefore deny same.

16      87.    Lorona's inability to find employment is the result of the abysmal reputation
17   of ASLS, prompted largely by the inability of even a third of its graduates to pass the bar
18   exam.

19   **ANSWER:**  Defendants deny the allegations of Paragraph 87 of the Complaint.

20      88.    The only use Lorona can make of her license to practice law is as a sole
21   practitioner, without the support or client base she would expect to access at a private firm
22   or through employment as a lawyer in the public sector.

23   **ANSWER:**  Defendants deny the allegations of Paragraph 88 of the Complaint.

24      89.    Had she known that her ASLS law degree would be useless, and indeed an
25   impediment, in obtaining employment as a lawyer and that she would have no other
26   option other than to attempt to practice as a sole practitioner, struggling to make anything
27   close to $60,000, she would not have enrolled at ASLS and incurred the enormous debt to
28   attend that school.

1    **ANSWER:**  Defendants deny the allegations of Paragraph 89 of the Complaint.

2    90.    Had she discovered the truth about ASLS' misrepresentations and omissions

3    of material fact while she was attending ASLS, she would have withdrawn from the law

4    school and avoided the further incursion of debt.  She could have then taken an entirely

5    different career path, if necessary, to obtain gainful employment.  Although Lorona may

6    have already incurred substantial debt in attending the law school, she would have seen

7    little if any point in continuing to incur massive debt for a degree that would not enable

8    her to obtain employment as a lawyer, and would in fact hinder her ability to do so.

9    **ANSWER:**  Defendants deny the allegations of Paragraph 90 of the Complaint.

10   **CLAIMS FOR RELIEF**

11

12   **Count One – Consumer Fraud in violation of A.R.S. § 44-1521 et seq.**
     (Defendant ASLS)

13   91.    Lorona restates and re-alleges the allegations of the previous paragraphs as

14   if fully set forth herein.

15   **ANSWER:**  Defendants incorporate their response to the prior paragraphs of this

16   Answer as though expressly set forth herein.

17   92.    Pursuant to A.R.S. § 44-1522. A.:

18          The act, use or employment by any person of any deception,
19          deceptive or unfair act or practice, fraud, false pretense, false
            promise, misrepresentation, or concealment, suppression or
20          omission of any material fact with intent that others rely on
            such concealment, suppression or omission, in connection
21          with the sale or advertisement of any merchandise whether or
22          not any person has in fact been misled, deceived or damaged
            thereby, is declared to be an unlawful practice.
23
     **ANSWER:**   The allegations of Paragraph 92 of the Complaint do not state a
24
     factual allegation to which a response is deemed necessary and Defendants therefore deny
25
     same.
26
     93.    A.R.S. § 44-1521. 5.   Provides in pertinent part that ""Merchandise"
27
     means," among other things, "intangibles" or "services."   As alleged above, ASLS, in
28

1   connection with the sale or advertisement of the services it provided and the value of an

2   ASLS education, made material misrepresentations regarding bar passage rates and the

3   caliber of students it was admitting to its law school, including the ability of its students to

4   actually pass the bar examination and obtain employment as lawyers.  ASLS omitted

5   material facts, including the LSAT scores and undergraduate GPAs of AAMPLE students

6   despite the fact that the percentage of AAMPLE students was increasing substantially and

7   materially from year to year.  ASLS also omitted the material fact that it knew by

8   application of Infilaw's own bar exam failure predictor formula that few, and increasingly

9   fewer, of its students were ever going to pass the bar exam, let alone find employment as

10  lawyers. ASLS deceptively represented its Legal Education Program as follows:

> We believe by graduation, lawyers should enter the workforce professionally prepared to practice law in a variety of diverse settings and industries.  Summit Law partners with local law firms, courts, municipalities, businesses and non-profits to provide real-world work experiences that foster our students' desire to learn, grow and succeed while creating **well-rounded lawyers who add immediate value to their firms and employers.**

**ANSWER:**  Defendants refer to the documents referenced in Paragraph 93 of the Complaint for the content thereof.  Defendants deny the remaining allegations of Paragraph 93 of the Complaint.

94.    ASLS used deception, used a deceptive act or practice, used fraud, used false pretense, made false promises, made misrepresentations, and concealed, suppressed and omitted material facts in connection with the sale or advertisement of merchandise.

**ANSWER:**  Defendants deny the allegations of Paragraph 94 of the Complaint.

95.    ASLS intended that others rely upon these misrepresentations.

**ANSWER:**  Defendants deny the allegations of Paragraph 95 of the Complaint.

96.    Lorona in fact relied upon ASLS' misrepresentations in deciding to enroll in law school at ASLS, and to continue to enroll in and remain a student at ASLS, and to incur debt in connection therewith. But for ASLS' misrepresentations, Lorona would not

1  have enrolled in ASLS, continued to enroll and remain a student at ASLS, and continued
2  to incur substantial debt in connection therewith.

3  **ANSWER:** Defendants deny the allegations of Paragraph 96 of the Complaint.

4  97. As a direct and proximate result of Lorona's reliance on ASLS'
5  misrepresentations, Lorona has suffered damages, including but not limited to student
6  loan debt that includes accruing interest and fees throughout its term. In addition, Lorona
7  is unable to obtain employment with her ASLS degree.

8  **ANSWER:** Defendants deny the allegations of Paragraph 97 of the Complaint.

9  **Count Two – Common Law Fraud**
10  (Defendant ASLS)

11  98. Lorona restates and re-alleges the allegations of the previous paragraphs as
12  if fully set for the herein.

13  **ANSWER:** Defendants incorporate their response to the prior paragraphs of this
14  Answer as though expressly set forth herein.

15  99. As alleged herein ASLS made numerous representations to Lorona
16  regarding the bar passage rate and expected bar passage rates of ASLS graduates,
17  admission requirements and the caliber of students being admitted to ASLS, and
18  qualifications of ASLS graduates to actually practice law.

19  **ANSWER:** Defendants deny the allegations of Paragraph 99 of the Complaint.

20  100. These representations were false. As alleged herein, the actual bar passage
21  rates and expected bar passage rates of ASLS graduates was substantially and materially
22  lower than those represented by ASLS. Admission requirements and the academic caliber
23  of students being admitted to ASLS, including their ability to actually pass the bar exam
24  and find employment as lawyers, was also materially lower than that being represented by
25  ASLS.

26  **ANSWER:** Defendants deny the allegations of Paragraph 100 of the Complaint.

27  101. ASLS knew these representations were false. ASLS had possession of the
28  true statistics that were substantially and materially different from those represented by

1   Defendants.

2       **ANSWER:**  Defendants deny the allegations of Paragraph 101 of the Complaint.

3       102.   ASLS' representations were material in that they were sufficiently important

4   to influence Lorona's actions and the actions of a reasonable person.

5       **ANSWER:**  Defendants deny the allegations of Paragraph 102 of the Complaint.

6       103.   ASLS intended that Lorona rely upon these representations in deciding to

7   enroll and to remain enrolled at ASLS and to pay Defendants very substantial amounts of

8   money for tuition and fees.

9       **ANSWER:**  Defendants deny the allegations of Paragraph 103 of the Complaint.

10      104.   Lorona in fact relied upon the truth of these representations in deciding to

11  enroll and to continue to enroll and remain a student at ASLS, and in deciding to incur

12  substantial debt in the form of loans to pay for attendance at ASLS.

13      **ANSWER:**  Defendants deny the allegations of Paragraph 104 of the Complaint.

14      105.   Lorona's reliance on ASLS' representations was reasonable and justified

15  under the circumstances.

16      **ANSWER:**  Defendants deny the allegations of Paragraph 105 of the Complaint.

17      106.   Lorona was unaware that ASLS' representations were false.

18      **ANSWER:**  Defendants deny the allegations of Paragraph 106 of the Complaint.

19      107.   As a direct and proximate result of Lorona's reliance on ASLS'

20  misrepresentations Lorona sustained damages in an amount to be proven at trial including

21  but not limited to student loan debt that continues accruing interest and fees throughout its

22  term.  In addition, Lorona is unable to obtain employment with her ASLS degree.

23      **ANSWER:**  Defendants deny the allegations of Paragraph 107 of the Complaint.

24      108.   ASLS' conduct was willful and intentional, extreme and outrageous, thus

25  entitling Lorona to an award of punitive damages.

26      **ANSWER:**  Defendants deny the allegations of Paragraph 108 of the Complaint.

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Count Three –Negligent Misrepresentation
(Defendant ASLS)

109.    Lorona restates and re-alleges the previous paragraphs of this Complaint as if fully set forth herein.

**ANSWER:**  Defendants incorporate their response to the prior paragraphs of this Answer as though expressly set forth herein.

110.    As alleged herein ASLS made numerous representations to Lorona regarding the bar passage rate and expected bar passage rates of ASLS graduates, admission requirements and the caliber of students being admitted to ASLS, and qualifications of ASLS graduates.

**ANSWER:**  Defendants deny the allegations of Paragraph 110 of the Complaint.

111.    These representations were false.  As alleged herein, the actual bar passage rates and expected bar passage rates of ASLS graduates were substantially and materially lower than those represented by ASLS.  Admission requirements and the academic caliber of students being admitted to ASLS, including their ability to actually pass the bar exam and find employment as lawyers, was also materially lower than that being represented by ASLS.

**ANSWER:**  Defendants deny the allegations of Paragraph 111 of the Complaint.

112.    ASLS intended that Lorona rely on these representations and ASLS made these representations for that purpose.

**ANSWER:**  Defendants deny the allegations of Paragraph 112 of the Complaint.

113.    ASLS failed to exercise reasonable care or competence in obtaining or communicating the information conveyed in these representations.

**ANSWER:**  Defendants deny the allegations of Paragraph 113 of the Complaint.

114.    Lorona relied on the information conveyed in these representations as alleged herein in deciding to enroll in and to continue to enroll and remain a student at ASLS, and to incur substantial debt in connection therewith.

1   **ANSWER:**  Defendants deny the allegations of Paragraph 114 of the Complaint.

2   115.   Lorona's reliance on these representations was justified.

3   **ANSWER:**  Defendants deny the allegations of Paragraph 115 of the Complaint.

4   116.   As a direct and proximate result of Lorona's reliance on ASLS'

5   misrepresentations, Lorona sustained damages in an amount to be proven at trial including

6   but not limited to student loan debt that continues accruing interest and fees throughout its

7   term.  In addition, Lorona is unable to obtain employment with her ASLS degree.

8   **ANSWER:**  Defendants deny the allegations of Paragraph 116 of the Complaint.

9
10   **Count Four – Family Caregiver And Family Responsibilities Discrimination Association Discrimination The Americans With Disabilities Act.**
    (All Defendants)

11

12   117.   Lorona restates and realleges the previous paragraphs of this Complaint as if

13   fully set forth herein.

14   **ANSWER:**  Defendants incorporate their response to the prior paragraphs of this

15   Answer as though expressly set forth herein.

16   118.   ASLS and Infilaw are "covered entities" within the meaning of the

17   Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 (2) in that each of them is

18   an employer engaged in an industry affecting commerce who has 15 or more employees

19   for each working day in each of 20 or more calendar weeks in the current or preceding

20   calendar year.

21   **ANSWER:**   The allegations of Paragraph 118 of the Complaint state legal

22   conclusions to which no response is required and Defendants therefore deny same.

23   119.   At all relevant times Lorona was an "employee" of ASLS and Infilaw within

24   the meaning of the ADA, 42 U.S.C. § 12111 (4).

25   **ANSWER:**   The allegations of Paragraph 119 of the Complaint state legal

26   conclusions to which no response is required and Defendants therefore deny same.

27   120.   At all relevant times Lorona was a "qualified individual" within the

28   meaning of the ADA, 42 U.S.C. § 12111 (8) in that Lorona can, and at all relevant times

1   could, perform the essential functions of her employment position and the employment
2   position she sought with Defendants with or without reasonable accommodation.

3       **ANSWER:** The allegations of Paragraph 120 of the Complaint state legal
4   conclusions to which no response is required and Defendants therefore deny same.

5       121.  The ADA, 42 U.S.C.§ 12112 (a) specifically provides that:

6           No covered entity shall discriminate against a qualified
7           individual on the basis of disability in regard to job application
            procedures, the hiring, advancement, or discharge of
8           employees, employee compensation, job training, and other
9           terms, conditions, and privileges of employment.

10  This provision of the ADA applied to ASLS and Infilaw at all relevant times.

11      **ANSWER:** The allegations of Paragraph 121 of the Complaint do not state a
12  factual allegation to which a response is deemed necessary and Defendants therefore deny
13  same.

14      122.  The ADA, 42 U.S.C.§ 12112 (b) provides that:

15          As used in subsection (a) of this section, the term
16          'discriminate against a qualified individual on the basis of
            disability' includes---

17          ***

18          (4) excluding or otherwise denying equal jobs or benefits to a
19          qualified individual because of the known disability of an
            individual with whom the qualified individual is known to
20          have a relationship or association.

21      **ANSWER:** The allegations of Paragraph 122 of the Complaint do not state a
22  factual allegation to which a response is deemed necessary and Defendants therefore deny
23  same.

24      123.  The ADA, 42 U.S.C. § 12203 (a) further prohibits retaliation against any
25  individual who opposes a violation of the ADA:

26          No person shall discriminate against any individual because
27          such individual has opposed any act or practice made unlawful
            by this chapter or because such individual made a charge,

28

testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

**ANSWER:** The allegations of Paragraph 123 of the Complaint do not state a factual allegation to which a response is deemed necessary and Defendants therefore deny same.

124.   Lorona's minor children (B.L. and C.L.) each have a "disability", specifically chronic severe asthma, within the meaning of the ADA 42, U.S.C. § 12102 (1).

**ANSWER:** The allegations of Paragraph 124 of the Complaint state legal conclusions to which no response is required and Defendants therefore deny same.

125.   Lorona is in a protected category under the ADA because she is associated with her minor children that have disabilities that are recognized under the ADA.

**ANSWER:** The allegations of Paragraph 125 of the Complaint state legal conclusions to which no response is required and Defendants therefore deny same.

126.   Defendants knowingly, intentionally, and with reckless disregard of Lorona's rights under the ADA discriminated against Lorona on the basis of disability in violation of the ADA as alleged herein.

**ANSWER:** Defendants deny the allegations of Paragraph 126 of the Complaint.

127.   Defendants ASLS and Infilaw, at all relevant times, knew that Lorona's minor children had a disability, and that Lorona was the primary caregiver to her minor children.  Lorona specifically discussed with her first ASLS supervisors, Alicia Togno, and later Jim Lemire that Lorona's children suffered from chronic severe asthma.  Lorona also informed Viki Coen from Infilaw about her children's chronic severe asthma.  In addition, Lorona on numerous occasions informed Stephanie Lee of her children's health, including their severe asthma.  In fact, Ms. Lee delivered Lorona's work laptop to Lorona at Banner Thunderbird Hospital while Lorona's daughter was hospitalized due to a severe asthma attack.  Lee did this so that Lorona could work remotely and not be required to be charged paid time off.  Others at ASLS were also aware that Lorona's children suffered

1  from a chronic severe illness.

2      **ANSWER:** Defendants deny the allegations of Paragraph 127 of the Complaint.

3      128.   Lorona is otherwise qualified to perform the essential functions of the job,

4  with or without reasonable accommodations by the Defendant, the employer.

5      **ANSWER:**   The allegations of Paragraph 128 of the Complaint state legal

6  conclusions to which no response is required and Defendants therefore deny same.

7      129.   Defendants discriminated against Lorona because of the known disability of

8  Lorona's minor children.

9      **ANSWER:** Defendants deny the allegations of Paragraph 129 of the Complaint.

10     130.   ASLS   has   a   written   telecommuting   policy   that   allows   employees

11  occasionally to work remotely while caring for sick or disabled family members.

12     **ANSWER:** The document referenced speaks for itself and should be interpreted in

13  accordance with Arizona law.

14     131.   However, Lorona was frequently denied the opportunity to work remotely,

15  or was criticized and harassed when she did work remotely

16     **ANSWER:** Defendants deny the allegations of Paragraph 131 of the Complaint.

17     132.   In addition, on occasions when Lorona was working remotely so that she

18  could be with her disabled children, ASLS routinely charged her paid time off and did not

19  advise her of or offer her FMLA leave.

20     **ANSWER:**   Defendants deny the remaining allegations of Paragraph 132 of the

21  Complaint.

22     133.   Other employees who worked remotely and who did not have disabled

23  family members were not charge paid time off.

24     **ANSWER:** Defendants deny the allegations of Paragraph 133 of the Complaint.

25     134.   Indeed, ASLS employee Viki Coen spoke with Lorona's supervisor

26  Thompson and informed him that Lorona was actually working and corresponding with

27  her while Lorona was working away from the office.   However, even after being so

28  informed, Lee did not change the record, and Lorona was charged PTO.

**ANSWER:** Defendants lacks information sufficient to confirm or deny the allegations of Paragraph 134 of the Complaint and therefore deny same.

135.   Other similarly situated employees were, and still to this day are, permitted to work remotely for many reasons, including reasons less meritorious than caring for a disabled child.

**ANSWER:** Defendants deny the allegations of Paragraph 135 of the Complaint.

136.   While employees that are not disabled and/or do not have caregiving responsibilities are permitted to work remotely at will, those with disabilities and caring for family members with disabilities are not permitted the same accommodations. For example, Stephanie Lee was allowed to "work" remotely while she shopped, attended appointments, or just stayed at home. Other ASLS employees, including without limitation Glen Fogerty, Diane Alkais, Dave Bachechi, Nina Sergovia, Debbie Richards, Eric Border, and Reid White, who did not have disabled children or family members were allowed to work remotely as they desired.  ASLS allowed Jennifer Hanny, who was single and without children, work accommodations in connection with an ongoing illness.

**ANSWER:** Defendants deny the allegations of Paragraph 136 of the Complaint.

137.   Lorona was also denied promotions and even interviews for promotions despite recommendations by three previous supervisors that she be promoted.

**ANSWER:** Defendants deny the allegations of Paragraph 137 of the Complaint.

138.   For example, in 2012, ASLS posted for application by potential candidates the position of Director of Finance or Assistant Controller.

**ANSWER:**  The documents referenced speak for themselves and should be interpreted in accordance with Arizona law.

139.   Lorona met or exceeded the minimum qualifications for the position as stated in the posting.

**ANSWER:** Defendants deny the allegations of Paragraph 139 of the Complaint.

140.   Lorona applied for the position.

**ANSWER:** Defendants admit the allegations of Paragraph 140 of the Complaint.

1   141.   During the first week of April 2012, and without reviewing Lorona's

2   qualifications for Director of Finance or Controller, Lee told Lorona that she was not

3   qualified to even interview for the position.

4   **ANSWER:**   Defendants lack information sufficient to confirm or deny the

5   allegations of Paragraph 141 of the Complaint and therefore deny same.

6   142.   Lorona then met with Lee in person in Lee's office, and explained that

7   Lorona was indeed qualified.   Lee curtly told Lorona that she would not be getting an

8   interview either way.   Lee said this in the presence of Angelique Artigua, Lee's

9   Administrative Assistant.

10   **ANSWER:**   Defendants lack information sufficient to confirm or deny the

11   allegations of Paragraph 142 of the Complaint and therefore deny same.

12   143.   Lorona asked whether the reason she was being denied the opportunity to

13   even interview for the promotion was because she complained about being charged paid

14   time off to care for her disabled children.   Lee responded that Lorona would just not be

15   receiving an interview, "period."

16   **ANSWER:**   Defendants lack information sufficient to confirm or deny the

17   allegations of Paragraph 143 of the Complaint and therefore deny the same.

18   144.   During this same time period, ASLS's Viki Coen recommended Lorona for

19   promotions, raises and bonuses, and expressed to Lorona that she could not understand

20   why Lorona was not being promoted.

21   **ANSWER:**   Defendants lack information sufficient to confirm or deny the

22   allegations of Paragraph 144 of the Complaint and therefore deny the same.

23   145.   Ultimately, ASLS filled the position with a candidate that did not meet the

24   minimum qualifications for the position.

25   **ANSWER:**  Defendants deny the allegations of Paragraph 145 of the Complaint.

26   146.   During the EEOC's investigation of Lorona's Charge of Discrimination,

27   ASLS advised the EEOC that Lorona did not qualify for the position to which she applied.

28   **ANSWER:**   The documents within the EEOC investigation file speak for

1   themselves and should be interpreted in accordance with Arizona and federal law.

2       147.   EEOC requested a copy of the job description during investigation.

3       **ANSWER:**   The documents within the EEOC investigation file speak for

4   themselves and should be interpreted in accordance with Arizona and federal law.

5       148.   ASLS provided a job description different from the position for which

6   Lorona applied.  Specifically, the job description states that a CPA is required.

7       **ANSWER:**   The documents within the EEOC investigation file speak for

8   themselves and should be interpreted in accordance with Arizona and federal law.

9       149.   When the EEOC Investigator inquired as to why the school provided a

10  misleading job posting, with an incorrect date, ASLS told the EEOC Investigator that they

11  did not provide the correct posting requested because they were moving in a different

12  direction with the posting.

13      **ANSWER:**   The documents within the EEOC investigation file speak for

14  themselves and should be interpreted in accordance with Arizona and federal law.

15      150.   Lorona acquired the posted job requirements of the "new position."  They

16  appear to be identical to the job duties of the prior posting, except that the "new position"

17  requires a CPA.

18      **ANSWER:**   The documents referenced speak for themselves and should be

19  interpreted in accordance with Arizona and federal law.

20      151.   The individual currently holding the position Lorona applied for is a male

21  without a disability and without caregiving responsibilities.

22      **ANSWER:**   Defendants lack information sufficient to confirm or deny the

23  allegations of Paragraph 151 of the Complaint and therefore deny same.

24      152.   Lee and Thompson continued to harass Lorona in all facets of her

25  employment, including excluding her completely from departmental meetings, excluding

26  her while in meetings, taking Mrs. Lorona's corporate credit card while other employees

27  in similar positions retained theirs, gossiping about Lorona, and ignoring her throughout

28  the workday.

1   **ANSWER:** Defendants deny the allegations of Paragraph 152 of the Complaint.

2   153.   In contrast, Defendants' employees who do not have disabled children or
3   close family members are given special consideration and more favorable treatment by
4   Defendants.

5   **ANSWER:** Defendants deny the allegations of Paragraph 153 of the Complaint.

6   154.   Employees who have disabled children or close family members for whom
7   the employee is a caregiver, like Lorona, are required to take paid time off and not advised
8   of their FMLA rights while performing caregiver duties while non-caregiver employees
9   are permitted to work remotely and not blocked from promotions.

10   **ANSWER:** Defendants deny the allegations of Paragraph 154 of the Complaint.

11   155.   ASLS turnover rates, both voluntary and involuntary, for employee
12   caregivers are higher than non-caregiver employees, and the executive staff is primarily
13   made up of employees with non-caregiving duties.

14   **ANSWER:** Defendants deny the allegations of Paragraph 155 of the Complaint.

15   156.   As described herein Defendants discriminated against Lorona because of the
16   known disability of Lorona's minor children.

17   **ANSWER:** Defendants deny the allegations of Paragraph 156 of the Complaint.

18   157.   As a direct and proximate result of Defendants violations of the ADA,
19   Lorona sustained damages, including the loss of wages and benefits, and the loss of
20   increased salary and benefits and the potential for increased salary and benefits, in an
21   amount to be proven at trial.

22   **ANSWER:** Defendants deny the allegations of Paragraph 157 of the Complaint.

23   158.   Defendants' conduct was willful, intentional and malicious, and was done in
24   reckless disregard of Lorona's rights, thus entitling Lorona to an award of punitive
25   damages.

26   **ANSWER:** Defendants deny the allegations of Paragraph 158 of the Complaint.

27

28

1

2

**Count Five – Gender Discrimination – Disparate Treatment Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section(s) 2000e et seq.**
(All Defendants)

3

4

159.    Lorona restates and re-alleges the allegations of the previous paragraphs of this Complaint as if fully set forth herein.

5

6

**ANSWER:**  Defendants incorporate their response to the prior paragraphs of this Answer as though expressly set forth herein.

7

8

9

10

11

160.    This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section(s) 2000e et seq. for relief based upon the unlawful employment practices of Defendant.  Specifically, Lorona complains of Defendant's violation of Title VII's prohibition in employment based, in whole or in part, upon an employee's gender.

12

13

14

**ANSWER:**  The allegations of Paragraph 160 of the Complaint do not state a factual allegation to which a response is deemed necessary and Defendants therefore deny same.

15

16

17

18

161.    Defendant ASLS is an "employer" within the meaning of 42 U.S.C. § 2000e (b) in that ASLS was engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

19

20

**ANSWER:**  The allegations of Paragraph 161 of the Complaint state legal conclusions to which no response is required and Defendants therefore deny the same.

21

22

23

24

162.    Defendant Infilaw is an "employer" within the meaning of 42 U.S.C. § 2000e (b) in that Infilaw was engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

25

26

**ANSWER:**  The allegations of Paragraph 162 of the Complaint state legal conclusions to which no response is required and Defendants therefore deny the same.

27

28

163.    At all relevant times, Lorona was an "employee" of ASLS and Infilaw

within the meaning of 42 U.S.C. § 2000e (f) in that she was employed by ASLS and Infilaw.

**ANSWER:**   The allegations of Paragraph 163 of the Complaint state legal conclusions to which no response is required and Defendants therefore deny the same.

164.   Title VII of the Civil Rights Act of 1964, as amended, provides in pertinent part:

> It shall be an unlawful employment practice for an employer –
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

42 U.S.C. § 2000e—2 (a). At all relevant times this provision was applicable to Defendants ASLS and Infilaw.

**ANSWER:**   The allegations of Paragraph 164 of the Complaint do not state a factual allegation to which a response is deemed necessary and Defendants therefore deny same.

165.   Title VII of the Civil Rights Act of 1964, as amended, also provides in part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment … because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e—3 (a).

**ANSWER:**   The allegations of Paragraph 165 of the Complaint do not state a

1    factual allegation to which a response is deemed necessary and Defendants therefore deny

2    same.

3         166.   During her employment with Defendant, Lorona was a member of a

4    protected class under Title VII against gender-based discrimination by her employer,

5    Defendant, or by its managers and supervisory personnel.

6         **ANSWER:**   The allegations of Paragraph 166 of the Complaint state legal

7    conclusions to which no response is required and Defendants therefore deny the same.

8         167.   In 2013 Lorona scheduled a meeting with Lee to discuss disparate treatment

9    and whether Lorona's job was in jeopardy for some reason.

10        **ANSWER:**  Defendants deny the allegations of Paragraph 167 of the Complaint.

11        168.   At that meeting, Lorona asked Lee whether there were concerns with

12   performance that she should correct.  Lee told Lorona that she did not have any concerns

13   with Lorona's performance or employment in general.  Lee also told Lorona that she had

14   never heard Thompson express any concern with Lorona's job performance.

15        **ANSWER:**   Defendants lack information sufficient to confirm or deny the

16   allegations of Paragraph 168 of the Complaint and therefore deny same.

17        169.   In fact in at least three meetings with Stephanie Lee, at least one of which

18   was also attended by Scott Thompson, Lorona expressed concern that she was being

19   treated differently from other employees and excluded from work related meetings and

20   discussions. Lorona specifically asked whether her job was in jeopardy.   Lee and

21   Thompson stated that they did not have any concerns with Lorona's work.  Lee assured

22   Lorona that her job was not in jeopardy.  Lee told Lorona that if Lorona were to be

23   terminated she would first receive counseling and several write-ups to provide an

24   opportunity to improve where needed.

25        **ANSWER:**  Defendants deny the allegations of Paragraph 169 of the Complaint.

26        170.   Lorona was also denied opportunities for promotion on multiple occasions.

27   Whereas, ASLS hired male executives without posting positions or interviewing potential

28   candidates, female candidates were forced to follow standard hiring procedures.

1     **ANSWER:** Defendants deny the allegations of Paragraph 170 of the Complaint.

2     171.   Shortly after being terminated, Lorona was replaced by a male employee,
3 Eric Border, with fewer qualifications who was not required to follow standard hiring
4 procedures.

5     **ANSWER:** Defendants deny the allegations of Paragraph 171 of the Complaint.

6     172.   Unlike Lorona, Mr. Border had never worked in Student Accounts and did
7 not have any experience managing student accounts.  He had never worked in Financial
8 Aid until he started working at ASLS.  He was also promoted to Lorona's position without
9 the job being posted to the public, and without the interview and screening process that
10 others, like Lorona, were required to complete.

11     **ANSWER:** Defendants deny the allegations of Paragraph 172 of the Complaint.

12     173.   In fact, after Mr. Border was promoted, Lorona received numerous calls and
13 emails from individuals in ASLS's IT Department asking Lorona to help train Mr. Border
14 because no one knew how to do Lorona's job.

15     **ANSWER:** Defendants deny the allegations of Paragraph 173 of the Complaint.

16     174.   Defendants in fact have established a pattern and practice of discrimination
17 against women in general and those with caregiving responsibilities.

18     **ANSWER:** Defendants deny the allegations of Paragraph 174 of the Complaint.

19     175.   The Director of Admissions, a male, is frequently permitted to leave work
20 early during key times for admissions to attend children's sporting events and other
21 activities.

22     **ANSWER:** Defendants deny the allegations of Paragraph 175 of the Complaint.

23     176.   In contrast, the Director of Admissions, a female, was berated openly in
24 management meeting regarding performance, and inability to meet performance goals.

25     **ANSWER:** Defendants deny the allegations of Paragraph 176 of the Complaint.

26     177.   A Director of Admissions resigned to take a Professor Position at Arizona
27 State University.  Upon non-renewal of that contract, the Director returned to ASLS as the
28 Director of Admissions despite the severe drop in admissions numbers, and an apparent

1    inability to adapt to enrollment challenges prior to his initial departure.

2        **ANSWER:**  Defendants deny the allegations of Paragraph 177 of the Complaint.

3        178.    In addition, ASLS hired Kenneth Schnolobler as Director of Technology in

4    2014 without posting the position or interviewing alternative candidates.

5        **ANSWER:**  Defendants admit the allegations of Paragraph 178 of the Complaint.

6        179.    Lorona was required to work until at least 5:00 p.m. daily to accommodate

7    night students.

8        **ANSWER:**  Defendants admit that Lorona  was expected to work until 5:00 p.m.

9    while employment by ASLS.  Defendants denying the remaining allegations of Paragraph

10   179 of the Complaint.

11       180.    Lorona's male replacement routinely works no later than 4:00 p.m.   The

12   male employee states he needs to leave early so that he can take public transportation

13   although public transportation runs much later than 4:00 p.m. on a daily basis.

14       **ANSWER:**  Defendants deny the allegations of Paragraph 180 of the Complaint.

15       181.    As alleged above, Defendants also discriminated against Lorona on the basis

16   of her gender in violation of Title VII by failing to promote Lorona or even to consider

17   her for promotions due to her gender and the fact that she was the primary caregiver of her

18   minor children.

19       **ANSWER:**  Defendants deny the allegations of Paragraph 181 of the Complaint.

20       182.    As a direct and proximate result of Defendants' violations of Title VII

21   Lorona has sustained damages, including but not limited to lost wages and benefits, lost

22   promotions and the opportunity for promotions, and the loss of increased wages and

23   benefits through promotion or otherwise in an amount to be proven at trial.

24       **ANSWER:**  Defendants deny the allegations of Paragraph 182 of the Complaint.

25       183.    Defendants' violations of Title VII were willful, intentional and malicious,

26   and were done in reckless disregard of Lorona's rights, thus entitling Lorona to an award

27   of punitive damages.

28       **ANSWER:**  Defendants deny the allegations of Paragraph 183 of the Complaint.

**Count Six – Retaliatory Discharge in violation of Title VII and ADA**
(All Defendants)

184.   Lorona re-alleges and incorporates by reference each of the allegations set forth in the preceding paragraphs of this Complaint.

**ANSWER:**  Defendants incorporate their response to the prior paragraphs of this Answer as though expressly set forth herein.

185.   On numerous occasions during the course of her employment at ASLS, Lorona complained to her supervisors and superiors that Defendants were treating her unfairly and discriminated against her because she: (a) has minor children with disabilities; (b) needs to work from home on occasions so that she can care for her minor children with severe and chronic asthma; and (c) is a woman in that, as described herein, Lorona's male coworkers were not subjected to harassment and denied promotions and the opportunities for promotion in the same or similar manner as Lorona, and male coworkers who were less qualified than Lorona were advanced and promoted in the company while Lorona was not.

**ANSWER:**  Defendants deny the allegations of Paragraph 185 of the Complaint.

186.   Defendants terminated Lorona's employment because she attempted to exercise her rights protected under the ADA and Title VII, and complained about unfair, unequal and disparate treatment in violation of the ADA and Title VII as alleged herein.

**ANSWER:**  Defendants deny the allegations of Paragraph 186 of the Complaint.

187.   But for Lorona's complaints about, and opposition to, unlawful and disparate treatment in violation of the ADA and Title VII and her attempts to exercise her rights thereunder, Defendants would not have terminated Lorona's employment.

**ANSWER:**  Defendants deny the allegations of Paragraph 187 of the Complaint.

188.   Lee and Thompson were acting in the scope and course of their employment with ASLS and Infilaw. Accordingly, ASLS and Infilaw are liable for the actions of Thompson and Lee under the theory of *respondeat superior*.

**ANSWER:**   The allegations of Paragraph 188 of the Complaint state legal

1  conclusions to which no response is required and Defendants therefore deny the same.

2      189.   As a direct and proximate result of Defendants' actions, Lorona has suffered

3  damages, including but not limited to, the loss of income, loss of employee benefits, and

4  damage to her reputation because she will now be known as a whistleblower and will be

5  forever publicly linked to a whistleblower complaint.

6      **ANSWER:**  Defendants deny the allegations of Paragraph 189 of the Complaint.

7      190.   Further, Defendants actions were willful, wanton, intentional, malicious,

8  and done with reckless and evil mind that consciously disregarded Lorona's rights and the

9  damages that would plainly and obviously result.  As such, an assessment of exemplary

10  and punitive damages in an amount to be determined at trial is warranted.

11      **ANSWER:**  Defendants deny the allegations of Paragraph 190 of the Complaint.

12                          **DEMAND FOR JURY TRIAL**

13      191.   Lorona demands trial by jury on all issues so triable.

14      **ANSWER:**   The allegations of Paragraph 191 of the Complaint do not state a

15  factual allegation to which a response is deemed necessary and Defendants therefore deny

16  same.

17                          **<u>GENERAL DENIAL</u>**

18      Defendants generally and specifically deny each allegation not expressly admitted

19  herein.  Defendants further deny that Plaintiff has suffered any damages or is entitled to

20  any relief as alleged in the Complaint, or at all.

21                          **<u>ADDITIONAL DEFENSES</u>**

22      1.    The Complaint, in whole or in part, fails to state a claim upon which relief

23  may be granted.

24      2.    The Complaint, in whole or in part, is barred because Plaintiff failed to

25  exhaust her administrative remedies.

26      3.    The Complaint, in whole or in part, is barred by the applicable statute of

27  limitations.

28

4.     The Complaint, in whole or in part, is barred by the doctrines of estoppel, waiver and/or laches.

5.     Defendants exercised reasonable care to prevent and promptly correct any discriminatory behavior and that the Plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided by Defendants.

6.     Defendants allege that all acts taken by it or anyone acting on their behalf were just, fair, privileged, with good cause, in a good faith effort to comply with federal law, without malice or intent to discriminate or retaliate, and for lawful and legitimate, non-discriminatory reasons.

7.     Plaintiff's damages under the ADA are limited to any applicable statutory cap including, but not limited to, the statutory cap set forth in 42 U.S.C. § 1981(a).

8.     Defendants allege that any acts or omissions attributed to Defendants in Plaintiff's Complaint were not willful in that Defendants did not know or show reckless disregard for whether any conduct violated the ADA, Title VII, and other relevant laws and regulations.

9.     Defendants deny causing Plaintiff to suffer any damages and affirmatively alleges, upon information and belief, that Plaintiff's claims are barred in whole or in part because Plaintiff has, or discovery will show Plaintiff to have failed to mitigate any damages claimed to have been suffered by her.

10.     Defendants affirmatively allege that Plaintiff, through her own negligence and fault, proximately caused the injuries (in whole or in part to the extent there are any) which are the subject of the Complaint.

11.     Defendants have not knowingly or intentionally waived any applicable affirmative defenses set forth in Rule 8(c), Fed. R. Civ. P.  Defendants reserve the right to assert and rely upon such other defenses as may become available or apparent during discovery proceedings.

**WHEREFORE**, Defendants demand judgment against Plaintiff as follows:

1    1.    Enter a judgment in favor of Defendants and against Plaintiff with respect to

2 all claims asserted by Plaintiff against Defendants;

3    2.    For costs, disbursements and attorneys' fees; and

4    3.    For such other relief as the Court deems just and equitable.

5    RESPECTFULLY SUBMITTED this 1st day of June 2016.

6                                        QUARLES & BRADY LLP
                                         Renaissance One
7                                        Two North Central Avenue
                                         Phoenix, AZ  85004-2391
8

9
                                         By /s/ *Eric B. Johnson*
10                                            Nicole France Stanton
                                              Eric B. Johnson
11                                            Michael S. Catlett

12                                       Attorneys for Defendants

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2

3          I hereby certify that on June 1, 2016, I electronically transmitted the attached
document to the Clerk's Office using the CM/ECF System for filing and transmittal of a
Notice of Electronic Filing to all CM/ECF registrants in this matter, including:

4

5          Robert T Mills
           Mills & Woods Law PLLC
6          5055 N 12th St., Ste. 101
           Phoenix, AZ 85014
7          480-999-4556
           rmills@millsandwoods.com
8

9          Sean Anthony Woods
           Mills & Woods Law PLLC
10         5055 N 12th St., Ste. 101
           Phoenix, AZ 85014
11         480-999-4556
           swoods@millsandwoods.com
12

13

14    /s/ *Donna Lockwood*
      *An employee of Quarles & Brady*
15

16

17

18

19

20

21

22

23

24

25

26

27

28